1  BARRETT S. LITT, SBN 45527
   PAUL J. ESTUAR, SBN 167764
2  E-Mail: pestuar@littlaw.com
   LITT, ESTUAR, HARRISON & KITSON,
3  LLP
   1055 Wilshire Boulevard, Suite 1880
4  Los Angeles, California 90017
   Telephone: (213) 386-3114
5  Facsimile:  (213) 380-4585

6  DANIEL GRUNFELD, SBN 128494        STEWART KWOH, SBN 61805
7  HERNAN D. VERA, SBN 175149         JULIE A. SU, SBN 174279
   LOUIS RAFTI, SBN 243813            E-Mail: jsu@apalc.org
8  E-Mail: hvera@publiccounsel.org    ASIAN PACIFIC AMERICAN LEGAL
   PUBLIC COUNSEL                     CENTER OF SOUTHERN CALIFORNIA
9  610 South Ardmore Avenue           1145 Wilshire Boulevard, 2nd Floor
   Los Angeles, California  90005     Los Angeles, California 90017
10 Telephone: (213) 385-2977         Telephone: (213) 977-7500
   Facsimile:  (213) 385-9089        Facsimile: (213) 977-7595
11
12 Attorneys for Plaintiffs           Attorneys for Plaintiffs

13              UNITED STATES DISTRICT COURT

14             CENTRAL DISTRICT OF CALIFORNIA

15                    CV 07-00380 JFW (FFMx)

16  MICHAEL NOZZI, an individual; NIDIA          Case No.:
    PELAEZ, an individual; LOS ANGELES
17  COALITION TO END HUNGER AND                  **CLASS ACTION COMPLAINT**
    HOMELESSNESS, a non-profit
18  organization, on behalf of themselves and    **DEMAND FOR JURY TRIAL**
    similarly situated persons,
19

20          Plaintiffs,
21                      vs.

22  HOUSING AUTHORITY OF THE CITY
23  OF LOS ANGELES; CITY OF LOS
    ANGELES; RUDOLPH MONTIEL, in his
24  official capacity; and DOES 1 through 100,
    inclusive,
25
26          Defendants.
27
28
                                     1

I.    **INTRODUCTION**

1.    For over thirty years, the federal "Section 8 Program" has provided housing benefits across the country to a highly vulnerable population comprised of impoverished, elderly, and often disabled residents, many of whom would swell the ranks of the homeless but for this critical government assistance.  Housing benefits are provided in the form of a "voucher" or housing subsidy, which supplements the amount paid by the recipient for rent and utilities.

2.    In or around July of 2005, the Housing Authority of the City of Los Angeles ("HACLA"), which administers the Section 8 Program locally, began implementing a large-scale rollback of housing benefits provided to Section 8 recipients in its jurisdiction.  The reduction was significant, averaging $121 per month, or over 10% of a typical recipient's household income.

3.    Before doing so, however, HACLA was required by applicable federal regulations, independently enforceable as well through state law, to provide adequate notice at least *one year* prior to the cut in the level of services.  This specific and mandatory one-year notice requirement was created so that recipients facing a benefit decrease would have sufficient time to either look for alternative housing, or make other arrangements to accommodate this significant change in assistance.

4.    HACLA did not make any meaningful attempt to comply with this notice requirement.  Rather than separately providing a formal administrative notice informing Section 8 recipients that they would be responsible for a specific increase in rent, HACLA inserted into a large stack of materials sent to each recipient a nondescript and technically worded flyer that failed to convey any useful information relating to the change in benefits.   This flyer had absolutely no indicia of proper notice:  it was not printed on letterhead; it did not specify the legal basis for the action; it did not provide a phone number for inquiries; it did not

1  specify any procedure for appeal; it did not require a signature acknowledging

2  receipt; and, most importantly, it did not inform recipients that their rent payments

3  would be going up.

4       5.    HACLA's absolute failure to comply with the Section 8 notice

5  requirements renders the subsequent implementation of the subsidy reduction

6  unlawful.  It constitutes a uniform due process violation of all affected recipients'

7  property interest in this federal program.  As a result, over 23,000 Section 8

8  recipients living in Los Angeles (including nearly 5,000 elderly families and 4,500

9  disabled families) literally and figuratively had the rug pulled out from under them.

10  They have been and will continue to be unlawfully deprived of federal housing

11  benefits estimated at over $25 million.

12       6.    The actions of all defendants have resulted in the denial of Plaintiffs'

13  and the class members' constitutional, statutory, and common law rights.

14  Furthermore, the acts of  Defendants HACLA and the City of Los Angeles

15  demonstrate an affirmative policy, and/or custom, and/or practice of condoning the

16  conduct set out herein.

17       7.    This action seeks class-wide relief to enjoin Defendants' continuing

18  violations, and to provide restitution to the class of affected Section 8 recipients

19  who suffered an unlawful increase in their rent.  It is ideally suited for Rule 23

20  class treatment because Defendants' failure to provide constitutionally adequate

21  notice is a direct result of a policy and practice that was applied uniformly to all

22  affected class members.

23  **II.**    **JURISDICTION AND VENUE**

24       8.    This is a civil action over which this Court has original jurisdiction

25  under 28 U.S.C. §1331 in that it seeks redress under 42 U.S.C. §1983 ("Section

26  1983") for the deprivation, under color of state law, of rights, privileges, and

27  immunities secured by federal statutes and the United States Constitution.  This

28

CLASS ACTION COMPLAINT

1    court has jurisdiction to hear pendent state claims under the doctrine of
2    supplemental jurisdiction set forth at 28 U.S.C. §1367.  Plaintiffs' action for
3    declaratory and injunctive relief is authorized by 20 U.S.C. §§2201, 2202, and
4    1343 and by Fed. R. Civ. P. 57 and 65.  Plaintiffs' state law claims are so related to
5    their federal law claims that they form part of the same case or controversy.
6    Accordingly, supplemental jurisdiction over those claims is appropriate under 28
7    U.S.C. §1367.
8         9.    Venue in this Court is proper under 20 U.S.C. §1391(b) because
9    various Defendants reside in this judicial district.  The events or omissions giving
10   rise to the claims occurred primarily in this judicial district.

11   **III.   PARTIES**

12       10.    Plaintiff Michael Nozzi ("NOZZI") is a disabled male who is, and
13   was at all times material herein, a resident of the County of Los Angeles, State of
14   California.  NOZZI has been receiving Section 8 benefits since 2003.

15       11.    Plaintiff Nidia Pelaez ("PELAEZ") is a female who is, and was at all
16   times material herein, a resident of the County of Los Angeles, State of California.
17   PELAEZ has been receiving Section 8 benefits since February 2004.

18       12.    Plaintiff Los Angeles Coalition to End Hunger and Homelessness
19   ("LACEHH") is a non-profit membership organization whose mission is to work to
20   end hunger and homelessness in Los Angeles through public education, technical
21   assistance, public policy analysis, advocacy, organizing, and community action.
22   LACEHH was founded in 1985, and has over 500 members, including individuals
23   who receive Section 8 assistance.  LACEHH is headquartered in Los Angeles.  It
24   created the Save Section 8 Coalition, a group of over 130 organizations that
25   advocates for the preservation and expansion of the Section 8 Housing Choice
26   Voucher Program locally, and at the national level.  LACEHH has long been
27   committed to preserving government assistance that helps poor and low-income
28

4

CLASS ACTION COMPLAINT

1   individuals to keep a roof over their heads, and to decrease the number who suffer

2   homelessness in Los Angeles.

3      13.  Defendant the City of Los Angeles ("CITY") is a political

4   subdivision duly organized and existing under the laws of the State of California.

5   Defendant CITY is sued both in its own right, and on the basis of *respondeat*

6   *superior* under California Government Code §815.2.

7      14.  Plaintiffs are informed and believe, and thereupon allege, that

8   Defendant the Housing Authority of the City of Los Angeles ("HACLA") is an

9   agency of the CITY, and is a public entity under California law.  California law

10   authorizes cities to create housing authorities to deal with the problem of safe and

11   sanitary dwelling accommodations for persons of low income.  Health & Safety

12   Code §§34201(a), 34240.  State law provides that a local housing authority shall

13   not transact any business or exercise its powers, unless a county or city

14   government declares the need for such a housing authority, and that any action by

15   the authority is conclusively deemed to have been established and authorized by a

16   resolution of the county or city. Heath & Safety Code §§34240, 34244.  As such,

17   the CITY has delegated its rulemaking authority over the issue of affordable

18   housing to HACLA.  The Mayor of the CITY appoints the individuals to serve as

19   commissioners of HACLA. Health & Safety Code §34270.  The Commission,

20   serving at the pleasure of the Mayor of the CITY, has the authority to determine

21   policy for HACLA, and to appoint or approve HACLA's top officials. Chapter 6 of

22   the Los Angeles Administrative Code includes several ordinances through which

23   the CITY enacted cooperation agreements with HACLA. L.A., Cal.,

24   Administrative Code, ch. 6, art. 2, §8.106 (Aug. 8, 1949).  The City Attorney for

25   the CITY acts as in-house counsel for HACLA.

26

27

28

CLASS ACTION COMPLAINT

15.     At all relevant times, Defendants HACLA and CITY operated as an agent and/or alter ego of the other and, in doing the acts alleged herein, were acting within the course and scope of said agency.  Because of the agency and/or corporate relationship between them, Defendants HACLA and City had knowledge or constructive notice of the acts of the other. Due to the control that the CITY exercises, or has the power to exercise, over HACLA, it is responsible for HACLA's actions.

16.     Even if it is not an agency of the CITY, HACLA is a separately suable public entity, and is sued both in its own right, and on the basis of *respondeat superior* under California Government Code §815.2.

17.     HACLA is a Public Housing Authority established under 42 U.S.C. §1437f. As such, it is required to establish and administer local policies that comply with federal regulations and requirements. 24 C.F.R. §§ 982.52(a), 982.54(a)-(c).

18.     Defendant Rudolph Monteil ("MONTEIL"), sued in his official capacity except as otherwise stated herein, is the Executive Director of HACLA.  It is Defendant MONTEIL's duty to oversee the operation of HACLA, and to execute policies and procedures implementing federal laws regarding the Section 8 Program.

19.     Plaintiff is ignorant of the true names and capacities of Defendants sued herein as DOES 1 through 100, inclusive, and therefore sues these Defendants by such fictitious names.  DOES 1 through 20 are agencies or entities responsible for the unlawful practices and polices alleged herein.  DOES 21 through 100 are present or former employees of HACLA or the CITY responsible for the unlawful practices and policies alleged herein.  Plaintiffs will seek leave to amend this

6

CLASS ACTION COMPLAINT

1  complaint to allege their true names and capacities when ascertained.

2      20.    Plaintiffs are informed and believe, and on that basis allege, that each

3  defendant, including the Doe Defendants, aided and abetted the wrongful acts of

4  the others.  To the extent any such Defendant did not personally violate the

5  constitutional or statutory rights of the Plaintiffs and the Class, each condoned,

6  encouraged, approved, ratified or otherwise participated in such actions.

7      21.    CITY and HACLA are sued both directly and vicariously on the basis

8  of *respondeat superior* liability under state law, as they are responsible for the

9  actions of all their agents and employees performed in the course and scope of

10  their employment and/or agency.  All of the actions alleged herein by agents and

11  employees of HACLA or the CITY were so performed. Thus, CITY and HACLA

12  are liable for the actions of all their employees and agents, named or unnamed,

13  who performed acts at issue in this lawsuit, all of whom were acting in the course

14  and scope of their employment and/or agency. In addition, the actions alleged

15  herein were undertaken by HACLA and the CITY pursuant to custom and policy

16  of those entities, making them independently liable under federal law.

17

18  **IV.    FACTUAL ALLEGATIONS**

19      **A.    Background of Section 8 Program**

20      21.    The Housing and Community Development Act of 1974 authorized

21  and established the Section 8 Program to be administered by the local Public

22  Housing Authorities ("PHA's").  The Section 8 Program, funded by the U.S.

23  Department of Housing and Urban Development ("HUD"), provides housing

24  assistance (a portion of rent and utilities) to extremely low and very low-income

25  families, senior citizens, and disabled or handicapped persons.  Its objective is to

26  provide affordable, decent and safe housing for eligible families, while increasing a

27

28

CLASS ACTION COMPLAINT

family's residential mobility and choice.

22.    In 1975, HACLA implemented the Section 8 Program providing rent subsidies in the form of housing assistance payments (HAPs) to private landlords on behalf of eligible families in Los Angeles.  HACLA, a state chartered public housing agency since 1938, now administers the second largest Section 8 Program in the country.

23.    In May 1999, HUD created a new Section 8 Program called the "Housing Choice Voucher Program."  The local PHA administers the Housing Choice Voucher Program under contract with HUD, and has, among others, the responsibility of determining the Voucher Payment Standard ("VPS") – the maximum monthly subsidy a Housing Authority can provide to a family.  *See* 24 C.F.R. §982.505(a).  The VPS is the subsidy generally needed to allow a Section 8 recipient to rent a moderately-priced dwelling unit in the local housing market and is used to calculate the amount of housing assistance a family will receive.

24.    HACLA's latest website indicates that it administers over 36,000 Section 8 Housing Choice Voucher tenancies in the City of Los Angeles. These tenancies are comprised of 59% families with children, 27% elderly individuals, and 14% non-elderly disabled persons.  Sources of income for these families include wages (22%), Supplemental Security Income ("SSI")(20%), CalWORKS (19%), Social Security Disability Income ("SSDI") and Social Security Retirement Income ("SSA") (13%), General Relief (4%), and 23% coming from other and combined sources.

**B.    Framework for Decreasing the VPS**

25.    Under HUD regulations, Housing Authorities conduct annual reexaminations to verify income and recertify family composition.  24 C.F.R.

CLASS ACTION COMPLAINT

982.516(a).  With that information, the Housing Authority calculates the tenant's share of rent, which is subtracted from the gross rent to determine the payment due from the Housing Authority.  The maximum Housing Authority payment is the VPS for an apartment of that size.

26.     PHAs have discretion to raise or lower the VPS within a statutorily-prescribed range.

27.     Before lowering the VPS, however, Housing Authorities must comply with a very specific timeline relating to notice.  A PHA must provide proper notice to a recipient whose benefits are being reduced at the **first** annual reexamination following the change in services.  24 C.F.R. 982.505(c)(3)(ii).  The actual reduction in benefits cannot occur until one year after this notice, upon the completion of the **second** reexamination after the effective date of the decision to decrease the level of services.  *Id.*

**C.     HACLA's Failure to Provide Notice**

28.     On April 2, 2004, HACLA made a decision to reduce the pre-existing VPS.  The impact on Section 8 participants was significant.  For example, the VPS for a 0-bedroom ("bachelor") apartment plummeted from $795 to only $674, a reduction of $121 per month.

29.     To implement this change in policy, HACLA stuck a one-page flyer in the materials mailed to each recipient on the date of their annual reexamination. Unlike other explanatory notices contained in these packets, the flyer did not require the recipient to acknowledge receipt by signing and returning the form. The flyer was not on letterhead, did not contain a phone number for inquiries, and did not give a legal basis for the decision.  More importantly, the flyer did not advise recipients that their out-of-pocket rent payment would actually be going up

CLASS ACTION COMPLAINT

(much less specify the amount of the increase).  Plaintiffs are informed and believe, and on that basis allege, that these flyers were sent out (buried among other reexamination materials) from approximately July 2004 through July 2005.

30.     The language of the flyer did not meaningfully communicate to the recipient that there would actually be a reduction in the portion of his or her rent that HACLA would pay, and a corresponding increase in the portion of his or her rent that the recipient would be required to pay.

31.     The VPS decrease went into effect with reexaminations that took place from July 2005 through July 2006.  According to HACLA estimates, approximately 45% of HACLA's approximately 45,000 Section 8 participants were adversely affected by the April 2004 VPS decrease.

**D.     The Representative Plaintiffs**

32.     Michael NOZZI is a 53-year-old man who is considered totally and permanently disabled by Social Security standards due to HIV/AIDS.  He lives in a rental unit within the City of Los Angeles.

33.     NOZZI has received a Section 8 housing benefit since December 1, 2003.  Prior to the VPS decrease at issue, his rent obligation was $231.00 per month (with HACLA paying the difference through the VPS).

34.     Effective June 1, 2006, NOZZI's Section 8 rent obligation was increased to $342.00 per month (a 48% increase).  NOZZI received nothing from HACLA informing him of this significant increase until on or around April 18, 2006, just a few weeks prior to the effective date of increase, and far from the one year or more required by 24 C.F.R. 982.505(c)(3)(ii).  This was the first time that he understood that his Section 8 benefits would be decreased.

35.     Soon thereafter, NOZZI appealed the increase through his counsel and

CLASS ACTION COMPLAINT

1  requested a hearing, but none was provided.

2      36.    Nidea PELAEZ is a single parent raising a young daughter.  Her

3  primary sources of income are the $239 she receives from CalWORKS and the

4  Social Security Survivor's Benefits she receives on behalf of her daughter.

5  PELAEZ resides in North Hollywood and has received a Section 8 housing benefit

6  through HACLA since February 1, 2004.

7      37.    Effective February 1, 2006, PELAEZ's Section 8 rent obligation was

8  increased to $252.00 per month (a 177% increase).  PELAEZ received nothing

9  from HACLA informing her of this significant increase until on or around

10 December 28, 2005, just five weeks prior to the effective date of increase, and far

11 from the one year or more required by 24 C.F.R. 982.505(c)(3)(ii).   This was the

12 first time that she understood that her Section 8 benefits would be decreased.

13     38.    PELAEZ also requested a hearing through counsel.  Although the

14 hearing was conducted nearly a year ago, no decision has been rendered by

15 HACLA.

16     39.    The 177% increase in the monthly rent that PELAEZ has had to pay

17 since February 1, 2006, has reduced the quality of life for her and her young

18 daughter.  PELAEZ has had difficulty affording suitable school clothes for her

19 daughter.  She has had to reduce the amount of money that she spends each month

20 on food in order to pay the increased rent.

21     40.    The Los Angeles Coalition to End Hunger and Homelessness is a

22 nonprofit corporation devoted to fighting the causes and effects of homelessness in

23 Los Angeles.  LACEHH advocates on behalf of low-income individuals  to ensure

24 more affordable housing for Los Angeles residents. LACEHH includes members

25 who receive Section 8 assistance.

CLASS ACTION COMPLAINT

41.     From 2005 to the present, members of LACEHHhave been subjected to the unlawful 2004 VPS decrease.  LACEHH has worked on behalf of these affected members to rescind this administrative decision, has devoted considerable efforts to advocating with HACLA that they maintain Section 8 benefits at levels prior to the 2004 decrease., and has met regularly with HACLA staff for this purpose.

**E.     Compliance With Cal. Government Code §910, *et seq.***

42.     Plaintiff NOZZI filed an administrative claim against the CITY, individually and on behalf of a class of similarly situated persons, on June 30, 2006, a copy of which is attached as Exhibit "A".  The CITY rejected his claim on July 17, 2006, a copy of which is attached as Exhibit "B".

43.     Plaintiff PELAEZ filed an administrative claim against the CITY, individually and on behalf of a class of similarly situated persons, on June 30, 2006, a copy of which is attached as Exhibit "C".  The CITY rejected her claim on July 17, 2006, a copy of which is attached as Exhibit "D".

44.     By written agreement, Plaintiffs' counsel and HACLA agreed that Plaintiffs' administrative claims against HACLA would be tolled as of June 1, 2006.  The agreement is attached as Exhibit "E". The agreement was entered into so that the parties could engage in preliminary settlement discussions free from the pressure of the expiration of any statutes of limitation.  When settlement discussion with HACLA did not prove fruitful, Plaintiffs then filed administrative claims with HACLA.  NOZZI filed his class claim on November 15, 2006, a copy of which is attached as Exhibit "F".  PELAEZ filed her class claim on November 15, 2006, and an amended claim on December 8, 2006, to correct a typographical error on the original claim. (A copy of the second PELAEZ claim is attached as Exhibit

1  "G".  Both claims were rejected on  December 29, 2006.  Copies of the rejection

2  letters are attached as Exhibit "H".

### F.   Plaintiffs' Prelitigation Settlement Efforts

3

4      45.   On May 24, 2006, Plaintiffs' counsel submitted a prelitigation

5  settlement letter to both the CITY and HACLA asking that they:

6          (a)   immediately cease and desist from enforcing a decreased

7  payment standard for all Section 8 recipients whose effective rent increases have

8  taken, or will take, effect during the July '05 to June '06 period;

9          (b)   provide restitution of all increased Section 8 payments made by

10  recipients in the past twelve months as a result of HACLA's improper action, and

11  going into the future;

12          (c)   agree in writing to increase the VPS (payment standard) to the

13  earlier (pre-2004) levels effective immediately (i.e., not phased in through

14  reexaminations occurring through July '07); and

15          (d)   pay Plaintiffs' attorney's fees incurred to date.

16      46.   The City indicated no interest in resolving Plaintiffs' claims prior to

17  the filing of the instant lawsuit, and declined to enter into a tolling agreement to

18  allow time to discuss and negotiate the issues.  Accordingly, as described

19  previously, Plaintiffs filed Govt. Code §910 claims against the City. As mentioned

20  in paragraph 43 above, Plaintiffs and HACLA entered into prelitigation settlement

21  discussions, but those discussions proved unsuccessful.  Plaintiffs then filed Govt.

22  Code §910 claims against HACLA.

23

## V.   CLASS ACTION ALLEGATIONS

24

25      47.   Plaintiffs bring this action on their own behalf, on behalf of the class

26  of all other persons similarly situated, pursuant to Rule 23 of the Federal Rules of

27  Civil Procedure.

28

48.     The Class is defined as all persons who experienced a decrease in their Section 8 Housing Choice Voucher benefits as a result of the defendants' decision to decrease the VPS in April 2004.

49.     The members of the Class are so numerous that joinder of all members is impracticable.  Plaintiffs are informed and believe, and thereon allege, that there are more than 20,000 tenants who are affected by Defendants' wrongful conduct.  Although the exact number of class members is not known at this time, the number and identity of class members can be easily determined from HACLA's electronic records.

There is a well-defined community of interest among the members of the proposed Class in that there are common questions of law and fact.  The common questions include, *inter alia*:

a.      Whether HACLA provided adequate notice to Section 8 recipients prior to implementing the 2004 VPS benefit decrease;

b.      Whether HACLA's purported notice complied with statutory and regulatory requirements;

c.      Whether HACLA's purported notice complied with constitutional due process requirements;

d.      Whether HACLA's failure to provide adequate notice invalidates the subsequent VPS benefit decrease;

e.      Whether HACLA's actions constitute violations under 42 U.S.C. §1983 of a protected property interest;

f.      Whether HACLA's actions constitute violations of California law, including Govt. Code §815.6.

50.     These questions of fact and law predominate over questions that affect only individual Class members.  Proof of a common set of facts will establish the

14

1   right of each Class member to recover, and there is an ascertainable class of

2   customers entitled to relief.

3       51.   Plaintiffs' claims are typical of those of the Class.

4       52.   Plaintiffs can and will fairly and adequately represent and protect the

5   interests of the proposed Class.  Plaintiffs have no interest that conflicts with, or is

6   antagonistic to, the interests of the proposed Class.  Plaintiffs have employed

7   attorneys who are experienced and competent in consumer and civil rights

8   litigation and class actions, and are able to adequately and vigorously pursue this

9   class action on behalf of all class members.

10       53.   A class action is superior to other available methods for the fair and

11   efficient adjudication of the claims asserted herein given that:

12       a.   Common questions of law and fact predominate over any

13   individual questions that may arise.  There would be enormous economies to the

14   court and the parties in litigating the common issues on a class-wide basis.

15   Plaintiffs' proof of liability will be based on the factual and legal nature of

16   HACLA's purported notice – which was distributed in the same way to all the

17   members of the class.

18       b.   Prosecution of separate actions by individual members of the

19   class would create a risk that inconsistent or varying adjudications with respect to

20   individual members of the class would establish incompatible standards of conduct

21   for the parties opposing the class.

22       c.   The size of each proposed Class member's individual claims for

23   damages and/or restitution is too small to make individual litigation an

24   economically viable alternative.  Given the amounts and the complexity of the

25   issues, few proposed Class members would have the interest or ability to prosecute

26   separate actions individually.

27       e.   Despite the relatively small size of individual claims, their

28

CLASS ACTION COMPLAINT

1   aggregate volume coupled with the economies of scale inherent in litigating similar

2   claims on a common basis will enable this case to be litigated as a class action on a

3   cost-effective basis.  No unusual difficulties are likely to be encountered in the

4   management of this class in that questions of law or fact to be litigated at the

5   liability stage are common to the class, as are injunctive, declaratory, and

6   restitutionary relief issues.

7        54.    Plaintiffs are informed and believe and thereon allege that the

8   defendants have acted on grounds generally applicable to the class, thereby making

9   appropriate final injunctive relief or declaratory relief with respect to the class as a

10  whole.

11                            **COUNT ONE**

12                   **DENIAL OF DUE PROCESS OF LAW**
                              **(42 U.S.C. §1983)**
13

14         **(By Plaintiff and Plaintiff Class Against CITY and HACLA)**

15        55.    Plaintiffs restate, reallege and incorporate by reference all previous

16  and subsequently stated paragraphs, as if fully set forth herein.

17        56.    The due process clause of the Fourteenth Amendment prohibits

18  government officials, and those acting in concert with them, acting under color of

19  law, from depriving persons of their property without due process of law.

20        57.    Defendants were obligated to provide notice to the Class of the VPS

21  decrease at the **first** annual reexamination following the change in services.  24

22  C.F.R. 982.505(c)(3)(ii).  The actual reduction in benefits cannot occur until one

23  year after this notice, upon the completion of the **second** reexamination after the

24  effective date of the decision to decrease the level of services.  *Id.*  By the terms of

25  this regulation, the Plaintiff Class had a property interest in the VPS and the

26  process by which it could be changed.

27        58.    Under California law, Govt. Code §815.6, 24 C.F.R. 982.505(c)(3)(ii)

28

16

CLASS ACTION COMPLAINT

1  constitutes an enactment designed to protect the Plaintiff Class from the type of

2  injury suffered by Plaintiffs herein. Under that California statute, where the

3  government entity involved has violated the terms of the enactment, has failed to

4  use reasonable diligence in discharging its duty under the enactment, and has

5  thereby injured the Plaintiffs, the injured party may sue. Accordingly, the Plaintiff

6  Class had an independent property interest in the regulation as incorporated into

7  Govt. Code §815.6 pursuant to California law.

8      59.    Furthermore, Plaintiffs had a protected property interest in their

9  Voucher Payment Standard pursuant to the provisions of 42 U.S.C. §1437f(o).

10     60.    Thus, Plaintiffs had a property interest in the provisions of C.F.R.

11  982.505(c)(3)(ii) under both state and federal law, and both independently (i.e., the

12  regulation, the state statute and the federal statute each standing alone) and

13  collectively (i.e., the three considered together in light of each). The deprivation of

14  that interest by defendants is permissible only in accordance with the requirements

15  of due process of law under the Fourteenth Amendment.

16     61.    By failing to provide Plaintiff Class clear or meaningful notice of the

17  actions HACLA intended to take and its consequences at the time required by 24

18  C.F.R. 982.505(c)(3)(ii), most particularly by failing to meaningfully or effectively

19  advise the Plaintiff Class that their out of pocket share of future rents would be

20  increased, as is more fully explained in ¶4, *supra*; and by failing to indicate from

21  whom the notice emanated, the legal basis for the action, a phone number for

22  inquiries, or how to protest or appeal the action, defendant HACLA deprived the

23  Plaintiff Class of due process of law in violation of the Fourteenth Amendment,

24  thereby entitling the Class to bring suit and recover damages pursuant to 42 U.S.C.

25  §1983.

26     62.    The wrongful conduct complained of herein was the product of a

27  policy and practice of the Defendants, was not the product of accident or

28

17

CLASS ACTION COMPLAINT

1    inadvertence, and was not random.  In so acting, Defendants were deliberately
2    indifferent to the rights of Plaintiffs and the Class, and acted in willful and reckless
3    disregard of the rights of Plaintiffs and the Class.

4        63.    As a direct and proximate cause of the aforementioned acts of
5    defendants, Plaintiffs and Plaintiff Class suffered losses in that they incurred
6    increased rental payments from their own pockets that Defendants were not legally
7    entitled to impose. Plaintiffs and the Plaintiff Class seek injunctive and declaratory
8    relief, an accounting, restitution and/or damages.  Said restitution or damages are
9    incidental to the injunctive relief sought herein.

**COUNT TWO**

**VIOLATION OF RIGHTS CREATED BY 42 U.S.C. §1437f
(Private Right of Action Available Under 42 U.S.C. §1983)**

**(By Plaintiff and Plaintiff Class Against CITY and HACLA)**

14       64.    Plaintiffs restate, reallege and incorporate by reference all previous
15   and subsequently stated paragraphs, as if fully set forth herein.

16       65.    Pursuant to the provisions of 42 U.S.C. §1437f(o), titled "Voucher
17   Program", when the Secretary of the Department of Housing and Urban
18   Development ("HUD") provides assistance to tenants, as is the case for the
19   Plaintiff Class, s/he shall do so using a payment standard to determine the monthly
20   assistance to qualified tenants. The statute establishes a system and criteria for
21   determining the amount of the monthly assistance payment, including where the
22   rent exceeds the payment standard. The system established under the statute
23   includes an annual review of family income.

24       66.    Thus, 42 U.S.C. §1437f(o) provides the right of qualified tenants to a
25   payment standard under the Voucher Program. 24 C.F.R. 982.505(c)(3)(ii), which
26   among other things addresses when and how the tenants covered by the program
27   are to have their payment standard changed, constitutes one aspect of HUD's

18

---

CLASS ACTION COMPLAINT

interpretation of the scope of the right established by the statute. As such, the "[l]anguage in [the] regulation … invoke[s] a private right of action that Congress through statutory text created." *Alexander v. Sandoval,* 532 U.S. 275, 291, 121 S. Ct. 1511, 1522 (2001).

67.     Defendants, as described in this complaint, deprived the Plaintiffs and Plaintiff Class of their federal rights, specifically their voucher payment standard rights created by 42 U.S.C. §1437f(o), under color of state law, and thereby violated 42 U.S.C. §1983.

68.     The wrongful conduct complained of herein was the product of a policy and practice of the defendants, was not the product of accident or inadvertence, and was not random.  In so acting, defendants were deliberately indifferent to the rights of Plaintiffs and the Class, and acted in willful and reckless disregard of the rights of Plaintiffs and the Class.

69.     As a direct and proximate cause of the aforementioned acts of defendants, Plaintiffs and Plaintiff Class suffered losses in that they incurred increased rental payments from their own pockets that Defendants were not legally entitled to impose. Plaintiffs and the Plaintiff Class seek injunctive and declaratory relief, an accounting, restitution and/or damages.  Said restitution or damages are incidental to the injunctive relief sought herein.

## COUNT THREE

### VIOLATION OF CAL. GOV'T CODE §815.6

#### (By Plaintiff and Plaintiff Class Against All Defendants)

70.     Plaintiffs restate, reallege and incorporate by reference all previous and subsequently stated paragraphs, as if fully set forth herein.

71.     *California Civil Code* §815.6 provides for liability against a public entity when:

(a)     The entity violates an enactment;

(b)   The plaintiffs are in the class of persons protected by the enactment;

(c)   The enactment is designed to protect the kind of injury complained of by the plaintiffs;

(d)   The violation proximately caused the injury; and

(e)   The public entity did not exercise reasonable diligence in discharging its duty established by the enactment.

72.   An enactment includes a federal or state constitutional provision, statute, charter provision, ordinance or properly adopted regulation.

73.   The Fourteenth Amendment of the *United States Constitution*; 24 C.F.R. §982.505(c)(3)-(4); Article I, §7 of the *California Constitution*; 42 U.S.C. §1437f; and *California Civil Code* §52.1 are all enactments within the meaning of Cal. Civil Code §815.6. Plaintiffs and the Plaintiff Class are in the class of persons protected by these enactments.

74.   The aforementioned enactments, applying to Plaintiffs, separately and together, constitute mandatory duties within the meaning of *Cal. Civil Code* §815.6 and were designed to prevent the kind of injuries alleged herein.

75.   Defendants, as described in this complaint, did not exercise reasonable diligence in discharging their duty established by the enactments enumerated above to refrain from violating the constitutional and statutory rights of Plaintiffs and the Class.

76.   As a direct and proximate cause of the aforementioned acts of Defendants, Plaintiffs and Plaintiff Class suffered losses in that they incurred increased rental payments from their own pockets that Defendants were not legally entitled to impose. Plaintiffs and the Plaintiff Class seek injunctive and declaratory relief, an accounting, restitution, and/or damages.  Said restitution or damages are incidental to the injunctive relief sought herein.

CLASS ACTION COMPLAINT

## COUNT FOUR

## VIOLATION OF ART. I, §7 OF CALIFORNIA CONSTITUTION
### California Due Process Clause

### (By Plaintiff and Plaintiff Class Against All Defendants)

77.    Plaintiffs restate, reallege and incorporate by reference all previous and subsequently stated paragraphs, as if fully set forth herein.

78.    Article I §7 of the California Constitution ("the California Due Process Clause") prohibits governmental Defendants, and those acting in concert with them, acting under color of law, from depriving persons of their property without due process of law.  As stated previously, Plaintiffs and the Class have a property interest in 24 C.F.R. 982.505(c)(3)(ii), the HUD regulation requiring notice prior to a VPS decrease, as well as in that regulation as incorporated into Govt. Code §815.6, and in 42 U.S.C. §1437f, both separately and in combination. Also, as stated previously, Defendants deprived the Plaintiff Class of that property right without due process of law.

79.    The wrongful conduct complained of herein was the product of a policy and practice of the Defendants, was not the product of accident or inadvertence, and was not random.  In so acting, Defendants were deliberately indifferent to the rights of Plaintiffs and the Class, and acted in willful and reckless disregard of the rights of Plaintiffs and the Class.

80.    Article I, §26 of the *California Constitution* provides that the provisions of the *California Constitution* are mandatory. Failure to provide the rights and benefits required under the statutory scheme, and violation of Plaintiffs' rights under Article I, §7, constitute a failure to discharge mandatory duties.

81.    As a direct and proximate cause of the aforementioned acts of Defendants, Plaintiffs and Plaintiff Class suffered losses in that they incurred increased rental payments from their own pockets that Defendants were not legally

entitled to impose. Plaintiffs and the Plaintiff Class seek injunctive and declaratory relief, an accounting, restitution and/or damages. Said restitution or damages are incidental to the injunctive relief sought herein.

## COUNT FIVE

## VIOLATION OF CAL. CIV. CODE §52.1

### (By Plaintiff and Plaintiff Class Against All Defendants)

82.     Plaintiffs restate, reallege and incorporate by reference all previous and subsequently stated paragraphs, as if fully set forth herein.

83.     *California Civil Code* §52.1 prohibits the interference, or attempted interference, through threats, intimidation, or coercion, of an individual's exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of the State of California

84.     Defendants' deprivation of Plaintiffs' and the Class' rights guaranteed under the Fourteenth Amendment of the *United States Constitution*, 24 C.F.R. §982.505(c)(3)-(4), 42 U.S.C. §1437f, Civil Code §815.6, and Article I, §§7 and 26 of the *California Constitution* is actionable under *California Civil Code* §52.1.

85.     The wrongful conduct complained of herein was the product of a policy and practice of the Defendants, was not the product of accident or inadvertence, and was not random. In so acting, Defendants were deliberately indifferent to the rights of Plaintiffs and the Class, and acted in willful and reckless disregard of the rights of Plaintiffs and the Class.

86.     Defendants changed the Voucher Payment Standard applicable to Plaintiffs and the Plaintiff Class in violation of the aforementioned federal and state laws and constitutional provisions, and required Plaintiffs and the Plaintiff Class to pay an increased out-of-pocket share of rents, or lose their housing. In so acting, Defendants interfered by threat, intimidation, or coercion with the exercise or enjoyment of Plaintiffs' and Plaintiff Class' rights secured by the Constitution

22

1    or laws of the United States and/or the State of California.

2        87.    If a person or persons, whether or not acting under color of law,

3    interferes by threats, or attempts to interfere by threats, intimidation, or coercion,

4    or of the rights secured by the Constitution or laws of this state, or of the United

5    States, the injured party has a claim under Civil Code §52.1

6        88.    As a direct and proximate cause of the aforementioned acts of

7    defendants, Plaintiffs and Plaintiff Class suffered losses in that they incurred

8    increased rental payments from their own pockets.  These were increased payments

9    that Defendants were not legally entitled to impose. Plaintiffs and the Plaintiff

10   Class seek injunctive and declaratory relief, an accounting, restitution and/or

11   damages, including damages under *California Civil Code* §52.  Said restitution or

12   damages are incidental to the injunctive relief sought herein.

13   **COUNT SIX**

14   **NEGLIGENCE**

15   **(By Plaintiff and Plaintiff Class Against All Defendants)**

16       89.    Plaintiffs reallege and incorporate by reference all previous and

17   subsequently stated paragraphs, as if set forth fully herein.

18       90.    Under *California Government Code* §815.2, the Defendants are liable

19   for the negligent acts of each and every one of its employees acting within the

20   scope of his or her employment, whether or not named in this complaint. This

21   liability includes liability for those acting pursuant to policy or higher level

22   instruction even though the individuals who so acted are not named in the

23   complaint.

24       91.    Defendants, at all material times herein, had a duty to Plaintiffs and all

25   class members as set forth in the statutes, regulations, enactments and common law

26   of California and the United States, as set forth herein.

27       92.    *California Evidence Code* §669 establishes "negligence *per se*" where

28

CLASS ACTION COMPLAINT

1    there is a violation of a statute, ordinance, or regulation of a public entity; the

2    violation proximately caused injury to a person; the injury resulted from an

3    occurrence of a nature which the statute was designed to prevent; and the person

4    suffering the injury was one of the class of persons for whose protection the statute

5    was adopted.  Under *Evidence Code* §669, defendants were negligent *per se.*

6        93.     In committing the acts and omissions described more fully herein,

7    Defendants knew, or reasonably should have known, that their conduct would

8    result in injury to Plaintiffs, and to those similarly situated.

9        94.     As a direct and proximate cause of the aforementioned acts of

10    Defendants, Plaintiffs and Plaintiff Class suffered losses in that they incurred

11    increased rental payments from their own pockets that Defendants were not legally

12    entitled to impose.  Plaintiffs and the Plaintiff Class seek injunctive and declaratory

13    relief, an accounting, restitution and/or damages. Said restitution or damages are

14    incidental to the injunctive relief sought herein.

15                         **COUNT SEVEN**

16    **TAXPAYERS' AND CLASS MEMBERS' SUIT FOR DECLARATORY**
17    **AND INJUNCTIVE RELIEF UNDER CAL. CODE OF CIVIL**
                         **PROCEDURE §526a**

18

19        **(By Plaintiff and Plaintiff Class Against All Defendants)**

20        95.     Plaintiffs reallege and incorporate by reference all previous and

21    subsequently stated paragraphs, as if set forth fully herein.

22        96.     Plaintiffs have been assessed for, and are liable to pay taxes in and to

23    the City of Los Angeles.  Plaintiffs and the Class have suffered and, unless this

24    Court restrains Defendants, will continue to suffer irreparable harm.

25        97.     Plaintiffs are informed and believe, and on that basis allege, that the

26    conduct of Defendants, and each of them, has been and, unless restrained, will

27    continue to be deleterious to the constitutional and statutory rights of Plaintiffs and

28

the general public.  Plaintiffs thereby seek to enforce important rights affecting the public interest within the meaning of *California Code of Civil Procedure* §1021.5.

98.     Plaintiffs have no adequate remedy at law.

99.     Unless the Defendants, and each of them, are enjoined from continuing their course of conduct, Plaintiffs will suffer ongoing and irreparable injury to their rights.  Plaintiffs seek injunctive relief pursuant to *California Code of Civil Procedure* §526 and the substantive standards reflected in the claims stated above, for which injunctive and declaratory relief are appropriate remedies.

100.   Defendants have expended public monies, and threaten and will continue to spend such monies to implement and engage in the illegal conduct described herein.

101.   Pursuant to *California Code of Civil Procedure* §§526 and 526(a), and to the statutes and common law enumerated above, the Plaintiffs and Plaintiff Class, both as taxpayers and as injured parties entitled to relief, seek declaratory and injunctive relief, restitution and an accounting to prevent continued harm and to protect themselves and the public from the defendants' unlawful policies and practices.  Said restitution is incidental to the injunctive relief sought herein.

<u>PRAYER FOR RELIEF</u>

102.   Wherefore, Plaintiffs and the Class seek the following relief:

     a.      Damages against each Defendant, as to each cause of action in which that defendant is named;

     b.      Restitution, including interest, on funds improperly collected;

     c.      A declaration that the policies and practices of the CITY and HACLA complained of herein violate federal and state Constitutions;

     d.      A preliminary and permanent injunction restraining Defendants in the future from engaging in the unlawful conduct stated

1    herein and from failing to provide restitution;

2          e.    Attorneys' fees under *California Code of Civil Procedure*

3             §1021.5, 42 U.S.C. §1988, Civil Code §52.1(h) and whatever

4             other statute or law may be applicable; and

5          f.    Such other relief as is just and proper.

6    **DEMAND FOR JURY TRIAL**

7

8    Plaintiffs, on behalf of themselves individually and on behalf of the class,

9    demand a jury trial.

10

11   DATED:  January 12, 2007        Respectfully submitted,

12   LITT, ESTUAR, HARRISON & KITSON, LLP

13   PUBLIC COUNSEL

14   ASIAN PACIFIC AMERICAN LEGAL CENTER

15

16   By:

17   Barrett S. Litt
    Paul J. Estuar

18   Daniel Grunfeld
    Hernan D. Vera

19   Jouis Rafti
    Julie A. Su
    Attorneys for Plaintiffs

20

21

22

23

24

25

26

27

28

26

CLASS ACTION COMPLAINT

# EXHIBIT

# A

# Litt, Estuar, Harrison, Miller & Kitson, LLP

BARRETT S. LITT • PAUL J. ESTUAR • GENIE HARRISON • BRYAN B. MILLER • ROBERT M. KITSON

*OF COUNSEL:* LEONARD WEINGLASS   HADSELL & STORMER

June 30, 2006

Office of the City Clerk
200 North Spring Street
Room 395, City Hall
Los Angeles, California 90012

     Re:  Claimant, MICHAEL NOZZI vs. City of Los Angeles

TO WHOM IT MAY CONCERN:

     This letter constitutes a claim for damages pursuant to California Government Code §910 *et seq.*, for injuries sustained by claimant and the class of claimants arising out of violations of statutory, common law, and constitutional rights.

## I.   SUMMARY OF CLAIM:

     Michael Nozzi, and the class of similarly situated persons (hereinafter "Claimants" collectively), brings this claim for deprivation of constitutional, statutory, and common law rights by the City of Los Angeles ("City") and various unknown persons employed by the City by virtue of acts, policies and practices of the City.  In the two years preceding the filing of this claim, Claimants allege the following:

     a)    In 2004, the City and the Housing Authority of the City of Los Angeles ("HACLA") decided to reduce the maximum monthly subsidy provided to a family, effectively increasing the rent portion to be paid by Section 8 recipients for their housing.  Under 24 C.F.R. §982.505(c)(ii), however, each affected family was required to have been advised, at the first annual reexamination following the change in policy, that the benefit reduction would not take place until after the recipient's second annual reexamination (*i.e.*, the following year after the notice).  The City utterly failed to comply with this notification prerequisite.

     b)    Rather than providing recipients with clear notification that their rent obligation would be increased the following year, HACLA mailed a one-page flyer in April 2004 containing the cryptic and technical statement that the Housing Authority "lowered the payment standards used to determine your portion of the rent."  This flyer had no indicia of an official notice: it was not printed on City or HACLA letterhead; it did not specify the legal basis for the action; it did not give a phone number for inquiries; it did not require any acknowledgement or signature by the recipient; and it did not specify any procedure for appealing the administrative decision.  More importantly, the flyer did not advise recipients that their rent obligation would actually be going up, by how much, or when.  Simply put, the flyer does not comport with minimal standards of due process. *See, e.g., Goldberg v. Kelly*, 397 U.S. 254 (1970).

Nozzi Tort Claim
June 30, 2006
Page 2

Because of the failure to comply with the notification requirement for the rent increases either already or to be implemented from July '05 to June '06, all rent increases imposed on Section 8 recipients to date as a result of this administrative action are legally invalid, and will be through the continuing impact lasting until June '07.

On behalf of themselves and a class of affected Section 8 recipients that they will seek to represent, our clients ask that the City:

a) immediately cease and desist from enforcing a decreased payment standard for all Section 8 recipients whose effective rent increases have taken, or will take, effect during the July '05 to June '06 period;

b) provide restitution of all increased Section 8 payments made by recipients in the past twelve months as a result of the City's improper action, and going into the future;

c) agree in writing to increase the VPS (payment standard) to the earlier (pre-2004) levels effective immediately (i.e., not phased in through reexaminations occurring through July '07); and

d) pay Claimants' attorney's fees incurred to date.

**II.   ADDRESS TO WHICH NOTICES SHOULD BE SENT:**

All correspondence related to this matter should be addressed to Paul J. Estuar, Litt, Estuar, Harrison, Miller & Kitson, LLP, 1055 Wilshire Boulevard, Suite 1880, Los Angeles, California 90017. The telephone number of LEHMK is (213) 386-3114.

**III.   HOW DAMAGES OR INJURIES OCCURRED:**

Within the last two years, Claimant and all others similarly situated were subjected to a decreased payment standard without receiving any type of written notice which would comport with 24 C.F.R. § 982.505(c)(ii) or due process standards. As a result Claimant and all others similarly situated received illegal rent increases, with little or no choice but to pay the increase or find alternate housing. This is particularly difficult for those Section 8 recipients who are the most vulnerable, e.g., elderly or disabled.

**IV.   WHEN DAMAGES OR INJURIES OCCURRED:**

The incident giving rise to this claim occurred within the last two years, and continued thereafter for all Claimants similarly situated. Specifically, on April 18, 2006, Mr. Nozzi received a notice that effective June 1, 2006, his VPS would decrease thereby resulting in an increased rent of $111 per month.

**V.   ACT OR OMMISSION CAUSING INJURIES:**

This claim arises from the actions of the City and the employees, representatives and agents thereof. The City is liable to claimants both because of its own conduct (and the conduct of its employees/agents), and because of its conduct in participating, approving, ratifying, consulting, and/or controlling the conduct of HACLA. Alternatively, the City is liable to claimants as a joint participant

68813  Client: 1459

Nozzi Tort Claim
June 30, 2006
Page 3

or actor with HACLA, though it should be made clear that **this claim is only against the City and not against HACLA.**

The unconstitutional and unlawful conduct gives rise to legal claims which include, but are not limited to, violations of state and federal law, state and federal constitutional and civil rights violations, including but not limited to federal causes of action including but not limited to violation of Due Process; California Gov't Code §815.6; California Civil §§52, 52.1; invidious discrimination; non-invidious discrimination; intentional torts; non-intentional torts; negligence; intentional infliction of emotional distress; negligent infliction of emotional distress; misrepresentation; vicarious liability; non-vicarious liability; conspiracy, and other legal theories which may apply.

## VI.    NAMES OF PERSONS CAUSING INJURIES:

At this time, Claimant does not know the identity of the specific individuals who are responsible for the adoption and formulation of the policies and practices objected to herein.

## VII.    DAMAGES OR INJURIES:

As a direct and proximate result of the wrongful acts alleged above, Mr. Nozzi has suffered and continues to suffer from injuries and damages, the full extent are not completely known at this time. Claimant alleges that his damages exceed $25,000, and that this is not a limited civil case.

Should you have any questions as to any of the foregoing, please do not hesitate to contact me.

Very truly yours,

Paul J. Estuar

# EXHIBIT

# B



# OFFICE OF THE CITY ATTORNEY
### ROCKARD J. DELGADILLO
### CITY ATTORNEY

July 17, 2006

Paul J. Estuar, Esquire
Litt, Estuar, Harrison, Miller & Kitson, LLP
1055 Wilshire Blvd., Suite 1880
Los Angeles, CA 90017

RE:  Our Claim No.  :  C07-0049
     Your Client    :  Michael Nozzi

Dear Mr. Estuar:

The claim which you submitted to the City of Los Angeles on June 30, 2006 is being accepted in part. The claim with the loss date commencing from June 30, 2005 has been accepted as timely and all other loss dates, prior to this date are rejected with no action being taken on it.

Government Code Section 911.2 states that a loss must be filed within one year of the accrual of the cause of action. To determine whether you have any further remedy or if further procedures are open to you, you may wish to consult with an attorney of your choice. If you wish to speak with an attorney, you should do so immediately.

This letter represents a formal notice to you that said claim has been denied. In view of this action, we are required by law to give you the following warning:

### ***WARNING***

**"Subject to certain exceptions, you have only six (6) months from the date this notice was personally delivered or deposited in the mail to file a court action alleging state causes of action. The time within which federal causes of action must be filed is governed by federal statutes."**

**"You may seek the advice of an attorney of your choice in connection with this matter. If you desire to consult an attorney, you should do so immediately."**



Paul J. Estuar, Esquire
Litt, Estuar, Harrison, Miller & Kitson, LLP
July 17, 2006
Page 2

Very truly yours,

THOMAS WONG
Chief Investigator

TW:tm
Telephone:  (213) 978-7071

P.S.  The Housing Authority of the City of Los Angeles is a separate public entity and not part of
the City of Los Angeles.  (See enclosure for address.)

# YOUR CLAIM SHOULD BE FILED WITH:

## HOUSING AUTHORITY OF THE CITY OF LOS ANGELES
### 2600 Wilshire Boulevard, 3rd Floor
### Los Angeles, California  90057

# EXHIBIT

# C

# Litt, Estuar, Harrison, Miller & Kitson, LLP

BARRETT S. LITT • PAUL J. ESTUAR • GENIE HARRISON • BRYAN B. MILLER • ROBERT M. KITSON

*OF COUNSEL:* LEONARD WEINGLASS   HADSELL & STORMER

June 30, 2006

Office of the City Clerk
200 North Spring Street
Room 395, City Hall
Los Angeles, California 90012

      Re:  Claimant, NIDIA PELAEZ vs. City of Los Angeles

TO WHOM IT MAY CONCERN:

      This letter constitutes a claim for damages pursuant to California Government Code §910 *et seq.*, for injuries sustained by claimant and the class of claimants arising out of violations of statutory, common law, and constitutional rights.

## I.    SUMMARY OF CLAIM:

      Nidia Pelaez, and the class of similarly situated persons (hereinafter "claimants" collectively), brings this claim for deprivation of constitutional, statutory, and common law rights by the City of Los Angeles ("City") and various unknown persons employed by the City by virtue of acts, policies and practices of the City.  Claimants allege that, in the two years preceding the filing of this claim, the following:

      a)      In 2004, the City and the Housing Authority of the City of Los Angeles ("HACLA") decided to reduce the maximum monthly subsidy provided to a family, effectively increasing the rent portion to be paid by Section 8 recipients for their housing.  Under 24 C.F.R. § 982.505(c)(ii), however, each affected family was required to have been advised, at the first annual reexamination following the change in policy, that the benefit reduction would not take place until after the recipient's second annual reexamination (*i.e.*, the following year after the notice).  The City utterly failed to comply with this notification prerequisite.

      b)      Rather than providing recipients with clear notification that their rent obligation would be increased the following year, HACLA mailed a one-page flyer in April 2004 containing the cryptic and technical statement that the Housing Authority "lowered the payment standards used to determine your portion of the rent."  This flyer had no indicia of an official notice: it was not printed on City or HACLA letterhead; it did not specify the legal basis for the action; it did not give a phone number for inquiries; it did not require any acknowledgement or signature by the recipient; and it did not specify any procedure for appealing the administrative decision.  More importantly, the flyer did not advise recipients that their rent obligation would actually be going up, by how much or when.  Simply put, the flyer does not comport with minimal standards of due process.  *See, e.g., Goldberg v. Kelly*, 397 U.S. 254 (1970).

Pelaez Tort Claim
June 30, 2006
Page 2

Because of the failure to comply with the notification requirement for the rent increases either already or to be implemented from July '05 to June '06, all rent increases imposed on Section 8 recipients to date as a result of this administrative action are legally invalid, and will be through the continuing impact lasting until June '07.

On behalf of themselves and a class of affected Section 8 recipients that they will seek to represent, our clients ask that the City:

a) immediately cease and desist from enforcing a decreased payment standard for all Section 8 recipients whose effective rent increases have taken, or will take, effect during the July '05 to June '06 period;

b) provide restitution of all increased Section 8 payments made by recipients in the past twelve months as a result of the City's improper action, and going into the future;

c) agree in writing to increase the VPS (payment standard) to the earlier (pre-2004) levels effective immediately (i.e., not phased in through reexaminations occurring through July '07); and

d) pay Claimants' attorney's fees incurred to date.

## II.    ADDRESS TO WHICH NOTICES SHOULD BE SENT:

All correspondence related to this matter should be addressed to Paul J. Estuar, Litt, Estuar, Harrison, Miller & Kitson, LLP, 1055 Wilshire Boulevard, Suite 1880, Los Angeles, California 90017. The telephone number of LEHMK is (213) 386-3114.

## III.    HOW DAMAGES OR INJURIES OCCURRED:

Within the last two years, claimant and all others similarly situated were subjected to a decreased payment standard without receiving any type of written notice which would comport with 24 C.F.R. § 982.505(c)(ii) or due process standards. As a result claimant and all others similarly situated received illegal rent increases, with little or no choice but to pay the increase or find alternate housing. This is particularly difficult for those Section 8 recipients who are the most vulnerable, e.g., elderly, disabled, single-parent families.

## IV.    WHEN DAMAGES OR INJURIES OCCURRED:

The incident giving rise to this claim occurred within the last two years, and continued thereafter for all claimants similarly situated. Specifically, on December 28, 2005, Ms. Pelaez received a notice that effective February 1, 2006, her VPS would decrease thereby resulting in an increased rent of $161 per month.

## V.    ACT OR OMMISSION CAUSING INJURIES:

This claim arises from the actions of the City and the employees, representatives and agents thereof. The City is liable to claimants both because of its own conduct (and the conduct of its employees/agents), and because of its conduct in participating, approving, ratifying, consulting, and/or controlling the conduct of HACLA. Alternatively, the City is liable to claimants as a joint participant

Pelaez Tort Claim
June 30, 2006
Page 3

or actor with HACLA, though it should be made clear that **this claim is only against the City and not against HACLA.**

The unconstitutional and unlawful conduct gives rise to legal claims which include, but are not limited to, violations of state and federal law, state and federal constitutional and civil rights violations, including but not limited to federal causes of action including but not limited to violation of Due Process; California Gov't Code §815.6; California Civil §§52, 52.1; invidious discrimination; non-invidious discrimination; intentional torts; non-intentional torts; negligence; intentional infliction of emotional distress; negligent infliction of emotional distress; misrepresentation; vicarious liability; non-vicarious liability; conspiracy, and other legal theories which may apply.

## VI.   NAMES OF PERSONS CAUSING INJURIES:

At this time, Claimant does not know the identity of the specific individuals who are responsible for the adoption and formulation of the policies and practices objected to herein.

## VII.   DAMAGES OR INJURIES:

As a direct and proximate result of the wrongful acts alleged above, Ms. Pelaez has suffered and continues to suffer from injuries and damages, the full extent are not completely known at this time. Claimant alleges that her damages exceed $25,000, and that this is not a limited civil case.

Should you have any questions as to any of the foregoing, please do not hesitate to contact me.

Very truly yours,

*Paul Estuar*

Paul J. Estuar

# EXHIBIT

# D



## OFFICE OF THE CITY ATTORNEY
### ROCKARD J. DELGADILLO
### CITY ATTORNEY

July 17, 2006

Paul J. Estuar, Esquire
Litt, Estuar, Harrison, Miller & Kitson, LLP
1055 Wilshire Blvd., Suite 1880
Los Angeles, CA 90017

RE: Our Claim No.   :   C07-0050
    Your Client     :   Nidia Pelaez

Dear Mr. Estuar:

The claim which you submitted to the City of Los Angeles on June 30, 2006 is being accepted in part. The claim with the loss date commencing from June 30, 2005 has been accepted as timely and all other loss dates, prior to this date are rejected with no action being taken on it.

Government Code Section 911.2 states that a loss must be filed within one year of the accrual of the cause of action. To determine whether you have any further remedy or if further procedures are open to you, you may wish to consult with an attorney of your choice. If you wish to speak with an attorney, you should do so immediately.

This letter represents a formal notice to you that said claim has been denied. In view of this action, we are required by law to give you the following warning:

### ***WARNING***

"Subject to certain exceptions, you have only six (6) months from the date this notice was personally delivered or deposited in the mail to file a court action alleging state causes of action. The time within which federal causes of action must be filed is governed by federal statutes."

"You may seek the advice of an attorney of your choice in connection with this matter. If you desire to consult an attorney, you should do so immediately."



Paul J. Estuar, Esquire
Litt, Estuar, Harrison, Miller & Kitson, LLP
July 17, 2006
Page 2


Very truly yours,


THOMAS WONG
Chief Investigator


TW:tm
Telephone:  (213) 978-7071

P.S.  The Housing Authority of the City of Los Angeles is a separate public entity and not part of
the City of Los Angeles.  (See enclosure for address.)

# YOUR CLAIM SHOULD BE FILED WITH:

**HOUSING AUTHORITY OF THE CITY OF LOS ANGELES**
**2600 Wilshire Boulevard, 3rd Floor**
**Los Angeles, California  90057**

# EXHIBIT

# E

## STANDSTILL AGREEMENT

This Agreement is entered into between the Housing Authority for the City of Los Angeles ("HACLA"), whose legal counsel is the City Attorney's Office of the City of Los Angeles, and Section 8 recipients (including but not limited to Michael Nodzi and Nidia Pelaez), and the class of similarly affected Section 8 Tenants they purport to represent (the definition of which is elaborated in the letter sent to HACLA on May 24, 2006), whose legal counsel is the firms of Public Counsel, Asian Pacific American Legal Center, and Litt, Estuar et al. (hereafter collectively referred to as "Plaintiffs"). The purpose of this Agreement is to maintain the status quo in all respects, including in the running of any statute of limitations, in order to allow the parties to negotiate in good faith to determine if this matter may be resolved without the necessity of active litigation. Accordingly, the parties agree:

1.    A dispute has arisen over the reduction in payment standards and the accompanying rise in the rental share paid by Section 8 recipients for their housing. The Plaintiffs position is more fully presented in the letter sent to HACLA by Plaintiffs' Counsel on May 24, 2006, which is attached as Exhibit 1 and whose contents are incorporated by this reference.

2.    The parties are negotiating in good faith to determine if the dispute can be resolved without active litigation.

3.    Plaintiffs will refrain from filing any lawsuit seeking relief for the matters addressed in Exhibit 1.

4.    Defendants agree that the statute of limitations, or any other relevant limitations period, for the filing of any lawsuit or administrative or other claim, including any § 910 claim, of any sort regarding the matters addressed in Exhibit 1 (hereafter "LAWSUIT OR CLAIM") is tolled effective June 1, 2006. This applies not only to the individual Plaintiffs but to the class of similarly affected Section 8 Tenants, as further defined in Exhibit 1, they purport to represent.

5.    This Agreement shall terminate 30 days after notice by either party that it wishes to terminate the Agreement.

1

6.  In the event Plaintiffs file any LAWSUIT after the termination of this Agreement, the LAWSUIT OR CLAIM will be deemed filed on June 1, 2006, no matter what date it is actually filed. But if the LAWSUIT OR CLAIM is filed more than 30 days after the Termination Date, as defined in ¶ 5, above, then the statute of limitations will begin to run again beginning on the 31st day.

DATED: _____          _____
                                HACLA, Executive Director

DATED: _____          _____
                                City Attorney's Office

DATED: 6-29-06                  _____

DATED: _____          _____

2

# EXHIBIT

# F

# Litt, Estuar, Harrison, Miller & Kitson, LLP

BARRETT S. LITT • PAUL J. ESTUAR • GENIE HARRISON • BRYAN B. MILLER • ROBERT M. KITSON

*OF COUNSEL:* LEONARD WEINGLASS   HADSELL & STORMER

November 15, 2006

Mr. Rudolf Montiel
Housing Authority of the City of Los Angeles
2600 Wilshire Blvd., 3rd Floor
Los Angeles, California 90057

Re:  Claimant, MICHAEL NOZZI vs. Housing Authority of the City of Los Angeles

TO WHOM IT MAY CONCERN:

This letter constitutes a claim for damages pursuant to California Government Code §910 *et seq.*, for injuries sustained by claimant and the class of claimants arising out of violations of statutory, common law, and constitutional rights.

By written standstill agreement, counsel for claimants and HACLA agreed that claimants' claims, including the time by which any tort or administrative claims must be filed, are tolled as of June 1, 2006. Any subsequently filed claims shall be deemed filed on that date. The agreement reads, in relevant part, "[t]he statute of limitations, or any other relevant limitations period, for the filing of any lawsuit or administrative or other claim, including any §910 claim, of any sort regarding the matters addressed in [this tort claim]... is tolled effective June 1, 2006. This applies not only to the individual Plaintiffs, but to the class of similarly affected Section 8 Tenants."

The Agreement also reads, as it relates to the deemed filed date of any claim or lawsuit, "In the event Plaintiffs file any LAWSUIT after the termination of this Agreement, the LAWSUIT OR CLAIM will be deemed filed on June 1, 2006, no matter what date it is actually filed. But if the LAWSUIT OR CLAIM is filed more than 30 days after the Termination Date, as defined in ¶5, above, then the statute of limitations will begin to run again beginning on the 31st day."

A copy of the Agreement is attached hereto as Exhibit 1. The original signed by HACLA Executive Director Rudy Montiel and HACLA counsel Craig Takenaka is, to our knowledge, in the possession of Mr. Takenaka, who is an attorney in the Los Angeles City Attorney's Office.

## I.    SUMMARY OF CLAIM:

Michael Nozzi, and the class of similarly situated persons (hereinafter "Claimants" collectively), brings this claim for deprivation of constitutional, statutory, and common law rights by the Housing Authority of the City of Los Angeles ("HACLA") and various unknown persons employed by HACLA by virtue of acts, policies and practices of HACLA. In the two years preceding the filing of this claim, Claimants allege the following:

Nozzi Tort Claim re HACLA
November 15, 2006
Page 2

     a)     In 2004, the City of Los Angeles and HACLA decided to reduce the maximum monthly subsidy provided to a family, effectively increasing the rent portion to be paid by Section 8 recipients for their housing.  Under 24 C.F.R. §982.505(c)(ii), however, each affected family was required to have been advised, at the first annual reexamination following the change in policy, of the change in policy and that the benefit reduction would not take place until after the recipient's second annual re-examination (*i.e.*, the following year after the notice).  HACLA utterly failed to comply with this notification prerequisite.

     b)     Rather than providing recipients with clear notification that their rent obligation would be increased the following year, HACLA mailed a one-page flyer in April 2004 containing the cryptic and technical statement that the Housing Authority "lowered the payment standards used to determine your portion of the rent."  This flyer had no indicia of an official notice: it was not printed on City or HACLA letterhead; it did not specify the legal basis for the action; it did not give a phone number for inquiries; it did not require any acknowledgement or signature by the recipient; and it did not specify any procedure for appealing the administrative decision.  More importantly, the flyer did not advise recipients that their rent obligation would actually be going up, by how much, or when.  Simply put, the flyer did not comport with minimal standards of due process.  *See, e.g., Goldberg v. Kelly*, 397 U.S. 254 (1970).

     Because of the failure to comply with the notification requirement for the rent increases either already or to be implemented from July '05 to June '06, all rent increases imposed on Section 8 recipients to date as a result of this administrative action are legally invalid, and will be through the continuing impact lasting until June '07.

     On behalf of themselves and a class of affected Section 8 recipients that they will seek to represent, our clients ask that HACLA:

     a)     immediately cease and desist from enforcing a decreased payment standard for all Section 8 recipients whose effective rent increases have taken, or will take, effect during the July '05 to June '06 period;

     b)     provide restitution of all increased Section 8 payments made by recipients in the past twelve months as a result of HACLA's improper action, and going into the future;

     c)     agree in writing to increase the VPS (payment standard) to the earlier (pre-2004) levels effective immediately (i.e., not phased in through re-examinations occurring through July '07); and

     d)     pay Claimants' attorneys' fees incurred to date.

Nozzi Tort Claim re HACLA
November 15, 2006
Page 3

## II.   ADDRESS TO WHICH NOTICES SHOULD BE SENT:

All correspondence related to this matter should be addressed to Paul J. Estuar, Litt, Estuar, Harrison, Miller & Kitson, LLP ("LEHMK"), 1055 Wilshire Boulevard, Suite 1880, Los Angeles, California 90017. The telephone number of LEHMK is (213) 386-3114.

## III.   HOW DAMAGES OR INJURIES OCCURRED:

Within the last two years, Claimant and all others similarly situated were subjected to a decreased payment standard without receiving any type of written notice which would comport with 24 C.F.R. §982.505(c)(ii) or due process standards. As a result, Claimant and all others similarly situated received illegal rent increases, with little or no choice but to pay the increase or find alternate housing. This is particularly difficult for those Section 8 recipients who are the most vulnerable; e.g., the elderly or disabled.

## IV.   WHEN DAMAGES OR INJURIES OCCURRED:

The incident giving rise to this claim occurred within the last two years, and continued thereafter for all Claimants similarly situated. Specifically, on April 18, 2006, Mr. Nozzi received a notice that effective June 1, 2006, his VPS would decrease thereby resulting in an increased rent of $111 per month.

## V.   ACT OR OMMISSION CAUSING INJURIES:

This claim arises from the actions of HACLA and the employees, representatives and agents thereof. HACLA is liable to Claimants because of its own conduct, and the conduct of its employees/agents. Alternatively, HACLA is liable to Claimants as a joint participant or actor with the City.

The unconstitutional and unlawful conduct gives rise to legal claims which include, but are not limited to, violations of state and federal law, state and federal constitutional and civil rights violations including, but not limited to, federal causes of action including, but not limited to, violation of Due Process; California Gov't Code §815.6; California Civil §§52, 52.1; invidious discrimination; non-invidious discrimination; intentional torts; non-intentional torts; negligence; intentional infliction of emotional distress; negligent infliction of emotional distress; misrepresentation; vicarious liability; non-vicarious liability; conspiracy, and other legal theories which may apply.

Attached as Exhibit 2 is a letter from Barrett S. Litt, written on behalf of the Claimant named herein, and all similarly situated individuals, to the attorneys for HACLA, Craig Takenaka and Neil Blumenthal, which describes in greater detail the salient facts and primary legal theories advanced by Claimants. Its contents are incorporated by this reference.

68813 v.2  Client: 1459

Nozzi Tort Claim re HACLA
November 15, 2006
Page 4

## VI.   NAMES OF PERSONS CAUSING INJURIES:

At this time, Claimant does not know the identity of the specific individuals who are responsible for the adoption and formulation of the policies and practices objected to herein. However, those individuals in so acting were acting in the course and scope of their employment with, and agency on behalf of HACLA, and HACLA endorsed, approved, authorized, supervised and/or ratified those policies and practices.

## VII.   DAMAGES OR INJURIES:

As a direct and proximate result of the wrongful acts alleged above, Mr. Nozzi, and the class of similarly situated Section 8 recipients whose rental share was increased due to the actions objected to in this letter, has suffered and continues to suffer from injuries and damages, the full extent of which are not completely known at this time.  Claimant alleges that his damages exceed $25,000, and that this is not a limited civil case.

Should you have any questions as to any of the foregoing, please do not hesitate to contact me.

Very truly yours,

Paul J. Estuar

# EXHIBIT

# G

# Litt, Estuar, Harrison, Miller & Kitson, LLP

BARRETT S. LITT • PAUL J. ESTUAR • GENIE HARRISON • BRYAN B. MILLER • ROBERT M. KITSON

*OF COUNSEL:*  LEONARD WEINGLASS   HADSELL & STORMER

December 8, 2006
AMENDED

Mr. Rudolf Montiel
Housing Authority of the City of Los Angeles
2600 Wilshire Blvd., 3rd Floor
Los Angeles, California 90057

Re:  Claimant, NIDIA PELAEZ vs. Housing Authority of the City of Los Angeles

TO WHOM IT MAY CONCERN:

This letter constitutes a claim for damages pursuant to California Government Code §910 *et seq.*, for injuries sustained by claimant and the class of claimants arising out of violations of statutory, common law, and constitutional rights.

By written standstill agreement, counsel for claimants and HACLA agreed that claimants' claims, including the time by which any tort or administrative claims must be filed, are tolled as of June 1, 2006, and any subsequently filed claims shall be deemed filed on that date. The agreement reads, in relevant part, "[t]he statute of limitations, or any other relevant limitations period, for the filing of any lawsuit or administrative or other claim, including any §910 claim, of any sort regarding the matters addressed in [this tort claim]... is tolled effective June 1, 2006. This applies not only to the individual Plaintiffs but to the class of similarly affected Section 8 Tenants."

The Agreement also reads, as it relates to the deemed filed date of any claim or lawsuit, "In the event Plaintiffs file any LAWSUIT after the termination of this Agreement, the LAWSUIT OR CLAIM will be deemed filed on June 1, 2006, no matter what date it is actually filed. But if the LAWSUIT OR CLAIM is filed more than 30 days after the Termination Date, as defined in ¶5, above, then the statute of limitations will begin to run again beginning on the 31st day."

A copy of the Agreement is attached hereto as Exhibit 1. The original signed by HACLA Executive Director Rudy Montiel and HACLA counsel Craig Takenaka is, to our knowledge, in the possession of Mr. Takenaka, who is an attorney in the Los Angeles City Attorney's Office.

## I.    SUMMARY OF CLAIM:

Nidia Pelaez, and the class of similarly situated persons (hereinafter "Claimants" collectively), brings this claim for deprivation of constitutional, statutory, and common law rights by the Housing Authority of the City of Los Angeles ("HACLA") and various unknown persons employed by HACLA by virtue of acts, policies and practices of HACLA. In the two years preceding the filing of this claim, Claimants allege the following:

Pelaez Tort Claim
December 8, 2006
Page 2

a)      In 2004, the City of Los Angeles and HACLA decided to reduce the maximum monthly subsidy provided to a family, effectively increasing the rent portion to be paid by Section 8 recipients for their housing.  Under 24 C.F.R. §982.505(c)(ii), however, each affected family was required to have been advised, at the first annual reexamination following the change in policy, of the change in policy and that the benefit reduction would not take place until after the recipient's second annual reexamination (*i.e.*, the following year after the notice).  HACLA utterly failed to comply with this notification prerequisite.

b)      Rather than providing recipients with clear notification that their rent obligation would be increased the following year, HACLA mailed a one-page flyer in April 2004 containing the cryptic and technical statement that the Housing Authority "lowered the payment standards used to determine your portion of the rent."  This flyer had no indicia of an official notice: it was not printed on City or HACLA letterhead; it did not specify the legal basis for the action; it did not give a phone number for inquiries; it did not require any acknowledgement or signature by the recipient; and it did not specify any procedure for appealing the administrative decision.  More importantly, the flyer did not advise recipients that their rent obligation would actually be going up, by how much or when.  Simply put, the flyer did not comport with minimal standards of due process.  *See, e.g., Goldberg v. Kelly*, 397 U.S. 254 (1970).

Because of the failure to comply with the notification requirement for the rent increases either already or to be implemented from July '05 to June '06, all rent increases imposed on Section 8 recipients to date as a result of this administrative action are legally invalid, and will be through the continuing impact lasting until June '07.

On behalf of themselves and a class of affected Section 8 recipients that they will seek to represent, our clients ask that HACLA:

a)      immediately cease and desist from enforcing a decreased payment standard for all Section 8 recipients whose effective rent increases have taken, or will take, effect during the July '05 to June '06 period;

b)      provide restitution of all increased Section 8 payments made by recipients in the past twelve months as a result of HACLA's improper action, and going into the future;

c)      agree in writing to increase the VPS (payment standard) to the earlier (pre-2004) levels effective immediately (i.e., not phased in through reexaminations occurring through July '07); and

d)      pay Claimants' attorney's fees incurred to date.

## II.      ADDRESS TO WHICH NOTICES SHOULD BE SENT:

All correspondence related to this matter should be addressed to Paul J. Estuar, Litt, Estuar, Harrison, Miller & Kitson, LLP ("LEHMK"), 1055 Wilshire Boulevard, Suite 1880, Los Angeles, California 90017.  The telephone number of LEHMK is (213) 386-3114.

Pelaez Tort Claim
December 8, 2006
Page 3

## III.   HOW DAMAGES OR INJURIES OCCURRED:

Within the last two years, claimant and all others similarly situated were subjected to a decreased payment standard without receiving any type of written notice which would comport with 24 C.F.R. § 982.505(c)(ii) or due process standards.  As a result claimant and all others similarly situated received illegal rent increases, with little or no choice but to pay the increase or find alternate housing. This is particularly difficult for those Section 8 recipients who are the most vulnerable, e.g., elderly, disabled, single-parent families.

## IV.   WHEN DAMAGES OR INJURIES OCCURRED:

The incident giving rise to this claim occurred within the last two years, and continued thereafter for all claimants similarly situated.  Specifically, on December 28, 2005, Ms. Pelaez received a notice that effective February 1, 2006, her VPS would decrease thereby resulting in an increased rent of $161 per month.

## V.   ACT OR OMMISSION CAUSING INJURIES:

This claim arises from the actions of HACLA and the employees, representatives and agents thereof. HACLA is liable to claimants because of its own conduct and the conduct of its employees/agents.  Alternatively, HACLA is liable to claimants as a joint participant or actor with the City.

The unconstitutional and unlawful conduct gives rise to legal claims which include, but are not limited to, violations of state and federal law, state and federal constitutional and civil rights violations, including but not limited to federal causes of action including but not limited to violation of Due Process; California Gov't Code §815.6; California Civil §§52, 52.1; invidious discrimination; non-invidious discrimination; intentional torts; non-intentional torts; negligence; intentional infliction of emotional distress; negligent infliction of emotional distress; misrepresentation; vicarious liability; non-vicarious liability; conspiracy, and other legal theories which may apply.

Attached as Exhibit 2 is a letter from Barrett S. Litt, written on behalf of the claimant named herein, and all similarly situated individuals, to the attorneys for HACLA, Craig Takenaka and Neil Blumenthal, which describes in greater detail the salient facts and primary legal theories advanced by Claimants. Its contents are incorporated by this reference.

## VI.   NAMES OF PERSONS CAUSING INJURIES:

At this time, Claimant does not know the identity of the specific individuals who are responsible for the adoption and formulation of the policies and practices objected to herein. However, those individuals in so acting were acting in the course and scope of their employment with, and agency on behalf of HACLA, and HACLA endorsed, approved, authorized, supervised and/or ratified those policies and practices.

Pelaez Tort Claim
December 8, 2006
Page 4

## VII.    DAMAGES OR INJURIES:

As a direct and proximate result of the wrongful acts alleged above, Ms. Pelaez, and the class of similarly situated Section 8 recipients whose rental share was increased due to the actions objected to in this letter, has suffered and continues to suffer from injuries and damages, the full extent of which are not completely known at this time.  Claimant alleges that her damages exceed $25,000, and that this is not a limited civil case.

Should you have any questions as to any of the foregoing, please do not hesitate to contact me.

Very truly yours,

Paul J. Estuar

# EXHIBIT

# H



**Housing Division**
**9th Floor - CHE**

213-978-7958
213-978-7957

### OFFICE OF THE CITY ATTORNEY
#### ROCKARD J. DELGADILLO
##### CITY ATTORNEY

December 29, 2006

Barrett Litt, Esq.
Litt, Estuar, Harrison, Miller & Kitson, LLP
1055 Wilshire Boulevard, Suite 1880
Los Angeles, California 90017

      Re:   *Claim Dated November 15, 2006*

Dear Mr. Litt:

      The November 15, 2006 claim against the Housing Authority for the City of Los Angeles which you filed has been referred to this Office.

      After reviewing the circumstances of this claim and the applicable law, we have come to the conclusion that this claim should be denied.

      This letter represents a formal notice to you that your claim has been denied. In view of this action, we are required by law to give you the following warning.

### <u>WARNING</u>

      "Subject to certain exceptions, you have only six (6) months from the date this notice was personally delivered or deposited in the mail to file a state court action on this claim. See Government Code Section 945.6.

      "You may seek the advice of an attorney of your choice in connection with this matter. If you desire to consult an attorney, you should do so immediately."

      Sincerely,

      CRAIG M. TAKENAKA
      Managing Assistant City Attorney

25780



Housing Division
9th Floor - CHE

213-978-7958
213-978-7957

## OFFICE OF THE CITY ATTORNEY
### ROCKARD J. DELGADILLO
### CITY ATTORNEY

December 29, 2006

Paul Estuar, Esq.
Litt, Estuar, Harrison, Miller & Kitson, LLP
1055 Wilshire Boulevard, Suite 1880
Los Angeles, California 90017

Re:   *Amended Claim Dated December 8, 2006*

Dear Mr. Estuar:

The December 8, 2006 amended claim against the Housing Authority for the City of Los Angeles which you filed has been referred to this Office.

After reviewing the circumstances of this claim and the applicable law, we have come to the conclusion that this claim should be denied.

This letter represents a formal notice to you that your claim has been denied.  In view of this action, we are required by law to give you the following warning.

### <u>WARNING</u>

"Subject to certain exceptions, you have only six (6) months from the date this notice was personally delivered or deposited in the mail to file a state court action on this claim. See Government Code Section 945.6.

"You may seek the advice of an attorney of your choice in connection with this matter. If you desire to consult an attorney, you should do so immediately."

Sincerely,

CRAIG M. TAKENAKA
Managing Assistant City Attorney

25781