1  BARRETT S. LITT, SBN 45527
   PAUL J. ESTUAR, SBN 167764
2  E-Mail: pestuar@littlaw.com
   LITT, ESTUAR, HARRISON & KITSON,
3  LLP
   1055 Wilshire Boulevard, Suite 1880
4  Los Angeles, California 90017
   Telephone: (213) 386-3114
5  Facsimile:  (213) 380-4585

6  DANIEL GRUNFELD, SBN 128494
   HERNAN D. VERA, SBN 175149
7  LOUIS RAFTI, SBN 243813
   E-Mail: hvera@publiccounsel.org
8  PUBLIC COUNSEL
   610 South Ardmore Avenue
9  Los Angeles, California  90005
   Telephone: (213) 385-2977
10 Facsimile:  (213) 385-9089

11 Attorneys for Plaintiffs

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FILED
CLERK U.S. DISTRICT COURT

MAY 23 2007

CENTRAL DISTRICT OF CALIFORNIA
BY          JG          DEPUTY

STEWART KWOH, SBN 61805
JULIE A. SU, SBN 174279
E-Mail: jsu@apalc.org
ASIAN PACIFIC AMERICAN LEGAL
CENTER OF SOUTHERN CALIFORNIA
1145 Wilshire Boulevard, 2nd Floor
Los Angeles, California 90017
Telephone: (213) 977-7500
Facsimile: (213) 977-7595

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

MICHAEL NOZZI, an individual;
NIDIA PELAEZ, an individual; LOS
ANGELES COALITION TO END
HUNGER AND HOMELESSNESS, a
non-profit organization, on behalf of
themselves and similarly situated
persons,

　　　　　Plaintiffs,

　　　　vs.

HOUSING AUTHORITY OF THE
CITY OF LOS ANGELES; RUDOLF
MONTIEL, in his official capacity; and
DOES 1 through 100, inclusive,

　　　　Defendants.

Case No.:  CV07-00380-GW (FFMx)

[Hon. George H. Wu]

**FIRST AMENDED CLASS
ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

49

1

FIRST AMENDED CLASS ACTION COMPLAINT

## I.  __INTRODUCTION__

1.      For over thirty years, the federal "Section 8 Program" has provided housing benefits across the country to a highly vulnerable population comprised of impoverished, elderly, and often disabled residents, many of whom would swell the ranks of the homeless but for this critical government assistance.  Housing benefits are provided in the form of a "voucher", or housing subsidy which supplements the amount paid by the recipient for rent and utilities.

2.      In or around July of 2005, the Housing Authority of the City of Los Angeles ("HACLA"), which administers the Section 8 Program locally, began implementing a large-scale rollback of housing benefits provided to Section 8 recipients in its jurisdiction.  The reduction was significant, averaging $121 per month, or over 10% of a typical recipient's household income.

3.      Before doing so, however, HACLA was required by applicable federal regulations, independently enforceable as well through state law, to provide adequate notice at least *one year* prior to the cut in the level of services.  This specific and mandatory one-year notice requirement was created so that recipients facing a benefit decrease would have sufficient time to either look for alternative housing, or make other arrangements to accommodate this significant change in assistance.

4.      HACLA did not make any meaningful attempt to comply with this notice requirement.  Rather than separately providing a formal administrative notice informing Section 8 recipients that they would be responsible for a specific increase in rent, HACLA inserted into a large stack of materials sent to each recipient a nondescript and technically worded flyer that failed to convey any useful information relating to the change in benefits.   This flyer had absolutely no indicia of proper notice:  it was not printed on letterhead; it did not specify the legal basis for the action; it did not provide a phone number for inquiries; it did not

FIRST AMENDED CLASS ACTION COMPLAINT

1   specify any procedure for appeal; it did not require a signature acknowledging

2   receipt; and, most importantly, it did not inform recipients that their rent payments

3   would be going up.

4        5.      HACLA's absolute failure to comply with the Section 8 notice

5   requirements renders the subsequent implementation of the subsidy reduction

6   unlawful.  It constitutes a uniform due process violation of all affected recipients'

7   property interest in this federal program.  As a result, over 23,000 Section 8

8   recipients living in Los Angeles (including nearly 5,000 elderly families and 4,500

9   disabled families) literally and figuratively had the rug pulled out from under them.

10  They have been and will continue to be unlawfully deprived of federal housing

11  benefits estimated at over $25 million.

12       6.      The actions of all defendants have resulted in the denial of Plaintiffs'

13  and the class members' constitutional, statutory, and common law rights.

14  Furthermore, the acts of Defendants demonstrate an affirmative policy, and/or

15  custom, and/or practice of condoning the conduct set out herein.

16       7.      This action seeks class-wide relief to enjoin Defendants' continuing

17  violations, and to provide restitution to the class of affected Section 8 recipients

18  who suffered an unlawful increase in their rent.  It is ideally suited for Rule 23

19  class treatment because Defendants' failure to provide constitutionally adequate

20  notice is a direct result of a policy and practice that was applied uniformly to all

21  affected class members.

22  **II.    JURISDICTION AND VENUE**

23       8.      This is a civil action over which this Court has original jurisdiction

24  under 28 U.S.C. §1331 in that it seeks redress under 42 U.S.C. §1983 ("Section

25  1983") for the deprivation, under color of state law, of rights, privileges, and

26  immunities secured by federal statutes and the United States Constitution.  This

27  court has jurisdiction to hear pendent state claims under the doctrine of

28

FIRST AMENDED CLASS ACTION COMPLAINT

1    supplemental jurisdiction set forth at 28 U.S.C. §1367.  Plaintiffs' action for

2    declaratory and injunctive relief is authorized by 20 U.S.C. §§2201, 2202, and

3    1343, and by Fed. R. Civ. P. 57 and 65.  Plaintiffs' state law claims are so related

4    to their federal law claims that they form part of the same case or controversy.

5    Accordingly, supplemental jurisdiction over those claims is appropriate under 28

6    U.S.C. §1367.

7         9.     Venue in this Court is proper under 20 U.S.C. §1391(b) because

8    various Defendants reside in this judicial district.  The events or omissions giving

9    rise to the claims occurred primarily in this judicial district.

10   **III.   PARTIES**

11        10.    Plaintiff Michael Nozzi ("NOZZI") is a disabled male who is, and

12   was at all times material herein, a resident of the County of Los Angeles, State of

13   California.  NOZZI has been receiving Section 8 benefits since 2003.

14        11.    Plaintiff Nidia Pelaez ("PELAEZ") is a female who is, and was at all

15   times material herein, a resident of the County of Los Angeles, State of California.

16   PELAEZ has been receiving Section 8 benefits since February 2004.

17        12.    Plaintiff Los Angeles Coalition to End Hunger and Homelessness

18   ("LACEHH") is a non-profit membership organization whose mission is to work to

19   end hunger and homelessness in Los Angeles through public education, technical

20   assistance, public policy analysis, advocacy, organizing, and community action.

21   LACEHH was founded in 1985, and has over 500 members, including individuals

22   who receive Section 8 assistance.  LACEHH is headquartered in Los Angeles.  It

23   created the Save Section 8 Coalition, a group of over 130 organizations that

24   advocates for the preservation and expansion of the Section 8 Housing Choice

25   Voucher Program locally, and at the national level.  LACEHH has long been

26   committed to preserving government assistance that helps poor and low-income

27   individuals keep a roof over their heads, and decreases the number who suffer

28

1   homelessness in Los Angeles.

2

3        13.    Plaintiffs are informed and believe, and thereupon allege, that

4   Defendant the Housing Authority of the City of Los Angeles ("HACLA") is an

5   agency of the City of Los Angeles, and is a public entity under California law.

6   California law authorizes cities to create housing authorities to deal with the

7   problem of safe and sanitary dwelling accommodations for persons of low income.

8   Health & Safety Code §§34201(a), 34240.  State law provides that a local housing

9   authority shall not transact any business or exercise its powers, unless a county or

10   city government declares the need for such a housing authority, and that any action

11   by the authority is conclusively deemed to have been established and authorized by

12   a resolution of the county or city. Heath & Safety Code §§34240, 34244.  As such,

13   the City of Los Angeles has delegated its rulemaking authority over the issue of

14   affordable housing to HACLA.

15        14.    HACLA is a Public Housing Authority established under 42 U.S.C.

16   §1437f. As such, it is required to establish and administer local policies that

17   comply with federal regulations and requirements. 24 C.F.R. §§ 982.52(a),

18   982.54(a)-(c).

19        15.    Defendant Rudolf Monteil ("MONTEIL"), sued in his official

20   capacity except as otherwise stated herein, is the Executive Director of HACLA.  It

21   is Defendant MONTEIL's duty to oversee the operation of HACLA, and to

22   execute policies and procedures implementing federal laws regarding the Section 8

23   Program.

24        16.    Plaintiff is ignorant of the true names and capacities of Defendants

25   sued herein as DOES 1 through 100 inclusive, and therefore sues these Defendants

26

27

28

FIRST AMENDED CLASS ACTION COMPLAINT

1    by such fictitious names.  DOES 1 through 20 are agencies or entities responsible

2    for the unlawful practices and polices alleged herein.  DOES 21 through 100 are

3    present or former employees of HACLA or the CITY responsible for the unlawful

4    practices and policies alleged herein.  Plaintiffs will seek leave to amend this

5    complaint to allege their true names and capacities when ascertained.

6           17.    Plaintiffs are informed and believe, and on that basis allege, that each

7    Defendant, including the Doe Defendants, aided and abetted the wrongful acts of

8    the others.  To the extent any such Defendant did not personally violate the

9    constitutional or statutory rights of the Plaintiffs and the Class, each condoned,

10   encouraged, approved, ratified or otherwise participated in such actions.

11

12          18.    HACLA is sued both directly and vicariously on the basis of

13   *respondeat superior* liability under state law, as it is responsible for the actions of

14   all its agents and employees performed in the course and scope of their

15   employment and/or agency.  All of the actions alleged herein by agents and

16   employees of HACLA were so performed. Thus, HACLA is liable for the actions

17   of all their employees and agents, named or unnamed, who performed acts at issue

18   in this lawsuit, all of whom were acting in the course and scope of their

19   employment and/or agency. In addition, the actions alleged herein were undertaken

20   by HACLA pursuant to custom and policy of those entities, making them

21   independently liable under federal law.

22

23   **IV.   FACTUAL ALLEGATIONS**

24          **A.    Background of Section 8 Program**

25          21.    The Housing and Community Development Act of 1974 authorized

26   and established the Section 8 Program to be administered by the local Public

27   Housing Authorities ("PHA's").  The Section 8 Program, funded by the U.S.

28

FIRST AMENDED CLASS ACTION COMPLAINT

Department of Housing and Urban Development ("HUD"), provides housing assistance, a portion of rent and utilities, to extremely low and very low-income families, senior citizens, and disabled or handicapped persons. Its objective is to provide affordable, decent and safe housing for eligible families, while increasing a family's residential mobility and choice.

22.　In 1975, HACLA implemented the Section 8 Program providing rent subsidies in the form of housing assistance payments (HAPs) to private landlords on behalf of eligible families in Los Angeles. HACLA, a state chartered public housing agency since 1938, now administers the second largest Section 8 Program in the country.

23.　In May 1999, HUD created a new Section 8 Program called the "Housing Choice Voucher Program." The local PHA administers the Housing Choice Voucher Program under contract with HUD, and has, among others, the responsibility of determining the Voucher Payment Standard ("VPS") – the maximum monthly subsidy a Housing Authority can provide to a family. *See* 24 C.F.R. §982.505(a). The VPS is the subsidy generally needed to allow a Section 8 recipient to rent a moderately-priced dwelling unit in the local housing market, and is used to calculate the amount of housing assistance a family will receive.

24.　HACLA's latest website indicates that it administers over 36,000 Section 8 Housing Choice Voucher tenancies in the City of Los Angeles. These tenancies are comprised of 59% families with children, 27% elderly individuals, and 14% non-elderly disabled persons. Sources of income for these families include wages (22%), Supplemental Security Income ("SSI")(20%), CalWORKS (19%), Social Security Disability Income ("SSDI") and Social Security Retirement Income ("SSA") (13%), General Relief (4%), and 23% coming from other and

FIRST AMENDED CLASS ACTION COMPLAINT

1  combined sources.

2  **B.      Framework for Decreasing the VPS**

3       25.      Under HUD regulations, Housing Authorities conduct annual re-

4  examinations to verify income and recertify family composition.  24 C.F.R.

5  982.516(a).  With that information, the Housing Authority calculates the tenant's

6  share of rent, which is subtracted from the gross rent to determine the payment due

7  from the Housing Authority.  The maximum Housing Authority payment is the

8  VPS for an apartment of that size.

9

10      26.      PHAs have discretion to raise or lower the VPS within a statutorily-

11 prescribed range.

12      27.      Before lowering the VPS, however, Housing Authorities must comply

13 with a very specific timeline relating to notice.  A PHA must provide proper notice

14 to a recipient whose benefits are being reduced at the **first** annual re-examination

15 following the change in services.  24 C.F.R. 982.505(c)(3)(ii).  <u>The actual</u>

16 <u>reduction in benefits cannot occur until one year after this notice</u>, upon the

17 completion of the **second** re-examination after the effective date of the decision to

18 decrease the level of services.  *Id.*

19 **C.      HACLA's Failure to Provide Notice**

20      28.      On April 2, 2004, HACLA made a decision to reduce the pre-existing

21 VPS.  The impact on Section 8 participants was significant.  For example, the VPS

22 for a 0-bedroom ("bachelor") apartment plummeted from $795 to only $674, a

23 reduction of $121 per month.

24      29.      To implement this change in policy, HACLA stuck a one-page flyer in

25 the materials mailed to each recipient on the date of their annual re-examination.

26 Unlike other explanatory notices contained in these packets, the flyer did not

27

28

FIRST AMENDED CLASS ACTION COMPLAINT

require the recipient to acknowledge receipt by signing and returning the form. The flyer was not on letterhead, did not contain a phone number for inquiries, and did not give a legal basis for the decision.  More importantly, the flyer did not advise recipients that their out-of-pocket rent payment would actually be going up, much less specify the amount of the increase.  Plaintiffs are informed and believe, and on that basis allege, that these flyers were sent out, buried among other re-examination materials, from approximately July 2004 through July 2005.

30.    The language of the flyer did not meaningfully communicate to the recipient that there would actually be a reduction in the portion of his or her rent that HACLA would pay, and a corresponding increase in the portion of his or her rent that the recipient would be required to pay.

31.    The VPS decrease went into effect with re-examinations that took place from July 2005 through July 2006.  According to HACLA estimates, approximately 45% of HACLA's approximately 45,000 Section 8 participants were adversely affected by the April 2004 VPS decrease.

**D.    The Representative Plaintiffs**

32.    Michael NOZZI is a 53-year-old man who is considered totally and permanently disabled by Social Security standards due to HIV/AIDS.  He lives in a rental unit within the City of Los Angeles.

33.    NOZZI has received a Section 8 housing benefit since December 1, 2003.  Prior to the VPS decrease at issue, his rent obligation was $231.00 per month with HACLA paying the difference through the VPS.

34.    Effective June 1, 2006, NOZZI's Section 8 rent obligation was increased to $342.00 per month (a 48% increase).  NOZZI received nothing from HACLA informing him of this significant increase until on or around April 18,

FIRST AMENDED CLASS ACTION COMPLAINT

2006, just a few weeks prior to the effective date of increase, and far from the one year or more required by 24 C.F.R. 982.505(c)(3)(ii).  This was the first time that he understood that his Section 8 benefits would be decreased.

35.    Soon thereafter, NOZZI appealed the increase through his counsel, and requested a hearing. No hearing was provided.

36.    Nidea PELAEZ is a single parent raising a young daughter.  Her primary sources of income are the $239 she receives from CalWORKS, and the Social Security Survivor's Benefits she receives on behalf of her daughter. PELAEZ resides in North Hollywood and has received a Section 8 housing benefit through HACLA since February 1, 2004.

37.    Effective February 1, 2006, PELAEZ's Section 8 rent obligation was increased to $252.00 per month (a 177% increase).  PELAEZ received nothing from HACLA informing her of this significant increase until on or around December 28, 2005, just five weeks prior to the effective date of increase, and far from the one year or more required by 24 C.F.R. 982.505(c)(3)(ii).   This was the first time that she understood that her Section 8 benefits would be decreased.

38.    PELAEZ also requested a hearing through counsel.  Although the hearing was conducted nearly a year ago, no decision has been rendered by HACLA.

39.    The 177% increase in the monthly rent that PELAEZ has had to pay since February 1, 2006, has reduced the quality of life for her and her young daughter.  PELAEZ has had difficulty affording suitable school clothes for her daughter.  She has had to reduce the amount of money that she spends each month on food in order to pay the increased rent.

40.    The Los Angeles Coalition to End Hunger and Homelessness is a

10

FIRST AMENDED CLASS ACTION COMPLAINT

nonprofit corporation devoted to fighting the causes and effects of homelessness in Los Angeles.  LACEHH advocates on behalf of low-income individuals to ensure more affordable housing for Los Angeles residents. LACEHH includes members who receive Section 8 assistance.

41.    From 2005 to the present, members of LACEHH have been subjected to the unlawful 2004 VPS decrease.  LACEHH has worked on behalf of these affected members to rescind this administrative decision, has devoted considerable efforts to advocating with HACLA that they maintain Section 8 benefits at levels prior to the 2004 decrease., and has met regularly with HACLA staff for this purpose.

**E.    Compliance With Cal. Government Code §910, *et seq.***

42.    By written agreement, Plaintiffs' counsel and HACLA agreed that Plaintiffs' administrative claims against HACLA would be tolled as of June 1, 2006.  The agreement is attached as Exhibit "A". The agreement was entered into so that the parties could engage in preliminary settlement discussions free from the pressure of the expiration of any statutes of limitation.  When settlement discussion with HACLA did not prove fruitful, Plaintiffs then filed administrative claims with HACLA.  NOZZI filed his class claim on November 15, 2006, a copy of which is attached as Exhibit "B".  PELAEZ filed her class claim on November 15, 2006, and an amended claim on December 8, 2006, to correct a typographical error on the original claim. (A copy of the second PELAEZ claim is attached as Exhibit "C".)  Both claims were rejected on  December 29, 2006.  Copies of the rejection letters are attached as Exhibit "D".

**F.    Plaintiffs' Prelitigation Settlement Efforts**

43.    On May 24, 2006, Plaintiffs' counsel submitted a prelitigation

11

1    settlement letter to HACLA and the City of Los Angeles asking that they:

2              (a)    immediately cease and desist from enforcing a decreased

3    payment standard for all Section 8 recipients whose effective rent increases have

4    taken, or will take, effect during the July '05 to June '06 period;

5              (b)    provide restitution of all increased Section 8 payments made by

6    recipients in the past twelve months as a result of HACLA's improper action, and

7    going into the future;

8              (c)    agree in writing to increase the VPS (payment standard) to the

9    earlier (pre-2004) levels effective immediately (i.e., not phased in through

10   reexaminations occurring through July '07); and

11             (d)    pay Plaintiffs' attorney's fees incurred to date.

12       44.   As mentioned above, Plaintiffs and HACLA entered into prelitigation

13   settlement discussions, but those discussions proved unsuccessful.  Plaintiffs then

14   filed Govt. Code §910 claims against HACLA.

15   **V.    CLASS ACTION ALLEGATIONS**

16       45.   Plaintiffs bring this action on their own behalf, and on behalf of the

17   class of all other persons similarly situated, pursuant to Rule 23 of the Federal

18   Rules of Civil Procedure.

19       46.   The Class is defined as all persons who experienced a decrease in

20   their Section 8 Housing Choice Voucher benefits as a result of the Defendants'

21   decision to decrease the VPS in April 2004.

22       47.   The members of the Class are so numerous that joinder of all

23   members is impracticable.  Plaintiffs are informed and believe, and thereon allege,

24   that there are more than 20,000 tenants who are affected by Defendants' wrongful

25   conduct.  Although the exact number of class members is not known at this time,

26   the number and identity of class members can be easily determined from

27

28

12

FIRST AMENDED CLASS ACTION COMPLAINT

1    HACLA's electronic records.

2         There is a well-defined community of interest among the members of the

3    proposed Class in that there are common questions of law and fact.  The common

4    questions include, *inter alia*:

5              a.      Whether HACLA provided adequate notice to Section 8

6    recipients prior to implementing the 2004 VPS benefit decrease;

7              b.      Whether HACLA's purported notice complied with statutory

8    and regulatory requirements;

9              c.      Whether HACLA's purported notice complied with

10   constitutional due process requirements;

11             d.      Whether HACLA's failure to provide adequate notice

12   invalidates the subsequent VPS benefit decrease;

13             e.      Whether HACLA's actions constitute violations under 42

14   U.S.C. §1983 of a protected property interest;

15             f.      Whether HACLA's actions constitute violations of California

16   law, including Govt. Code §815.6.

17        48.    These questions of fact and law predominate over questions that affect

18   only individual Class members.  Proof of a common set of facts will establish the

19   right of each Class member to recover, and there is an ascertainable class of

20   customers entitled to relief.

21        49.    Plaintiffs' claims are typical of those of the Class.

22        50.    Plaintiffs can and will fairly and adequately represent and protect the

23   interests of the proposed Class.  Plaintiffs have no interest that conflicts with, or is

24   antagonistic to, the interests of the proposed Class.  Plaintiffs have employed

25   attorneys who are experienced and competent in consumer and civil rights

26   litigation and class actions, and are able to adequately and vigorously pursue this

27   class action on behalf of all class members.

28

1    51.    A class action is superior to other available methods for the fair and

2    efficient adjudication of the claims asserted herein given that:

3           a.    Common questions of law and fact predominate over any

4    individual questions that may arise.  There would be enormous economies to the

5    court and the parties in litigating the common issues on a class-wide basis.

6    Plaintiffs' proof of liability will be based on the factual and legal nature of

7    HACLA's purported notice, which was distributed in the same way to all members

8    of the class.

9           b.    Prosecution of separate actions by individual members of the

10   class would create a risk that inconsistent or varying adjudications with respect to

11   individual members of the class would establish incompatible standards of conduct

12   for the parties opposing the class.

13          c.    The size of each proposed class member's individual claims for

14   damages and/or restitution is too small to make individual litigation an

15   economically viable alternative.  Given the amounts, and the complexity of the

16   issues, few proposed class members would have the interest or ability to prosecute

17   separate actions individually.

18          e.    Despite the relatively small size of individual claims, their

19   aggregate volume coupled with the economies of scale inherent in litigating similar

20   claims on a common basis will enable this case to be litigated as a class action on a

21   cost-effective basis.  No unusual difficulties are likely to be encountered in the

22   management of this class in that questions of law or fact to be litigated at the

23   liability stage are common to the class, as are injunctive, declaratory, and

24   restitutionary relief issues.

25   52.    Plaintiffs are informed and believe, and thereon allege, that

26   Defendants have acted on grounds generally applicable to the class, thereby

27   making appropriate final injunctive relief or declaratory relief with respect to the

28

FIRST AMENDED CLASS ACTION COMPLAINT

1 │ class as a whole.

2 │ **COUNT ONE**

3 │ **DENIAL OF DUE PROCESS OF LAW**

4 │ **(42 U.S.C. §1983)**

5 │ **(By Plaintiff and Plaintiff Class Against HACLA)**

6 │ 53.   Plaintiffs restate, reallege, and incorporate by reference all previous

7 │ and subsequently stated paragraphs as if fully set forth herein.

8 │ 54.   The due process clause of the Fourteenth Amendment prohibits

9 │ government officials, and those acting in concert with them, acting under color of

10 │ law, from depriving persons of their property without due process of law.

11 │ 55.   Defendants were obligated to provide notice to the Class of the VPS

12 │ decrease at the **first** annual re-examination following the change in services.  24

13 │ C.F.R. 982.505(c)(3)(ii).  The actual reduction in benefits cannot occur until one

14 │ year after this notice, upon the completion of the **second** re-examination after the

15 │ effective date of the decision to decrease the level of services.  *Id*.  By the terms of

16 │ this regulation, the Plaintiff Class had a property interest in the VPS and the

17 │ process by which it could be changed.

18 │ 56.   Under California law, Govt. Code §815.6, 24 C.F.R. 982.505(c)(3)(ii)

19 │ constitutes an enactment designed to protect the Plaintiff Class from the type of

20 │ injury suffered by Plaintiffs herein. Under that California statute, where the

21 │ government entity involved has violated the terms of the enactment, has failed to

22 │ use reasonable diligence in discharging its duty under the enactment, and has

23 │ thereby injured the Plaintiffs, the injured party may sue. Accordingly, the Plaintiff

24 │ Class had an independent property interest in the regulation as incorporated into

25 │ Govt. Code §815.6 pursuant to California law.

26 │ 57.   Furthermore, Plaintiffs had a protected property interest in their

27 │ Voucher Payment Standard pursuant to the provisions of 42 U.S.C. §1437f(o).

28 │

15

FIRST AMENDED CLASS ACTION COMPLAINT

1    58.    Thus, Plaintiffs had a property interest in the provisions of C.F.R.

2  982.505(c)(3)(ii) under both state and federal law, and both independently (i.e., the

3  regulation, the state statute, and the federal statute each standing alone) and

4  collectively (i.e., the three considered together in light of each). The deprivation of

5  that interest by Defendants is permissible only in accordance with the requirements

6  of due process of law under the Fourteenth Amendment.

7    59.    By failing to provide Plaintiff Class clear or meaningful notice of the

8  actions HACLA intended to take and its consequences at the time required by 24

9  C.F.R. 982.505(c)(3)(ii), most particularly by failing to meaningfully or effectively

10  advise the Plaintiff Class that their out of pocket share of future rents would be

11  increased, as is more fully explained in ¶4, *supra*; and by failing to indicate from

12  whom the notice emanated, the legal basis for the action, a phone number for

13  inquiries, or how to protest or appeal the action, Defendant HACLA deprived the

14  Plaintiff Class of due process of law in violation of the Fourteenth Amendment,

15  thereby entitling the Class to bring suit and recover damages pursuant to 42 U.S.C.

16  §1983.

17    60.    The wrongful conduct complained of herein was the product of a

18  policy and practice of the Defendants, was not the product of accident or

19  inadvertence, and was not random.  In so acting, Defendants were deliberately

20  indifferent to the rights of Plaintiffs and the Class, and acted in willful and reckless

21  disregard of the rights of Plaintiffs and the Class.

22    61.    As a direct and proximate cause of the aforementioned acts of

23  Defendants, Plaintiffs and Plaintiff Class suffered losses in that they incurred

24  increased rental payments from their own pockets that Defendants were not legally

25  entitled to impose. Plaintiffs and the Plaintiff Class seek injunctive and declaratory

26  relief, an accounting, restitution, and/or damages.  Said restitution or damages are

27  incidental to the injunctive relief sought herein.

28

FIRST AMENDED CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**COUNT TWO**

**VIOLATION OF RIGHTS CREATED BY 42 U.S.C. §1437f**
**(Private Right of Action Available Under 42 U.S.C. §1983)**

**(By Plaintiff and Plaintiff Class Against HACLA)**

62.　　Plaintiffs restate, reallege, and incorporate by reference all previous and subsequently stated paragraphs as if fully set forth herein.

63.　　Pursuant to the provisions of 42 U.S.C. §1437f(o), titled "Voucher Program", when the Secretary of the Department of Housing and Urban Development ("HUD") provides assistance to tenants, as is the case for the Plaintiff Class, s/he shall do so using a payment standard to determine the monthly assistance to qualified tenants. The statute establishes a system and criteria for determining the amount of the monthly assistance payment, including where the rent exceeds the payment standard. The system established under the statute includes an annual review of family income.

64.　　Thus, 42 U.S.C. §1437f(o) provides the right of qualified tenants to a payment standard under the Voucher Program. Specifically, under 42 U.S.C. §1437f(o)(2), tenants have a federal statutory right to a "monthly assistance payment" by HACLA that is calculated by reference to the "**applicable payment standard.**" The relevant provision of 1437f(o)(2) reads:  "For a family receiving tenant-based assistance, if the rent for the family (including the amount allowed for tenant-paid utilities) exceeds the applicable payment standard established under paragraph (1), the monthly assistance payment for the family shall be equal to the amount by which the applicable payment standard exceeds the greatest of amounts under clauses (i), (ii), and (iii) of subparagraph (A)." *See, also,* 42 U.S.C §1437f(o)(1)(B) (providing for the "establishment of a payment standard" under the voucher program;  42 U.S.C. §1437f(o)(1)(A) (purpose of the payment standard is to "determine the monthly assistance that may be paid [by the housing

17

1    authority] for any family. . . ."); 42 U.S.C. §1437f(o)(5)(A) (to calculate the

2    payment standard, an "annual review" process of the tenant's income and

3    eligibility is to occur).

4        65.    Federal courts have specifically held that 42 U.S.C. §1437f(o)(2)

5    confers upon Section 8 recipients statutory rights to benefits that can be invoked

6    under 42 U.S.C. §1983. *See, Johnson v. Housing Authority of Jefferson Parrish*,

7    442 F.3d 356 (5th Cir. 2006); *see, also, Wright v. City of Roanoke Redevelopment*

8    *& Housing Authority*, 479 U.S. 418 (1987).

9        66.    24 C.F.R. 982.505(c)(3)(ii), which among other things addresses how

10   to calculate HACLA's monthly assistance payments by reference to the

11   "applicable payments standard",  and when and how tenants covered by the

12   program are to have their payment standard changed, constitutes one aspect of

13   HUD's interpretation of the scope of the right established by the statute.

14   Specifically, the regulations provide as follows:

15       Section 982.505 Voucher tenancy: How to calculate housing assistance
         payment.
16

17       (a) Use of payment standard. A payment standard is used to calculate the
         monthly housing assistance payment for a family. The "payment standard" is
18       the maximum monthly subsidy payment.

19
         (b) Amount of monthly housing assistance payment. The PHA shall pay a
20       monthly housing assistance payment on behalf of the family that is equal to
         the lower of:
21
                 (1) The payment standard for the family minus the total tenant
22               payment; or
                 (2) The gross rent minus the total tenant payment.
23

24       (c) Payment standard for family.
25               (1) The payment standard for the family is the lower of:

26
                         (i) The payment standard amount for the family unit size; or
27

28

FIRST AMENDED CLASS ACTION COMPLAINT

(ii) The payment standard amount for the size of the dwelling unit rented by the family.

…

(3) Decrease in the payment standard amount during the HAP contract term. If the amount on the payment standard schedule is decreased during the term of the HAP contract, the lower payment standard amount generally must be used to calculate the monthly housing assistance payment for the family beginning at the effective date of the family's second regular reexamination following the effective date of the decrease in the payment standard amount. The PHA must determine the payment standard for the family as follows.

(i) Step 1: At the first regular reexamination following the decrease in the payment standard amount, the PHA shall determine the payment standard for the family in accordance with paragraphs (c)(1) and (c)(2) of this section (using the decreased payment standard amount).

(ii) Step 2 (first reexamination payment standard amount): The PHA shall compare the payment standard amount from step 1 to the payment standard amount last used to calculate the monthly housing assistance payment for the family. The payment standard amount used by the PHA to calculate the monthly housing assistance payment at the first regular reexamination following the decrease in the payment standard amount is the higher of these two payment standard amounts. The PHA shall advise the family that the application of the lower payment standard amount will be deferred until the second regular reexamination following the effective date of the decrease in the payment standard amount.

(iii) Step 3 (second reexamination payment standard amount): At the second regular reexamination following the decrease in the payment standard amount, the lower payment standard amount shall be used to calculate the monthly housing assistance payment for the family unless the PHA has subsequently increased the payment standard amount, in which case the payment standard amount is determined in accordance with paragraph (c)(4) of this section.

FIRST AMENDED CLASS ACTION COMPLAINT

67.     As such, the statute creates a federal right. The "[l]anguage in [the] regulation … invoke[s] a private right of action that Congress through statutory text created." *Alexander v. Sandoval*, 532 U.S. 275, 291 (2001).

68.     In sum, 42 U.S.C. §1437f(o)(2) and the other sections cited above require HACLA to make monthly payments for the benefit of recipients according to the "applicable payment standard." That is a federally secured right. The regulations flush out how HACLA's monthly payments are to be calculated by specifying how the applicable payment standard is to be determined. By failing to provide the required notice, the new payment standard implemented by HACLA was unlawful. HACLA, therefore, violated 42 U.S.C. §1437f(o)(2) by failing to make the required payments under the "applicable payment standard."

69.     Defendants, as described in this complaint, deprived Plaintiffs and the Plaintiff Class of their federal rights, specifically their voucher payment standard rights created by 42 U.S.C. §1437f(o), including §1437f(o)(2) and §1437f(o)(1), under color of state law, and thereby violated 42 U.S.C. §1983.

70.     The wrongful conduct complained of herein was the product of a policy and practice of Defendants, was not the product of accident or inadvertence, and was not random. In so acting, Defendants were deliberately indifferent to the rights of Plaintiffs and the Class, and acted in willful and reckless disregard of the rights of Plaintiffs and the Class.

71.     As a direct and proximate cause of the aforementioned acts of Defendants, Plaintiffs and the Plaintiff Class suffered losses in that they incurred increased rental payments from their own pockets that Defendants were not legally entitled to impose. Plaintiffs and the Plaintiff Class seek injunctive and declaratory relief, an accounting, restitution, and/or damages. Said restitution or damages are incidental to the injunctive relief sought herein.

FIRST AMENDED CLASS ACTION COMPLAINT

## COUNT THREE

### VIOLATION OF CAL. GOV'T CODE §815.6

### (By Plaintiff and Plaintiff Class Against All Defendants)

72.     Plaintiffs restate, reallege and incorporate by reference all previous and subsequently stated paragraphs as if fully set forth herein.

73.     *California Civil Code* §815.6 provides for liability against a public entity when:

(a)     The entity violates an enactment;

(b)     The plaintiffs are in the class of persons protected by the enactment;

(c)     The enactment is designed to protect the kind of injury complained of by the plaintiffs;

(d)     The violation proximately caused the injury; and

(e)     The public entity did not exercise reasonable diligence in discharging its duty established by the enactment.

74.     An enactment includes a federal or state constitutional provision, statute, charter provision, ordinance, or properly adopted regulation.

75.     The Fourteenth Amendment of the *United States Constitution*; 24 C.F.R. §982.505(c)(3)-(4); Article I, §7 of the *California Constitution*; 42 U.S.C. §1437f; and *California Civil Code* §52.1 are all enactments within the meaning of Cal. Civil Code §815.6. Plaintiffs and the Plaintiff Class are in the class of persons protected by these enactments.

76.     The aforementioned enactments, applying to Plaintiffs separately and together, constitute mandatory duties within the meaning of *Cal. Civil Code* §815.6, and were designed to prevent the kind of injuries alleged herein.

77.     Defendants, as described in this complaint, did not exercise reasonable diligence in discharging their duty established by the enactments

FIRST AMENDED CLASS ACTION COMPLAINT

1 enumerated above to refrain from violating the constitutional and statutory rights

2 of Plaintiffs and the Class.

3      78.    As a direct and proximate cause of the aforementioned acts of

4 Defendants, Plaintiffs and Plaintiff Class suffered losses in that they incurred

5 increased rental payments from their own pockets that Defendants were not legally

6 entitled to impose. Plaintiffs and the Plaintiff Class seek injunctive and declaratory

7 relief, an accounting, restitution, and/or damages.  Said restitution or damages are

8 incidental to the injunctive relief sought herein.

9 **COUNT FOUR**

10 **VIOLATION OF ART. I, §7 OF CALIFORNIA CONSTITUTION**
**California Due Process Clause**

11

12 **(By Plaintiff and Plaintiff Class Against All Defendants)**

13      79.    Plaintiffs restate, reallege and incorporate by reference all previous

14 and subsequently stated paragraphs as if fully set forth herein.

15      80.    Article I §7 of the California Constitution ("the California Due

16 Process Clause") prohibits governmental Defendants, and those acting in concert

17 with them, acting under color of law, from depriving persons of their property

18 without due process of law.  As stated previously, Plaintiffs and the Class have a

19 property interest in 24 C.F.R. 982.505(c)(3)(ii), the HUD regulation requiring

20 notice prior to a VPS decrease, as well as in that regulation as incorporated into

21 Govt. Code §815.6, and in 42 U.S.C. §§1437f(o)(2) and 1437f(o)(1), both

22 separately and in combination. Also, as stated previously, Defendants deprived the

23 Plaintiff Class of that property right without due process of law.

24      81.    The wrongful conduct complained of herein was the product of a

25 policy and practice of the Defendants, was not the product of accident or

26 inadvertence, and was not random.  In so acting, Defendants were deliberately

27 indifferent to the rights of Plaintiffs and the Class, and acted in willful and reckless

28

22

---

FIRST AMENDED CLASS ACTION COMPLAINT

1  disregard of the rights of Plaintiffs and the Class.

2      82.    Article I, §26 of the *California Constitution* provides that the

3  provisions of the *California Constitution* are mandatory. Failure to provide the

4  rights and benefits required under the statutory scheme, and violation of Plaintiffs'

5  rights under Article I, §7, constitute a failure to discharge mandatory duties.

6      83.    As a direct and proximate cause of the aforementioned acts of

7  Defendants, Plaintiffs and Plaintiff Class suffered losses in that they incurred

8  increased rental payments from their own pockets that Defendants were not legally

9  entitled to impose. Plaintiffs and the Plaintiff Class seek injunctive and declaratory

10 relief, an accounting, restitution and/or damages.  Said restitution or damages are

11 incidental to the injunctive relief sought herein.

12                          **COUNT FIVE**

13                          **NEGLIGENCE**

14      **(By Plaintiffs and Plaintiff Class Against All Defendants)**

15     84.    Plaintiffs reallege and incorporate by reference all previous and

16 subsequently stated paragraphs, as if set forth fully herein.

17     85.    Under *California Government Code* §815.2, Defendants are liable for

18 the negligent acts of each and every one of its employees acting within the scope of

19 his or her employment, whether or not named in this complaint. This liability

20 includes liability for those acting pursuant to policy or higher level instruction even

21 though the individuals who so acted are not named in the complaint.

22     86.    Defendants, at all material times herein, had a duty to Plaintiffs and all

23 class members as set forth in the statutes, regulations, enactments, and common

24 law of California and the United States as set forth herein.

25     87.    Defendants are liable for negligence under California Civil Code

26 §1714 because Plaintiffs' injuries were caused, in whole or in part, by Defendants'

27 lack of ordinary care or skill in the management of their agents, and the delivery of

28

1   their programs and services.

2       88.     In committing the acts and omissions described more fully herein,

3   Defendants knew, or reasonably should have known, that their conduct would

4   result in injury to Plaintiffs, and to those similarly situated. Moreover, *California*

5   *Evidence Code* §669 establishes "negligence *per se*" where there is a violation of a

6   statute, ordinance, or regulation of a public entity; the violation proximately caused

7   injury to a person; the injury resulted from an occurrence of a nature which the

8   statute was designed to prevent; and the person suffering the injury was one of the

9   class of persons for whose protection the statute was adopted. The conduct alleged

10  here meets that standard.

11      89.     As a direct and proximate cause of the aforementioned acts of

12  Defendants, Plaintiffs and Plaintiff Class suffered losses in that they incurred

13  increased rental payments from their own pockets that Defendants were not legally

14  entitled to impose.  Plaintiffs and the Plaintiff Class seek injunctive and declaratory

15  relief, an accounting, restitution, and/or damages. Said restitution or damages are

16  incidental to the injunctive relief sought herein.

17                      PRAYER FOR RELIEF

18      90.     Wherefore, Plaintiffs and the Class seek the following relief:

19          a.     Certification of a class under F.R.Civ.P. Rule 23;

20          b.     Damages against each Defendant, as to each cause of action in

21                 which that Defendant is named;

22          c.     Restitution, including interest, on funds improperly collected;

23          d.     A declaration that the policies and practices of HACLA

24                 complained of herein violate federal and state Constitutions;

25          e.     A preliminary and permanent injunction restraining Defendants

26                 in the future from engaging in the unlawful conduct stated

27                 herein and from failing to provide restitution;

28

FIRST AMENDED CLASS ACTION COMPLAINT

1

        f.      Attorneys' fees under *California Code of Civil Procedure*

2

               §1021.5, 42 U.S.C. §1988, and whatever other statute or law

3

               may be applicable; and

4

        g.      Such other relief as is just and proper.

5

**DEMAND FOR JURY TRIAL**

6

7

     Plaintiffs, on behalf of themselves individually and on behalf of the class,

8

demand a jury trial.

9

10

DATED:  May 18, 2007

11

               Respectfully submitted,

12

               LITT, ESTUAR, HARRISON & KITSON, LLP

13

               PUBLIC COUNSEL

14

               ASIAN PACIFIC AMERICAN LEGAL

15

               CENTER

16

            By: _____

17

                 Barrett S. Litt
                 Paul J. Estuar

18

                 Daniel Grunfeld
                 Hernan D. Vera

19

                 Jouis Rafti
                 Julie A. Su

20

                 Attorneys for Plaintiffs

21

22

23

24

25

26

27

28

FIRST AMENDED CLASS ACTION COMPLAINT

# EXHIBIT

# A

# STANDSTILL AGREEMENT

This Agreement is entered into between the Housing Authority for the City of Los Angeles ("HACLA"), whose legal counsel is the City Attorney's Office of the City of Los Angeles, and Section 8 recipients (including but not limited to Michael Nodzi and Nidia Pelaez), and the class of similarly affected Section 8 Tenants they purport to represent (the definition of which is elaborated in the letter sent to HACLA on May 24, 2006), whose legal counsel is the firms of Public Counsel, Asian Pacific American Legal Center, and Litt, Estuar et al. (hereafter collectively referred to as "Plaintiffs"). The purpose of this Agreement is to maintain the status quo in all respects, including in the running of any statute of limitations, in order to allow the parties to negotiate in good faith to determine if this matter may be resolved without the necessity of active litigation. Accordingly, the parties agree:

1.    A dispute has arisen over the reduction in payment standards and the accompanying rise in the rental share paid by Section 8 recipients for their housing.  The Plaintiffs position is more fully presented in the letter sent to HACLA by Plaintiffs' Counsel on May 24, 2006, which is attached as Exhibit 1 and whose contents are incorporated by this reference.

2.    The parties are negotiating in good faith to determine if the dispute can be resolved without active litigation.

3.    Plaintiffs will refrain from filing any lawsuit seeking relief for the matters addressed in Exhibit 1.

4.    Defendants agree that the statute of limitations, or any other relevant limitations period, for the filing of any lawsuit or administrative or other claim, including any § 910 claim, of any sort regarding the matters addressed in Exhibit 1 (hereafter "LAWSUIT OR CLAIM") is tolled effective June 1, 2006. This applies not only to the individual Plaintiffs but to the class of similarly affected Section 8 Tenants, as further defined in Exhibit 1, they purport to represent.

5.    This Agreement shall terminate 30 days after notice by either party that it wishes to terminate the Agreement.

1

6.   In the event Plaintiffs file any LAWSUIT after the termination of this Agreement, the LAWSUIT OR CLAIM will be deemed filed on June 1, 2006, no matter what date it is actually filed. But if the LAWSUIT OR CLAIM is filed more than 30 days after the Termination Date, as defined in ¶ 5, above, then the statute of limitations will begin to run again beginning on the 31st day.

DATED: _____          _____
                                HACLA, Executive Director

DATED: _____          _____
                                City Attorney's Office

DATED: 6-29-06                  _____

DATED: _____          _____

2

# EXHIBIT

# B

# Litt, Estuar, Harrison, Miller & Kitson, LLP

BARRETT S. LITT • PAUL J. ESTUAR • GENIE HARRISON • BRYAN B. MILLER • ROBERT M. KITSON

*OF COUNSEL:*  LEONARD WEINGLASS   HADSELL & STORMER

November 15, 2006

Mr. Rudolf Montiel
Housing Authority of the City of Los Angeles
2600 Wilshire Blvd., 3rd Floor
Los Angeles, California 90057

Re:  Claimant, MICHAEL NOZZI vs. Housing Authority of the City of Los Angeles

TO WHOM IT MAY CONCERN:

This letter constitutes a claim for damages pursuant to California Government Code §910 *et seq.*, for injuries sustained by claimant and the class of claimants arising out of violations of statutory, common law, and constitutional rights.

By written standstill agreement, counsel for claimants and HACLA agreed that claimants' claims, including the time by which any tort or administrative claims must be filed, are tolled as of June 1, 2006. Any subsequently filed claims shall be deemed filed on that date. The agreement reads, in relevant part, "[t]he statute of limitations, or any other relevant limitations period, for the filing of any lawsuit or administrative or other claim, including any §910 claim, of any sort regarding the matters addressed in [this tort claim]… is tolled effective June 1, 2006. This applies not only to the individual Plaintiffs, but to the class of similarly affected Section 8 Tenants."

The Agreement also reads, as it relates to the deemed filed date of any claim or lawsuit, "In the event Plaintiffs file any LAWSUIT after the termination of this Agreement, the LAWSUIT OR CLAIM will be deemed filed on June 1, 2006, no matter what date it is actually filed. But if the LAWSUIT OR CLAIM is filed more than 30 days after the Termination Date, as defined in ¶5, above, then the statute of limitations will begin to run again beginning on the 31st day."

A copy of the Agreement is attached hereto as Exhibit 1. The original signed by HACLA Executive Director Rudy Montiel and HACLA counsel Craig Takenaka is, to our knowledge, in the possession of Mr. Takenaka, who is an attorney in the Los Angeles City Attorney's Office.

## I.   SUMMARY OF CLAIM:

Michael Nozzi, and the class of similarly situated persons (hereinafter "Claimants" collectively), brings this claim for deprivation of constitutional, statutory, and common law rights by the Housing Authority of the City of Los Angeles ("HACLA") and various unknown persons employed by HACLA by virtue of acts, policies and practices of HACLA. In the two years preceding the filing of this claim, Claimants allege the following:

Nozzi Tort Claim re HACLA
November 15, 2006
Page 2

     a)     In 2004, the City of Los Angeles and HACLA decided to reduce the maximum monthly subsidy provided to a family, effectively increasing the rent portion to be paid by Section 8 recipients

for their housing.  Under 24 C.F.R. §982.505(c)(ii), however, each affected family was required to have been advised, at the first annual reexamination following the change in policy, of the change in policy and that the benefit reduction would not take place until after the recipient's second annual re-examination (i.e., the following year after the notice).  HACLA utterly failed to comply with this notification prerequisite.

     b)     Rather than providing recipients with clear notification that their rent obligation would be increased the following year, HACLA mailed a one-page flyer in April 2004 containing the cryptic and technical statement that the Housing Authority "lowered the payment standards used to determine your portion of the rent."  This flyer had no indicia of an official notice: it was not printed on City or HACLA letterhead; it did not specify the legal basis for the action; it did not give a phone number for inquiries; it did not require any acknowledgement or signature by the recipient; and it did not specify any procedure for appealing the administrative decision.  More importantly, the flyer did not advise recipients that their rent obligation would actually be going up, by how much, or when.  Simply put, the flyer did not comport with minimal standards of due process.  See, e.g., Goldberg v. Kelly, 397 U.S. 254 (1970).

     Because of the failure to comply with the notification requirement for the rent increases either already or to be implemented from July '05 to June '06, all rent increases imposed on Section 8 recipients to date as a result of this administrative action are legally invalid, and will be through the continuing impact lasting until June '07.

     On behalf of themselves and a class of affected Section 8 recipients that they will seek to represent, our clients ask that HACLA:

     a)     immediately cease and desist from enforcing a decreased payment standard for all Section 8 recipients whose effective rent increases have taken, or will take, effect during the July '05 to June '06 period;

     b)     provide restitution of all increased Section 8 payments made by recipients in the past twelve months as a result of HACLA's improper action, and going into the future;

     c)     agree in writing to increase the VPS (payment standard) to the earlier (pre-2004) levels effective immediately (i.e., not phased in through re-examinations occurring through July '07); and

     d)     pay Claimants' attorneys' fees incurred to date.

Nozzi Tort Claim re HACLA
November 15, 2006
Page 3

## II.   ADDRESS TO WHICH NOTICES SHOULD BE SENT:

All correspondence related to this matter should be addressed to Paul J. Estuar, Litt, Estuar, Harrison, Miller & Kitson, LLP ("LEHMK"), 1055 Wilshire Boulevard, Suite 1880, Los Angeles, California 90017. The telephone number of LEHMK is (213) 386-3114.

## III.   HOW DAMAGES OR INJURIES OCCURRED:

Within the last two years, Claimant and all others similarly situated were subjected to a decreased payment standard without receiving any type of written notice which would comport with 24 C.F.R. §982.505(c)(ii) or due process standards. As a result, Claimant and all others similarly situated received illegal rent increases, with little or no choice but to pay the increase or find alternate housing. This is particularly difficult for those Section 8 recipients who are the most vulnerable; e.g., the elderly or disabled.

## IV.   WHEN DAMAGES OR INJURIES OCCURRED:

The incident giving rise to this claim occurred within the last two years, and continued thereafter for all Claimants similarly situated. Specifically, on April 18, 2006, Mr. Nozzi received a notice that effective June 1, 2006, his VPS would decrease thereby resulting in an increased rent of $111 per month.

## V.   ACT OR OMMISSION CAUSING INJURIES:

This claim arises from the actions of HACLA and the employees, representatives and agents thereof. HACLA is liable to Claimants because of its own conduct, and the conduct of its employees/agents. Alternatively, HACLA is liable to Claimants as a joint participant or actor with the City.

The unconstitutional and unlawful conduct gives rise to legal claims which include, but are not limited to, violations of state and federal law, state and federal constitutional and civil rights violations including, but not limited to, federal causes of action including, but not limited to, violation of Due Process; California Gov't Code §815.6; California Civil §§52, 52.1; invidious discrimination; non-invidious discrimination; intentional torts; non-intentional torts; negligence; intentional infliction of emotional distress; negligent infliction of emotional distress; misrepresentation; vicarious liability; non-vicarious liability; conspiracy, and other legal theories which may apply.

Attached as Exhibit 2 is a letter from Barrett S. Litt, written on behalf of the Claimant named herein, and all similarly situated individuals, to the attorneys for HACLA, Craig Takenaka and Neil Blumenthal, which describes in greater detail the salient facts and primary legal theories advanced by Claimants. Its contents are incorporated by this reference.

Nozzi Tort Claim re HACLA
November 15, 2006
Page 4

## VI.   NAMES OF PERSONS CAUSING INJURIES:

At this time, Claimant does not know the identity of the specific individuals who are responsible for the adoption and formulation of the policies and practices objected to herein. However, those individuals in so acting were acting in the course and scope of their employment with, and agency on behalf of HACLA, and HACLA endorsed, approved, authorized, supervised and/or ratified those policies and practices.

## VII.   DAMAGES OR INJURIES:

As a direct and proximate result of the wrongful acts alleged above, Mr. Nozzi, and the class of similarly situated Section 8 recipients whose rental share was increased due to the actions objected to in this letter, has suffered and continues to suffer from injuries and damages, the full extent of which are not completely known at this time.  Claimant alleges that his damages exceed $25,000, and that this is not a limited civil case.

Should you have any questions as to any of the foregoing, please do not hesitate to contact me.

Very truly yours,

Paul J. Estuar

# EXHIBIT

# C

# Litt, Estuar, Harrison, Miller & Kitson, LLP

BARRETT S. LITT • PAUL J. ESTUAR • GENIE HARRISON • BRYAN B. MILLER • ROBERT M. KITSON

*OF COUNSEL:* LEONARD WEINGLASS   HADSELL & STORMER

December 8, 2006
AMENDED

Mr. Rudolf Montiel
Housing Authority of the City of Los Angeles
2600 Wilshire Blvd., 3rd Floor
Los Angeles, California 90057

Re:  Claimant, NIDIA PELAEZ vs. Housing Authority of the City of Los Angeles

TO WHOM IT MAY CONCERN:

This letter constitutes a claim for damages pursuant to California Government Code §910 *et seq.*, for injuries sustained by claimant and the class of claimants arising out of violations of statutory, common law, and constitutional rights.

By written standstill agreement, counsel for claimants and HACLA agreed that claimants' claims, including the time by which any tort or administrative claims must be filed, are tolled as of June 1, 2006, and any subsequently filed claims shall be deemed filed on that date. The agreement reads, in relevant part, "[t]he statute of limitations, or any other relevant limitations period, for the filing of any lawsuit or administrative or other claim, including any §910 claim, of any sort regarding the matters addressed in [this tort claim]... is tolled effective June 1, 2006. This applies not only to the individual Plaintiffs but to the class of similarly affected Section 8 Tenants."

The Agreement also reads, as it relates to the deemed filed date of any claim or lawsuit, "In the event Plaintiffs file any LAWSUIT after the termination of this Agreement, the LAWSUIT OR CLAIM will be deemed filed on June 1, 2006, no matter what date it is actually filed. But if the LAWSUIT OR CLAIM is filed more than 30 days after the Termination Date, as defined in ¶5, above, then the statute of limitations will begin to run again beginning on the 31st day."

A copy of the Agreement is attached hereto as Exhibit 1. The original signed by HACLA Executive Director Rudy Montiel and HACLA counsel Craig Takenaka is, to our knowledge, in the possession of Mr. Takenaka, who is an attorney in the Los Angeles City Attorney's Office.

## I.   SUMMARY OF CLAIM:

Nidia Pelaez, and the class of similarly situated persons (hereinafter "Claimants" collectively), brings this claim for deprivation of constitutional, statutory, and common law rights by the Housing Authority of the City of Los Angeles ("HACLA") and various unknown persons employed by HACLA by virtue of acts, policies and practices of HACLA. In the two years preceding the filing of this claim, Claimants allege the following:

Pelaez Tort Claim
December 8, 2006
Page 2

a) In 2004, the City of Los Angeles and HACLA decided to reduce the maximum monthly subsidy provided to a family, effectively increasing the rent portion to be paid by Section 8 recipients for their housing. Under 24 C.F.R. §982.505(c)(ii), however, each affected family was required to have been advised, at the first annual reexamination following the change in policy, of the change in policy and that the benefit reduction would not take place until after the recipient's second annual reexamination (*i.e.*, the following year after the notice). HACLA utterly failed to comply with this notification prerequisite

b) Rather than providing recipients with clear notification that their rent obligation would be increased the following year, HACLA mailed a one-page flyer in April 2004 containing the cryptic and technical statement that the Housing Authority "lowered the payment standards used to determine your portion of the rent." This flyer had no indicia of an official notice: it was not printed on City or HACLA letterhead; it did not specify the legal basis for the action; it did not give a phone number for inquiries; it did not require any acknowledgement or signature by the recipient; and it did not specify any procedure for appealing the administrative decision. More importantly, the flyer did not advise recipients that their rent obligation would actually be going up, by how much or when. Simply put, the flyer did not comport with minimal standards of due process. *See, e.g., Goldberg v. Kelly*, 397 U.S. 254 (1970).

Because of the failure to comply with the notification requirement for the rent increases either already or to be implemented from July '05 to June '06, all rent increases imposed on Section 8 recipients to date as a result of this administrative action are legally invalid, and will be through the continuing impact lasting until June '07.

On behalf of themselves and a class of affected Section 8 recipients that they will seek to represent, our clients ask that HACLA:

a) immediately cease and desist from enforcing a decreased payment standard for all Section 8 recipients whose effective rent increases have taken, or will take, effect during the July '05 to June '06 period;

b) provide restitution of all increased Section 8 payments made by recipients in the past twelve months as a result of HACLA's improper action, and going into the future;

c) agree in writing to increase the VPS (payment standard) to the earlier (pre-2004) levels effective immediately (i.e., not phased in through reexaminations occurring through July '07); and

d) pay Claimants' attorney's fees incurred to date.

## II.    ADDRESS TO WHICH NOTICES SHOULD BE SENT:

All correspondence related to this matter should be addressed to Paul J. Estuar, Litt, Estuar, Harrison, Miller & Kitson, LLP ("LEHMK"), 1055 Wilshire Boulevard, Suite 1880, Los Angeles, California 90017. The telephone number of LEHMK is (213) 386-3114.

Pelaez Tort Claim
December 8, 2006
Page 3

### III.   HOW DAMAGES OR INJURIES OCCURRED:

Within the last two years, claimant and all others similarly situated were subjected to a decreased payment standard without receiving any type of written notice which would comport with 24 C.F.R. § 982.505(c)(ii) or due process standards. As a result claimant and all others similarly situated received illegal rent increases, with little or no choice but to pay the increase or find alternate housing. This is particularly difficult for those Section 8 recipients who are the most vulnerable, e.g., elderly, disabled, single-parent families.

### IV.   WHEN DAMAGES OR INJURIES OCCURRED:

The incident giving rise to this claim occurred within the last two years, and continued thereafter for all claimants similarly situated. Specifically, on December 28, 2005, Ms. Pelaez received a notice that effective February 1, 2006, her VPS would decrease thereby resulting in an increased rent of $161 per month.

### V.   ACT OR OMMISSION CAUSING INJURIES:

This claim arises from the actions of HACLA and the employees, representatives and agents thereof. HACLA is liable to claimants because of its own conduct and the conduct of its employees/agents. Alternatively, HACLA is liable to claimants as a joint participant or actor with the City.

The unconstitutional and unlawful conduct gives rise to legal claims which include, but are not limited to, violations of state and federal law, state and federal constitutional and civil rights violations, including but not limited to federal causes of action including but not limited to violation of Due Process; California Gov't Code §815.6; California Civil §§52, 52.1; invidious discrimination; non-invidious discrimination; intentional torts; non-intentional torts; negligence; intentional infliction of emotional distress; negligent infliction of emotional distress; misrepresentation; vicarious liability; non-vicarious liability; conspiracy, and other legal theories which may apply.

Attached as Exhibit 2 is a letter from Barrett S. Litt, written on behalf of the claimant named herein, and all similarly situated individuals, to the attorneys for HACLA, Craig Takenaka and Neil Blumenthal, which describes in greater detail the salient facts and primary legal theories advanced by Claimants. Its contents are incorporated by this reference.

### VI.   NAMES OF PERSONS CAUSING INJURIES:

At this time, Claimant does not know the identity of the specific individuals who are responsible for the adoption and formulation of the policies and practices objected to herein. However, those individuals in so acting were acting in the course and scope of their employment with, and agency on behalf of HACLA, and HACLA endorsed, approved, authorized, supervised and/or ratified those policies and practices.

Pelaez Tort Claim
December 8, 2006
Page 4

## VII.   DAMAGES OR INJURIES:

As a direct and proximate result of the wrongful acts alleged above, Ms. Pelaez, and the class of similarly situated Section 8 recipients whose rental share was increased due to the actions objected to in this letter, has suffered and continues to suffer from injuries and damages, the full extent of which are not completely known at this time.   Claimant alleges that her damages exceed $25,000, and that this is not a limited civil case.

Should you have any questions as to any of the foregoing, please do not hesitate to contact me.

Very truly yours,

Paul J. Estuar

# EXHIBIT

# D



Housing Division
9th Floor – CHE

213-978-7958
213-978-7957

## OFFICE OF THE CITY ATTORNEY
### ROCKARD J. DELGADILLO
CITY ATTORNEY

December 29, 2006

Barrett Litt, Esq.
Litt, Estuar, Harrison, Miller & Kitson, LLP
1055 Wilshire Boulevard, Suite 1880
Los Angeles, California 90017

    Re: *Claim Dated November 15, 2006*

Dear Mr. Litt:

The November 15, 2006 claim against the Housing Authority for the City of Los Angeles which you filed has been referred to this Office.

After reviewing the circumstances of this claim and the applicable law, we have come to the conclusion that this claim should be denied.

This letter represents a formal notice to you that your claim has been denied. In view of this action, we are required by law to give you the following warning.

### <u>WARNING</u>

"Subject to certain exceptions, you have only six (6) months from the date this notice was personally delivered or deposited in the mail to file a state court action on this claim. See Government Code Section 945.6.

"You may seek the advice of an attorney of your choice in connection with this matter. If you desire to consult an attorney, you should do so immediately."

Sincerely,

CRAIG M. TAKENAKA
Managing Assistant City Attorney

25780

AN EQUAL EMPLOYMENT OPPORTUNITY – AFFIRMATIVE ACTION EMPLOYER
200 NORTH MAIN STREET • LOS ANGELES, CA 90012-4131 • 213.978.8100 • 213.978.8310 TDD



Housing Division
9th Floor - CHE

213-978-7958
213-978-7957

## OFFICE OF THE CITY ATTORNEY
### ROCKARD J. DELGADILLO
CITY ATTORNEY

December 29, 2006

Paul Estuar, Esq.
Litt, Estuar, Harrison, Miller & Kitson, LLP
1055 Wilshire Boulevard, Suite 1880
Los Angeles, California 90017

Re:   *Amended Claim Dated December 8, 2006*

Dear Mr. Estuar:

The December 8, 2006 amended claim against the Housing Authority for the City of Los Angeles which you filed has been referred to this Office.

After reviewing the circumstances of this claim and the applicable law, we have come to the conclusion that this claim should be denied.

This letter represents a formal notice to you that your claim has been denied. In view of this action, we are required by law to give you the following warning.

### WARNING

"Subject to certain exceptions, you have only six (6) months from the date this notice was personally delivered or deposited in the mail to file a state court action on this claim. See Government Code Section 945.6.

"You may seek the advice of an attorney of your choice in connection with this matter. If you desire to consult an attorney, you should do so immediately."

Sincerely,

CRAIG M. TAKENAKA
Managing Assistant City Attorney

25781

AN EQUAL EMPLOYMENT OPPORTUNITY – AFFIRMATIVE ACTION EMPLOYER
200 NORTH MAIN STREET • LOS ANGELES, CA 90012-4131 • 213.978.8100 • 213.978.8310 TDD



**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 1055 Wilshire Boulevard, Suite 1880, Los Angeles, California 90017.

On May 21, 2007, I served the foregoing document described as **FIRST AMENDED COMPLAINT** on the interested parties in this action.

Brant H. Dveirin
Best Best & Krieger
300 South Grand Avenue, 28th Floor
Los Angeles, California 90071

Todd T. Leung
City Attorney's Office
200 North Main Street, Room 900
Los Angeles, California 90012

**[XX]  BY MAIL**

**[XX]  FEDERAL**  I declare under penalty of perjury that the foregoing is true and correct, and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on May 21, 2007, at Los Angeles, California.

Miguel O. Villafuerte

Doc: 64112   Client: 1311

**PROOF OF SERVICE**