<u>*Nozzi v. Housing Authority of the City of Los Angeles*</u>, Case No. CV-07-0380-GW(PJWx)
Questions for Parties

       The Court requests the parties to be prepared to address the following issues (including appropriate references to the record for support of their positions and/or alternatively through the submission of additional materials):

1. Is it correct that, in this case, Plaintiffs do *not* challenge: (1) the authority of HACLA to reduce the Section 8 payment standard amounts from 110% to 100% of the HUD published fair market rents ("FMRs"), (2) the propriety of the amount of the reduction, or (3) the procedure under which HACLA adopted that reduction, including the notices that were provided to the general public *before* the agency made that decision?

2. A Public Housing Authority ("PHA") is supposed to pay a monthly Section 8 Housing Assistance Payment ("HAP") on behalf of the participating family that is equal to the *lower* of: (1) the payment standard for the family minus the total tenant payment, or (2) the gross rent minus the total tenant payment. *See* 24 C.F.R. § 982.505(b). The "total tenant payment" is defined in 24 C.F.R. § 5.628(a) generally as the "highest of the following amounts, rounded to the nearest dollar: (1) 30 percent of the family's monthly adjusted income; [or] (2) 10 percent of the family's monthly income . . . ." The "payment standard for the family" is the *lower* of: (1) the payment standard amount for the family unit (*i.e.* bedroom) size, or (2) the payment standard amount for the size of the dwelling unit rented by the family. 24 C.F.R. § 982.505(c)(1).
       In light of the above, because the total tenant payment amount is dependent upon the family's accurate income figure for each year (as established at the yearly reexamination, *see* 42 U.S.C. § 1437f(o)(5)(B) and 24 C.F.R. § 982.516(a)), the actual amount of the monthly HAP for a Section 8 family cannot be set for more than one year because it is calculated using the family's annual income which is subject to change and verification.

3. Do Plaintiffs dispute the factual assertions in paragraphs 4-6 of Declaration of Agbor I. Agbor in Support of Defendants' Opposition to Motion for Summary Judgment, *see* Docket No. 78-4? If so, on what factual bases?

4. As to 24 C.F.R. § 982.505(e)(3), what is each party's interpretation as to what the following quoted language means:
> (i) Step 1: At the first regular reexamination following the decrease in the payment standard amount, the PHA shall determine the payment standard for the family in accordance with paragraphs (c)(1) and (c)(2) of this section (using the decreased payment standard amount).
>
> (ii) Step 2 (first reexamination payment standard amount): The PHA shall compare the payment standard amount from step 1 to the payment standard amount last used to calculate the monthly

>housing assistance payment for the family. The payment standard amount used by the PHA to calculate the monthly housing assistance payment at the first regular reexamination following the decrease in the payment standard amount is the higher of these two payment standard amounts.

5. As to the chart that was included with the reduction notice that was sent to Section 8 participants by HACLA following the decision to lower the payment standard amounts from 110% to 100% of HUD FMRs ("Reduction Notice"), *see* Exhibit I to Appendix of Exhibits in Support of Defendants' Motion for Summary Judgment ("Appendix") at Docket No. 74, was the format of this chart familiar to Section 8 participants because similar charts indicating the payment standard amounts had previously been provided or made available to Section 8 participants and/or are typically used by HACLA to indicate what those amounts are?

6. As to the HAPP RE-38 document that was also sent out with the Reduction Notice (*see* Appendix, Exhibit J), was the HAPP RE-38 a standard form previously used by HACLA or was it created and employed for the first time with the Reduction Notice? Was it similar to other forms used by HACLA in regards to Section 8 participants?

7. At the time the initial HAPP RE-38 form was sent to Section 8 participants about one year before any reduction in HAPs would be applied by HACLA, the actual amount of the reduction (and consequently any increase in the portion of the rent that the Section 8 participant would have to pay) could not be stated to the participant because it would depend on the family's income figure (and the verification of that figure) which would occur at the regular reexamination of the family's income as per 42 U.S.C. § 1437f(o)(5)(B) and 24 C.F.R. §§ 982.516(a) and 982.505(c)(3) following the initial notice of the reduction.

8. The second HAPP-38 notice – which was provided to Section 8 participants at or following the second regular yearly income reexamination following the reduction decision (*see* Appendix, Exhibit K) and approximately 30 days before the effectuation of any reduction in the HAP (and concomitantly any increase in the portion of rent that the participant would be responsible for), did accurately delineate the correct amounts of the reduction and increase of the participant's portion of the rent.

9. What procedures as to hearings were provided for participants who made such requests pursuant to either the initial or second HAPP RE-38 notices? For example, were the procedures delineated in 24 C.F.R. § 982.555 applied in those situations?

10. During the period of time during which a Section 8 participant was in the informal hearing process, would the reduction of HAP/increase in the portion of rent be stayed pending the outcome of the hearing?