BARRETT S. LITT (SBN 45527)
blitt@kmbllaw.com
KAYE, McLANE, BEDNARSKI & LITT, LLP
PAUL J. ESTUAR (SBN 167764)
pestuar@littlaw.com
LITT, ESTUAR & KITSON, LLP
234 East Colorado Boulevard, Suite 230
Pasadena, California 91101
Telephone:  (213) 386-3114
Facsimile: (213) 380-4585

PATRICK M. DUNLEVY (SBN 162722)
pdunlevy@publiccounsel.org
STEPHANIE CARROLL (SBN 263698)
scarroll@publiccounsel.org
PUBLIC COUNSEL
610 South Ardmore Avenue
Los Angeles, California 90005
Telephone:  (213) 385-2977
Facsimile:   (213) 385-9089

Attorneys for Plaintiffs
MICHAEL NOZZI, et al.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL NOZZI, et al.,<br><br>Plaintiff,<br><br>v.<br><br>HOUSING AUTHORITY OF THE CITY OF LOS ANGELES, et al.,<br><br>Defendants. | Case No. CV07-00380-GW (FFMx)<br><br>[Honorable George H. Wu]<br><br>**PLAINTIFFS' SUPPLEMENTAL BRIEF RE ISSUES RAISED IN THE COURT'S APRIL 22 TENTATIVE RULING ON DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT**<br><br>Date:        May 23, 2013<br>Time:        8:30 a.m.<br>Place:        Courtroom 10<br><br>Complaint Filed:    January 16, 2007<br>Trial Date:          None Set |

# TABLE OF CONTENTS

I.   PLAINTIFFS MEET EACH OF THE THREE ELEMENTS NEEDED TO ESTABLISH ARTICLE III STANDING ................................................- 1 -

   A.  Injury in Fact ...........................................................................- 2 -

   B.  Causation ................................................................................- 5 -

   C.  Redressability .........................................................................- 7 -

II.  THE DIFFERENT FORMS OF RELIEF THAT PLAINTIFFS ARE SEEKING WILL REDRESS THEIR INJURIES .................................- 10 -

   A.  Nominal Damages ................................................................- 10 -

   B.  Injunctive and Declaratory Relief .......................................- 11 -

   C.  Actual Damages ...................................................................- 12 -

III. GOVERNMENT CODE §815.6 VIOLATION .................................- 14 -

IV. *MATHEWS*, NOT *MULLANE*, IS THE APPROPRIATE FRAMEWORK FOR ANALYZING WHETHER HACLA VIOLATED DUE PROCESS ...........- 16 -

i

# TABLE OF AUTHORITIES

### FEDERAL CASES

*Alaska Fish & Wildlife Fed'n & Outdoor Council, Inc. v. Dunkle*
829 F.2d 933 (9th Cir. 1987) .................................................................. 12

*Beno v. Shalala*
30 F.3d 1057 (9th Cir. 1994) .................................................................... 9

*Billington v. Underwood*
613 F.2d 91 (5th Cir. 1980) ..................................................................... 19

*Butland v. Bowen*
673 F.Supp. 638 (D.Mass. 1987) ............................................................ 13

*Cantrell v. City of Long Beach*
241 F.3d 674 (9th Cir. 2001) ................................................................. 2, 9

*Carey v. Piphus*
435 U.S. 247, 98 S.Ct. 1042 (1978) .................................................. 3, 4, 10

*Citizens for Better Forestry v. U.S. Dept. of Agriculture*
341 F.3d 961 (9th Cir. 2003) .................................................................... 5

*City of Davis v. Coleman*
521 F.2d 661 (9th Cir. 1975) .................................................................... 3

*Cornett v. Donovan*
51 F.3d 894 (9th Cir. 1995) ................................................................... 12

*Cummings v. Connell*
402 F.3d 936 (9th Cir. 2005) ................................................................. 10

*David v. Heckler*
591 F. Supp. 1033 (D.C.N.Y. 1984) (Weinstein, J.) ............................. 13

*Doe v. Gallinot*
657 F.2d 1017 (9th Cir. 1981) ............................................................... 12

*Dusenbery v. United States*
534 U.S. 161 (2002) ......................................................................... 16, 17

*Ellis v. Costco Wholesale Corporation*
657 F.3d 970 (9th Cir. 2011) ................................................................. 11

*Girard v. Klopfenstein*
 930 F.2d 738 (9th Cir.1991) ................................................................. 16

*Grayden v. Rhodes*
 345 F.3d 1225 (11th Cir. 2003) ............................................................ 17

*Guy v. City of San Diego*
 608 F.3d 582 (9th Cir. 2010) ............................................................... 10

*Henry v. Gross*
 803 F.2d 757 (2nd Cir. 1986)................................................................ 13

*Ibrahim v. Dep't of Homeland Sec.*
 669 F.3d 983 (9th Cir. 2012) ............................................................ 9, 11

*Jacobs v. Clark County School Dist.*
 526 F.3d 419 (9th Cir. 2008) .......................................................2, 3, 10

*Lujan v. Defenders of Wildlife*
 504 U.S. 555, 112 S.Ct. 2130 (1992) ...........................................passim

*Mathews v. Eldridge*
 424 U.S. 319 (1976) .....................................................15, 16, 17, 18

*Mennonite Board of Missions v. Adams*
 462 U.S. 791 (1983) ........................................................................... 18

*Mullane v. Central Hanover Bank & Trust Co.*
 339 U.S. 306 (1950) ........................................................16, 17, 18, 19

*Nozzi v. Housing Auth. of the City of Los Angeles*
 425 Fed. Appx. 539, 2011 WL 1167188 (9th Cir. 2001) ...........passim

*Oberlander v. Perales*
 740 F.2d 116 (2d Cir. 1984) ................................................................ 19

*Olagues v. Russoniello*
 770 F.2d 791 (9th Cir. 1985) ............................................................... 12

*Oregon Natural Desert Ass'n v. Dombeck*
 172 F.3d 1092 (9th Cir. 1998) ...............................................................9

*Parham v. J.R.*
 442 U.S. 584 (1979) ........................................................................... 16

iii

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Schroeder v. City of New York*
    371 U.S. 208 (1962) ........................................................................ 18

*State of California ex rel. Lockyer v. F.E.R.C.*
    329 F.3d 700 (9th Cir. 2003) ......................................................... 16

*Tulsa Prof'l Collection Servs., Inc. v. Pope*
    485 U.S. 478 (1988) ........................................................................ 18

*Yesler Terrace Comm. Council v. Cisneros*
    37 F.3d 442 (9th Cir. 1994) ..................................................... passim

**OTHER CASES**

*Weaver v. Colorado Dept of Social Services*
    791 P.2d 1230 (Colo. Ct. App. 1990) ........................................... 19

**FEDERAL STATUTES**

18 U.S.C. §2201 ............................................................................... 12

National Environmental Policy Act ............................................... 9

**OTHER STATUTES**

Government Code §815.6 ......................................................... 14, 15

**REGULATIONS**

24 C.F.R. §982.505(c)(3)(ii) ........................................................ 14

24 C.F.R. §982.505 ................................................................... 14, 15

24 C.F.R. §982.505(c)(3)(i)-(iii) .................................................... 2

**CONSTITUTIONAL PROVISIONS**

First Amendment ............................................................................. 3

U.S. Const. Amendment XIV §1 ...................................................... 2

iv

Plaintiffs Michael Nozzi, et al. ("Plaintiffs") hereby respond to the issues raised by the Court's April 22 Tentative Ruling on Defendants' Renewed Motion for Summary Judgment, and at the hearing on the motion on April 22.

# I.   PLAINTIFFS MEET EACH OF THE THREE ELEMENTS NEEDED TO ESTABLISH ARTICLE III STANDING

Plaintiffs have standing to challenge Defendant Housing Authority of the City of Los Angeles' ("HACLA" or "Defendant") defective notice of its 2005 reduction in Section 8 Voucher Payment Standards ("VPS").  Plaintiffs have satisfied the requirements of Article III standing in that (1) they have suffered an "injury in fact" (a concrete injury that a person personally has suffered or faces an immediate threat of suffering); (2) their injuries are fairly traceable to the action by Defendant that they are challenging in this lawsuit; and (3) a favorable decision in this lawsuit likely will redress these injuries.  *Yesler Terrace Comm. Council v. Cisneros*, 37 F.3d 442, 445 (9th Cir. 1994) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 2136 (1992)).   In this action, Plaintiffs are asserting a constitutional due process injury based on Defendant's failure to give adequate notice regarding Plaintiffs' protected property interest in Section 8 benefits.  *See Nozzi v. Housing Auth. of the City of Los Angeles*, 425 Fed. Appx. 539, 542, 2011 WL 1167188, (9th Cir. 2001).

Because Plaintiffs have pled a constitutional due process injury, some requirements for establishing standing are relaxed.  *Lujan*, *supra*, 504 U.S. at 572 n.7, 112 S.Ct. at 2143 n.7.  In *Lujan*, the Supreme Court stated that a "person who has been accorded a procedural right to protect concrete interests can assert that right without meeting all the normal standards for redressability and immediacy." *Id.*

The Ninth Circuit noted these relaxed standing requirements in *Yesler*, *supra*.  There, Plaintiffs challenged HUD's adoption of rules without notice as required by the relevant HUD regulations. Plaintiffs had standing because, as "a consequence of HUD's decision, they, personally, now are subject to the threat of

eviction for alleged criminal activity without recourse to an informal grievance hearing." 37 F.3d. at 446. The *Yesler* Court noted that, under *Lujan*, "[l]ike the immediacy requirement, the redressibility [sic] requirement is relaxed in cases where a plaintiff asserts a procedural injury." *Id.* at 447 n.4. In *Cantrell v. City of Long Beach*, 241 F.3d 674 (9th Cir. 2001) (aesthetic harm to area for birdwatchers sufficient to establish injury in fact), the Ninth Circuit further elaborated on relaxation of procedural standing requirements, concluding that, in a procedural rights case, if the plaintiff establishes injury in fact, "the causation and redressability requirements are relaxed." *Id.* at 682.

In this case, as a result of HACLA's actions, Plaintiffs were subjected to a reduction in the VPS without proper notice, and remain vulnerable to similar improper notice by HACLA in the future. They meet all the requisite standing requirements under Article III, regardless of whether their standing is analyzed using the regular or relaxed standards.  The sections that follow show how Plaintiffs have met each of the three standing requirements.

### A.    Injury in Fact

Plaintiffs have been injured in fact because Defendant violated their constitutional right to due process by providing them inadequate notice of a VPS reduction. As a result, Plaintiffs suffered economic injury.  *See* U.S. Const. amend. XIV §1; 24 C.F.R. §982.505(c)(3)(i)-(iii).  Under the Due Process Clause, the notice that HACLA provided had to be effective.  (*Nozzi*, *supra*, 425 Fed.Appx. at 542, 2011 WL 1167188 at**2).  Its notice was ineffective because the notice suffered from a number of infirmities, including that it was incomprehensible, failed to define key terms such as "payment standards," and was buried within a large packet of documents so that, as a result, the recipient would not realize the importance of the notice and likely would not spend much time reading it.  Defendant's defective notice deprived Plaintiffs of their constitutional right to due process and, for purposes of standing, a deprivation of this type constitutes an injury in fact and a cognizable harm.  *See e.g., Jacobs v.*

- 2 -

1  *Clark County School Dist.*, 526 F.3d 419, 426 (9th Cir. 2008); *Yesler*, *supra*, 37

2  F.3d at 446 ("There is no question that a 'procedural injury' can constitute an

3  injury in fact for the purpose of establishing standing.").

4          In *Jacobs*, students challenged a Public School District's high school dress

5  code as violating their First Amendment Rights. *Id.* at 422-23. Although the

6  court ultimately held that the students' free speech and due process rights had not

7  been violated, it found as a preliminary matter that all the claims presented were

8  justiciable. *Id.* at 427, 442. The court's ruling regarding standing echoes the

9  Supreme Court's statements in *Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042

10  (1978). There the Supreme Court stated that "[b]ecause the right to procedural

11  due process is 'absolute' in the sense that it does not depend upon the merits of a

12  claimant's substantive assertions, and because of the importance to organized

13  society that procedural due process be observed, . . . the denial of procedural due

14  process should be actionable for nominal damages without proof of actual injury."

15  *Carey*, *supra*, 435 U.S. at 266, 98 S.Ct. at 1054.

16          Although the court in *Yesler* noted that not every procedural injury will

17  establish the injury element of standing, Plaintiffs in this case have standing

18  because they seek "to enforce a procedural requirement the disregard of which

19  could impair a separate concrete interest." *Yesler*, *supra*, 37 F.3d at 446, *see also*

20  *City of Davis v. Coleman*, 521 F.2d 661, 671 (9th Cir. 1975) ("The procedural

21  injury implicit in agency failure to prepare an [Environmental Impact

22  Statement]—the creation of a risk that serious environmental impact would be

23  overlooked—is itself a sufficient "injury in fact" to support standing . . .."). The

24  linking of disregard of procedural right with impairment of a concrete interest

25  stems from *Lujan*, in which the Court rejected the claim of environmental groups

26  having no distinct connection to the regulation they challenged, which provided

27  that the Secretary of the Interior would require other agencies to confer with him

28  under the Endangered Species Act only with respect to federally funded projects

in the U.S. and on the high seas, and not for foreign projects. In employing a dam

1    project analogy to address when a procedural injury gives rise to standing, the

2    Court rejected it in that case because what Plaintiffs were seeking was "standing

3    for persons who have no concrete interest affected—persons who live (and

4    propose to live) at the other end of the country from the dam." *Lujan*, *supra*, 504

5    U.S. at 572 n. 7, 112 S.Ct. at 2143 n. 7.  The Supreme Court specifically

6    distinguished the *Lujan* case from cases, such as the one before this court, where

7    disregard of a procedural requirement could impair a plaintiff's separate concrete

8    interest.  *Id*., 504 U.S. at 572.

9         Here, HACLA's failure to provide effective notice one year in advance of

10   the VPS change, as required, impaired Plaintiffs' well-settled property interest in

11   Section 8 benefits.  While the Ninth Circuit did not have occasion in *Nozzi* to

12   address standing, as the issue was not raised, its discussion of the issues that were

13   raised necessarily demonstrates standing. The Ninth Circuit recognized that

14   Plaintiffs had a property interest in their Section 8 benefits, that technical

15   compliance with regulatory procedures does not automatically satisfy the due

16   process requirement, that material issues of fact exist regarding whether

17   HACLA's notice sufficiently protected Plaintiff's property interest, and that the

18   consequences of a sudden reduction in benefits to a Section 8 participant could be

19   potentially devastating.  *Nozzi*, *supra*, 425 Fed. Appx. 539, 542, 2011 WL

20   1167188.

21        The constitutional due process injury Plaintiffs suffered resulted in an

22   illegal increase in the rent contribution Plaintiffs were required to make, thus

23   creating tangible economic injury. Even if that were not the case, "the denial of

24   procedural due process should be actionable for nominal damages without proof

25   of actual injury." *Carey*, *supra*, 435 U.S. at 266. Thus, the very violation of one's

26   due process rights is an injury in fact under Supreme Court jurisdiction. Further,

27   Defendant's action in providing the defective notice deprived Plaintiffs of the

28   ability to plan for, and around, increased rent payments they would have to make

     when the reduced VPS went into effect.  If Plaintiffs had been notified properly of

1  the reduced VPS, they would have been able to budget expenses accordingly or

2  make plans, where possible, to move their families to lower rent apartments. Thus,

3  under well-established tests of standing, Plaintiffs meet them in numerous ways.

4  **B.    Causation**

5  A plaintiff establishes causation for standing purposes by showing that her

6  injury is fairly traceable to the defendant's action. *Lujan v. Defenders of Wildlife,*

7  504 U.S. 555, 560, 112 S.Ct. 2130, 2136 (1992). The causation requirement for

8  standing "is only implicated where the concern is that an injury caused by a third

9  party is too tenuously connected to the acts of the defendant." *Citizens for Better*

10 *Forestry v. U.S. Dept. of Agriculture*, 341 F.3d 961, 975 (9th Cir. 2003).  Here,

11 third party involvement is not an issue.  Defendant alone is implicated in causing

12 Plaintiffs' injuries.

13 In the case at hand, causation is established because Plaintiffs' alleged

14 injuries arise directly from Defendant's violation of Plaintiffs' constitutional due

15 process right.  Specifically, Defendant's initial VPS reduction notice was

16 ineffective to inform Plaintiffs of a potential reduction in housing benefits.

17 Further, Defendant's late notices given to Section 8 recipients 30 days before the

18 actual VPS reduction were too late to protect Plaintiffs from the abrupt and

19 unexpected reduction in housing benefits that occurred.  As a result of the abrupt

20 and unexpected reduction in benefits, Plaintiffs were forced to pay an illegal rent

21 increase and were deprived of the ability to plan for the benefits reduction.

22 In *Yesler Terrace Comm. Council v. Cisneros*, *supra*, 37 F.3d 442 (9th Cir.

23 1994), a case very similar to the case at hand, the Ninth Circuit saw a clear causal

24 connection between the Department of Housing and Urban Development's (HUD)

25 notice and an injury to tenants of public housing.  *Id.* at 446-47.  In *Yesler*, the

26 tenants in public housing projects challenged HUD's determination that public

27 housing authorities in the state of Washington could evict tenants accused of

28 criminal activity without a hearing.  *Id.* at 445.  The district court granted

summary judgment in favor of HUD, and the tenants appealed to the Ninth

1  Circuit.  *Ibid.*  The tenants in *Yesler* were not challenging HUD's regulatory

2  authority to establish that Washington courts' eviction procedures satisfied basic

3  due process. Rather, they were challenging HUD's right to make this

4  determination without first providing notice and an opportunity to comment.  *Id.* at

5  445.  The Ninth Circuit held that the tenants had standing to bring their action

6  against HUD, and held that HUD's new rule was invalid because it had been

7  introduced without provision of notice and opportunity to comment.  *Id.* at 445-47,

8  449, 447 n. 4.  In so doing, the court rejected HUD's argument that it did no more

9  than enable local public housing authorities—third parties—to act and therefore

10  could not have been the cause of the alleged injury.  *Id.* at 446.[1]

11          In the instant case, Plaintiffs are challenging the lack of adequate or

12  effective notice of VPS decrease that HACLA provided, not HACLA's authority

13  to decrease VPS standards.  HACLA's defective notice subjected Plaintiffs to an

14  illegal rent increase and deprived them of their ability to prepare for the rent

15  increase.  Although the exact extent of Plaintiffs' injuries were unknown at the

16  time of the initial VPS notice, the fact that they would be injured by having to pay

17  more in rent than they were expecting was foreseeable.[2]  Further, if Plaintiffs had

18

19  [1] *Yesler* also supports the proposition – not yet specifically briefed in this case –
20  that the relief to which Plaintiffs are entitled includes reimbursement of increased
    rents they must pay as a result of the change in VPS without proper due process
21  notice. *Id.* at 447 (there is no "doubt that the PHAs will have to reinstitute
22  grievance hearings for all attempted evictions if we invalidate HUD's ruling").
    [2] Causation in terms of Article III standing is a threshold issue.  However, even if
23  Plaintiffs were required to satisfy more substantive causation tests, they would be
24  able to do so.  Under tort law causation principles, HACLA's failure to inform
    Section 8 recipients properly of the VPS reduction was both the factual and
25  proximate cause of Plaintiffs' injuries.  Had HACLA acted consistently with due
26  process in giving effective notice, no injury would have occurred.  The injuries
    that Plaintiffs suffered—illegal rent increases and lost ability to plan for increased
27  rent contributions—were foreseeable by HACLA.  HACLA anticipated that 45%
    of Section 8 families would be affected by the VPS decrease (*see* Declaration of
28  Kenneth Baldwin in Support of Defendants' Opposition to Motion for Summary
    Judgment, filed March 17, 2008, Dkt No. 78-5 (Baldwin Decl.), ¶11(f)) and

- 6 -

1   received proper notice of the reduction in benefits that was going to occur that

2   clearly explained how the VPS decrease would affect them, they themselves could

3   have estimated the potential increase in their rent payments, based on their

4   understanding of their own financial situation.  Plaintiffs would have been able to

5   plan for a reduction in benefits and limit the impact of a reduction on their lives.

6       HACLA was fully aware of the threat posed to Plaintiffs' property rights at

7   the time of the initial VPS notice; HACLA failed to inform Section 8 recipients

8   adequately of the coming change; and as a result, Plaintiffs were subjected to an

9   abrupt and unexpected reduction in benefits.  In sum, the injuries that Plaintiffs are

10  asserting in this case can be traced directly to Defendants' action.  The illegal rent

11  increase to which Plaintiffs were subjected and their inability to make plans that

12  would have limited the effect of an eventual rent increase occurred as a direct

13  result of Defendant's deficient VPS reduction notice.

14      **C.      Redressability**

15      This court is concerned that "it is unclear how any requested remedy aimed

16  at the initial VPS reduction notice would be more effective at redressing the

17  challenged injury than the hearings that were offered to plaintiffs 30 days in

18  advance of the actual reductions."  (Tentative Ruling at 7.)  Had the VPS

19  reduction notice HACLA provided been effective and understandable, Section 8

20  recipients would not have had a cognizable injury to raise in the hearing provided

21  30 days before the reduction.  If the reduction notice had been effective and

22  understandable, Section 8 recipients would not have been subjected to an abrupt

23  and unexpected reduction in benefits.  The injury to be redressed here is the illegal

24  and premature rent increases that resulted from the defective notice, and as

25

26  understood the need to provide notice of the decreased VPS to Section 8 recipients

27  one year in advance so that those affected would have time to adjust to an

    increased rent contribution.  Under these circumstances, it was foreseeable that an

28  incomprehensible notice of VPS reduction would lead to unanticipated rent

    increases and deny Section 8 recipients the ability to adjust in advance to those

    rent increases.

1   Plaintiffs explain further in the next section of this brief, the relief they are seeking

2   will redress that injury.

3        Similarly, the Court's concern that Plaintiffs' showing of redressability

4   might fail for the same reason that the Supreme Court discussed in *Lujan* is

5   misplaced.  (*See* Tentative Ruling at 7.)  In *Lujan*, writing on behalf of the

6   plurality, Justice Scalia explained that the respondent environmental groups

7   challenged a "generalized level of Government action" rather than "attacking the

8   separate decisions to fund particular projects allegedly causing them harm."

9   *Lujan*, *supra*, 504 U.S. at 568, 112 S.Ct. at 2140.  This choice meant that

10  respondents were unable to demonstrate redressability.  Justice Scalia went on to

11  characterize respondents' suit as one "challenging not specifically identifiable

12  Government violations of law, but the particular programs agencies establish to

13  carry out their legal obligations . . . , [which] even when premised on allegations

14  of several instances of violations of law, . . . are rarely if ever appropriate for

15  federal-court adjudication."  *Id.*

16       Plaintiffs' action here is very different from the respondents' lawsuit in

17  *Lujan*.  Plaintiffs have challenged a specifically identifiable violation of due

18  process law committed by Defendant, and they have specified forms of relief that

19  will redress their injuries.  More precisely, the present action challenges

20  Defendant's failure to provide adequate notice of a reduction in VPS that led to a

21  premature and illegal reduction in their Section 8 benefits.  As a result, unlike the

22  respondents' lawsuit in *Lujan*, the Plaintiffs' action cannot, in any way, be

23  described as challenging a "generalized level of Government action."

24       The deprivation of due process to which Plaintiffs have been subjected

25  constitutes a cognizable harm.  That cognizable harm allows for the variety of

26  relief requested by the Plaintiffs, which includes injunctive and declaratory relief,

27  as well as nominal and actual damages.  (Amend Compl. ¶ 90.)  These remedies

28  will redress Defendant's violation of Plaintiffs' due process right and the resulting

    injuries that occurred.  For purposes of standing, however, Plaintiffs need not

1   demonstrate that "'there is a "guarantee" that their injuries will be redressed by a
2   favorable decision,'" rather they need only show that a favorable decision "'is
3   likely to redress their injuries.'"  *Ibrahim v. Dep't of Homeland Sec.*, 669 F.3d
4   983, 993 (9th Cir. 2012) (holding that plaintiff met the redressability standard in
5   her effort to have her name removed from the government's terrorist watchlist,
6   even though being removed provided no guarantee that she then would be able to
7   obtain a visa); *see also Beno v. Shalala*, 30 F.3d 1057, 1065 n.13 (9th Cir. 1994)
8   (noting that a "probabilistic benefit from winning a suit" is adequate to establish
9   standing).

10          As explained in Section I, Plaintiffs' assertion of a procedural right
11   reduces their burden of establishing redressability.  *See, e.g., Cantrell*, *supra*, 241
12   F.3d 674.  In *Cantrell*, taxpayer birdwatchers alleged a procedural injury,
13   challenging the adequacy of the Navy's Environmental Impact Statement (EIS)
14   under National Environmental Policy Act.  The EIS led to approval of the City of
15   Long Beach's plan to convert a former naval station into a commercial marine
16   terminal.  *Id.* at 676-677.  To meet the redressability requirement for standing, the
17   birdwatchers did not have to show that a revised EIS would result in the
18   abandonment of the plans to build the commercial marine terminal.  *Id.* at 682.  In
19   other words, the birdwatchers did not have to show that requiring the Navy and
20   the City of Long Beach to follow proper EIS procedures would achieve the
21   ultimate result sought by the birdwatchers.  *See also Oregon Natural Desert Ass'n
22   v. Dombeck*, 172 F.3d 1092, 1094 (9th Cir. 1998) (environmental group
23   challenging grant of a grazing permit without certification that grazing would not
24   violate state water quality standards need not show that the state would deny
25   certification or that certification would change grazing activity in some way).

26          Although in order to establish redressability Plaintiffs need not establish
27   that the remedies they are seeking are guaranteed to redress Defendant's violation
28   of Plaintiffs' due process right, Plaintiffs can establish that the relief they are
    requesting will redress this constitutional injury and the damages resulting from

that injury.

## II.  THE DIFFERENT FORMS OF RELIEF THAT PLAINTIFFS ARE SEEKING WILL REDRESS THEIR INJURIES

The nominal and actual damages, as well as declaratory and injunctive relief requested, that Plaintiffs are seeking in this action, will redress their constitutional injury and the related economic damages.  (Compl. ¶ 90.)

### A.  Nominal Damages

At the most basic level, nominal damages will vindicate Plaintiffs' constitutional due process right and redress their constitutional injury.  (Compl. ¶90); *Carey*, *supra*, 435 U.S. at 266, 98 S.Ct. at 1054 (denial of procedural due process "actionable for nominal damages without proof of actual injury"); *Jacobs*, *supra*, 526 F.3d at 426 (nominal damages available to make the deprivation of constitutional right actionable in situations where plaintiff has sustained no actual injury); *Cummings v. Connell*, 402 F.3d 936, 942 (9th Cir. 2005) (confirming that nominal damages can be "awarded to vindicate rights, the infringement of which has not caused actual, provable injury"); *Guy v. City of San Diego*, 608 F.3d 582, 587 (9th Cir. 2010). In the Ninth Circuit, "[w]here a plaintiff proves a violation of constitutional rights, nominal damages must be awarded as a matter of law." *Cummings*, *supra*, 402 F.3d at 944.  The function of nominal damages is to vindicate rights—they are a "symbolic vindication of a constitutional right." *Id.* at 946.  In *Cummings*, union members who received insufficient notice that union fees would be deducted from their paychecks were rewarded nominal damages for the violation of their constitutional rights. *Id.* at 940-41.  The court explained that the relief the plaintiffs received from the nominal damage award was twofold: "(1) the moral satisfaction of knowing that a federal court concluded that [their] rights had been violated; . . . and (2) an enforceable judgment requiring the alteration of defendant's behavior to plaintiffs' benefit." *Id.* at 945-46. Thus, Plaintiffs have standing by virtue of the fact that they claim their constitutional rights were violated regardless of actual injury. That alone is sufficient to establish standing.

**B.     Injunctive and Declaratory Relief**

Enjoining Defendant from issuing similarly defective notices in the future also will redress Plaintiffs' injuries.  Plaintiffs have standing to seek injunctive relief because they have demonstrated that they are (1) realistically threatened by a repetition of the violation, or (2) show a credible threat of future injury.  *Ibrahim v. Dep't of Homeland Sec.*, *supra*, 669 F.3d at 992.  Furthermore, although "[p]ast wrongs do not in themselves amount to a real and immediate threat of injury necessary to make out a case or controversy, . . . [they] are evidence bearing on whether there is a real and immediate threat of repeated injury." *Ellis v. Costco Wholesale Corporation*, 657 F.3d 970, 979 (9th Cir. 2011)

In the present case, Plaintiffs are realistically threatened by repetition of the violation: HACLA is both able and likely to reduce the VPS in the future.  HACLA decreased the VPS after the reduction that led to this lawsuit, as evidenced by HACLA's letter to Plaintiff Nidia Pelaez, dated December 16, 2009. (*See* Declaration of Barrett S. Litt, filed March 25, 2013, Dkt No. 177, Ex. 27.)  Further, HACLA continues to maintain that its 2005 VPS reduction notice was sufficient.  Although Exhibit 27 shows that HACLA has gone some way to amend its defective notice of VPS reduction, the December 2009 notice still requires more to make it truly effective. HACLA offers no assurance that it will not return to the prior defective notice, especially given its continuing assertion that no more was required.  As a result, Plaintiffs continue to face a credible threat of future injuries, including illegal rent increases and loss of the ability to plan how to deal with future rent increases.  To redress this threat of injury and prevent future injury, Plaintiffs need an injunction which ensures that: (1) future notices are addressed to the individual tenant; (2) the notices define VPS and its relationship to the tenant's contribution to rent; and (3) the notices spell out that a VPS decrease likely will increase the Section 8 recipient's individual rent contribution.

In the alternative to an injunction, Plaintiffs seek a declaration that the Defendant's policies and practices regarding notice of reduction in the VPS

1   violate federal and state Constitutions.  18 U.S.C. §2201; *Cornett v. Donovan*, 51

2   F.3d 894, 897 (9th Cir. 1995) (plaintiffs had standing to seek declaration of the

3   scope of their constitutional right of access to courts); *Doe v. Gallinot*, 657 F.2d

4   1017, 1025 (9th Cir. 1981) (declaratory relief appropriate where state's statutory

5   scheme violated due process and was unconstitutional); *see also Alaska Fish &*

6   *Wildlife Fed'n & Outdoor Council, Inc. v. Dunkle*, 829 F.2d 933, 937 (9th Cir.

7   1987) (for purposes of standing, declaratory relief sufficient to show redressability

8   of injury).  While an injunction *definitely* should redress the threat of future injury,

9   declaratory relief would at least *be likely* to provide redress.  Although the

10  difference between ordering a government agency to conduct activities in a certain

11  manner and simply pronouncing that its conduct is unlawful is considerable

12  (*Olagues v. Russoniello*, 770 F.2d 791, 803 (9th Cir. 1985)), a declaration of rights

13  regarding adequate notice of a VPS reduction likely would prevent HACLA from

14  sending similarly defective notices in the future and prevent unlawful rent

15  increases.

16      **C.    Actual Damages**

17          In addition to the other remedies, actual damages would redress Plaintiffs'

18  injuries. By HACLA's own admission, 40-45% of the 45,000 Section 8 families

19  were negatively affected by the VPS decrease at issue in this case.  (See

20  Declaration of Kenneth Baldwin in Support of Defendants' Opposition to Motion

21  for Summary Judgment (filed on March 17, 2008, Dkt No. 78-5), ¶11(f).)  This

22  admission means that 18,000-22,250 Section 8 recipients were subjected to illegal

23  rent increases and denied the ability to plan for the increases.  Effective notice of

24  the decrease was provided to Plaintiffs only when they received their HAPP-38

25  notices 11 months after the date when they should have received effective notice.

26  VPS standards eventually returned back to their previous levels, in several stages.

27  Actual damages are calculable for each of the 11 months during which Plaintiffs

28  should have had effective notice but did not.  On this basis, a favorable decision

    for Plaintiffs would redress their injuries by providing them with monetary

1  compensation.

2          Although the Court did not raise this specific issue, colloquies have

3  indicated that the Court may be of the view that, as Defendants assert, the later

4  HAPP-38 cured any defect, and eliminated the possibility of actual injury. This

5  ignores the fact that, because the notice received by Plaintiffs was invalid, and

6  because Plaintiffs were deprived of the full notice to which they were entitled, the

7  VPS decrease was not effective until Plaintiffs received proper notice, and no

8  decrease could occur until one year after that. Defective notice is the functional

9  equivalent of no notice at all, and, in the appropriate circumstances, the action for

10  which notice was required is invalid. *See, e.g., David v. Heckler*, 591 F. Supp.

11  1033 (D.C.N.Y. 1984) (Weinstein, J.) (notice provided to persons denied partial or

12  full reimbursement for payments made for supplemental medical treatment under

13  voluntary program of Medicare denied beneficiaries due process, where review

14  notices could not be understood by great majority of beneficiaries who received

15  them, language used was "bureaucratic gobbledegook, jargon, double talk, form of

16  officialese, federalese, insurancese, and doublespeak", and information in review

17  determination letters was not sufficient to enable beneficiary or his or her

18  representative to determine either actual basis of denial of reimbursement or

19  whether reimbursement had been calculated correctly; defendant directed to

20  promptly provide adequate notice in accordance with opinion); *Yesler Terrace*

21  *Comm. Council v. Cisneros*, *supra*, 37 F.3d 442, 447 (9th Cir. 1994) (there is no

22  "doubt that the PHAs will have to reinstitute grievance hearings for all attempted

23  evictions if we invalidate HUD's ruling" adopted without proper notice); *Butland*

24  *v. Bowen,* 673 F.Supp. 638, 642 (D.Mass. 1987) ("[b]ecause misleading notice

25  violated plaintiff's right to due process of law in the handling of her claim [for SSI

26  disability benefits], her second denial [of application] is robbed of any preclusive

27  effect"; matter remanded for new hearing); *Henry v. Gross*, 803 F.2d 757, 762 -

28  763 (2nd Cir. 1986) (affirming district court determination that benefits were

unlawfully terminated in violation of due process; defendant city required to send

notice to class that each recipient's benefits may have been wrongfully terminated, entitling them to a new review); Small v. United States, 136 F.3d 1334, 1338 (D.C.Cir. 1998) (where United States did not make reasonable effort to provide actual notice of administrative, "its failure to do so renders its efforts to give notice constitutionally inadequate, and invalidates the forfeiture").

## III.   GOVERNMENT CODE § 815.6 VIOLATION

In its Tentative Decision, the Court asks the following two questions:

1.      How did the Ninth Circuit define failure to comply with Section 982.505?

2.      How can compliance with the regulations form the basis for a negligence claim or a violation of Government Code §815.6?

Before lowering the VPS, it is undisputed that Public Housing Authorities ("PHAs") such as HACLA must comply with a very specific timeline relating to notice. A PHA must provide proper notice to a recipient whose benefits are being reduced at the first annual re-examination following the change in services. 24 C.F.R. 982.505(c)(3)(ii). The actual reduction in benefits cannot occur until one year after this notice, upon the completion of the second re-examination after the effective date of the decision to decrease the level of services. *Id*. Thus, HACLA's ability to reduce the VPS is constrained by the requirement that it provide proper notice one year in advance. There is no room for agency interpretation or discretion.

In the summary judgment proceedings which preceded the appeal, the Court looked to whether the notice contained the literal language of the regulation, 24 C.F.R. §982.505.  However, the Ninth Circuit indicated that "[t]echnical compliance with the regulatory procedures does not automatically satisfy due process requirements." 425 Fed. Appx. 539, 542 (9th Cir. 2011)  Something more is obviously required to comply with §982.505, i.e., the notice must be understandable to the reasonable Section 8 tenant that his housing subsidy may decrease in the following year. The Ninth Circuit was unequivocal that that the

1   issue of whether the notice here was effective notice is a "question of fact". *Id*.

2   That was a clear direction to this Court that, on the current record summary

3   judgment is improper. Those factual questions have yet to be fleshed out by this

4   Court in any meaningful manner, particularly since Plaintiffs have still not

5   received the full discovery needed to identify the specific Section 8 beneficiaries

6   who were adversely affected by the VPS decrease, and gather evidence on the

7   issue. Nor have the questions of fact even been addressed, much less resolved by

8   Defendants in their renewed motion for summary judgment, which presents no

9   new evidence. Resolving this case once again via summary judgment, on the same

10   factual record, would be in direct conflict with the Court of Appeals decision.

11        What this Court has referred to as "total compliance" with regulations, the

12   Ninth Circuit termed "literal" or "technical" compliance. The difference in

13   language is instructive. This Court has repeatedly pointed to the fact the notice

14   provided the literal language of the regulation, and suggested that should be

15   sufficient to comply with it, and therefore with due process However, the Ninth

16   Circuit expressly rejected this Court's same reasoning  in its previous summary

17   judgment ruling, noting that "the district court's conclusion that there is 'no reason

18   to look beyond the regulatory language' to determine if HACLA's notice was

19   sufficient is at odds with *Mathews*." *Id*. (Emphasis supplied.)

20        The Ninth Circuit has defined the mandatory duty under §815.6 as the "duty

21   in §982.505 to provide one-year notice before implementing the reduced VPS." *Id*.

22   Later in the same paragraph, the Circuit explained that, "[a]t a minimum, the

23   notice must be sufficiently effective to protect housing benefits recipients from an

24   abrupt and unexpected reduction of benefits." *Id*. Thus, the Ninth Circuit

25   concluded that the mandatory duty incumbent on HACLA included more than

26   mimicking the literal language of the regulation; it required that the notice meet

27   due process standards. For purposes of analyzing whether HACLA violated its

28   mandatory duties, one cannot (as this Court does) de-couple technical compliance

with §982.505 with the requirement that the notice be understandable and

- 15 -

"effective" in communicating a potential reduction of benefits to Section 8 recipients one year before the actual reduction.

Similarly, if all HACLA did was provide the technical language of the regulation, and it did not effectively and reasonably communicate the message in violation of due process, it breached is duty of due care, and therefore was negligent. *See, e.g.,* 6 Witkin, Summary 10th (2005) Torts, §835, p.52 ("negligence is traditionally regarded as involving the following: (1) a legal duty to use due care; (2) a breach of that duty; and (3) the breach as the proximate or legal cause of the resulting injury").[3]

## IV.  *MATHEWS*, NOT *MULLANE*, IS THE APPROPRIATE FRAMEWORK FOR ANALYZING WHETHER HACLA VIOLATED DUE PROCESS

The Supreme Court's *Mathews v. Eldridge*, 424 U.S. 319 (1976) balancing test has "become the standard for determining whether certain challenged administrative procedures comply with the requirements of due process." *Girard v. Klopfenstein,* 930 F.2d 738, 742 (9th Cir.1991). Although the Supreme Court in *Mathews* did not announce an "*all-embracing* test for deciding due process claims," *Dusenbery v. United States,* 534 U.S. 161, 168 (2002) (emphasis added), the Court did announce a general test that applies in all but a few contexts. *See Parham v. J.R.,* 442 U.S. 584, 599 (1979) (calling the *Mathews v. Eldridge* test "a general approach for testing challenged state procedures under a due process claim"); *Mathews,* 424 U.S. at 335 (noting that "our prior decisions indicate that identification of the specific dictates of due process *generally* requires consideration of three distinct factors") (emphasis added). *State of California ex rel. Lockyer v. F.E.R.C.*, 329 F.3d 700, 710 (9th Cir. 2003).

---

[3] This Court had dismissed the negligence claim not on the basis that Plaintiffs did not make out a claim of negligence, but on the ground that, under California law, a government entity could not be held liable for the negligence of its employees. It was this specific ruling that the Ninth Circuit reversed. However, by definition, if HACLA's notice was insufficient to meet due process standards, it failed to use due care in providing notice.

- 16 -

The due process analysis from *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950), is only appropriate when deciding whether one method of providing notice is better than another when giving notice to interested parties. The Eleventh Circuit explained the *Mathews/Mullane* distinction well in *Grayden v. Rhodes*, 345 F.3d 1225, 1242 (11th Cir. 2003).

> "The *Mathews* balancing test, which we employ to determine the 'dictates of due process,' *helps us determine at what point in time notice* of the opportunity to be heard *is constitutionally required. Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). In this case, based on our balancing of the *Mathews* factors, we concluded that the tenants were entitled to contemporaneous notice. But when we are called on to consider what type of notice is adequate to meet the contemporaneous notice requirement, we eschew the balancing test in *Mathews* and adopt a 'more straightforward' approach. *Dusenbery v. United States,* 534 U.S. 161, 167, 122 S.Ct. 694, 699, 151 L.Ed.2d 597 (2002). The Supreme Court, when asked in a recent case to apply the *Mathews* test to evaluate the adequacy of a particular method of providing notice, declined to apply *Mathews* and indicated that the standard announced in *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), provides the proper analytical framework:
>
>> "[W]e have never viewed *Mathews* as announcing an all-embracing test for deciding due process claims. Since *Mullane* was decided, we have regularly turned to it when confronted with questions regarding the adequacy of the method used to give notice.... We see no reason to depart from this well-settled practice.
>
> *Dusenbery,* 534 U.S. at 168, 122 S.Ct. at 699-700 (citing seven Supreme Court cases dating back almost fifty years that have applied the *Mullane*

- 17 -

1  standard to assess the adequacy of a particular method of providing

2  notice.")(Emphasis supplied)[4]

3  Here, Plaintiffs are not asking the Court to determine whether one method

4  of providing notice is better than another. Therefore, the controlling authority for

5  determining what process is due is *Mathews*, including "at what point in time

6  notice … is constitutionally required." In fact, when this matter first came before

7  the Ninth Circuit, both the opinion *and the concurrence* directed the trial court to

8  apply the *Mathews* factors to determine what process is due to protect plaintiffs'

9  property interest. *Nozzi*, 425 Fed. Appx. at 542 and 543. In the specific context of

10  this case, the sole process at issue is the adequacy of the notice provided under due

11  process standards. Thus, it is clear that that is the due process issue to be

12  determined in this case.

13  Even if this Court were to decide that *Mullane* applied, Plaintiffs would

14  prevail. Under *Mullane*, a fundamental requirement of due process is "notice

15  reasonably calculated, under all the circumstances, to apprise interested parties" of

16  a pending action. 339 U.S. at 313. If *Mullane* were to be applied to the issues here,

17  it would still be to the adequacy of the notice itself as opposed to the adequacy of

18  the means of delivering the notice. The means employed in adequate notice must

19  be "such as one desirous of *actually informing*" the recipient might reasonably

20  adopt to accomplish it. *Id.* at 313 (emphasis added). For due process purposes, a

21  

_____

22  [4] Examples of other Supreme Court due process cases applying *Mullane* rather

23  than *Mathews* are *Mennonite Board of Missions v. Adams*, 462 U.S. 791

24  (1983)(publication and certified mail to property owner of a tax sale is insufficient

25  to provide notice of sale to mortgagee); *Tulsa Prof'l Collection Servs., Inc. v.

   *Pope*, 485 U.S. 478 (1988)(overturning statute which provided for notice by

26  publication, and holding that due process requires notice by mail or such other

   means as to ensure actual notice to creditors of probate proceedings); *Schroeder v.

27  City of New York*, 371 U.S. 208 (1962)(held publication of notice of condemnation

   and posting of notices on trees and poles in general vicinity of property, when

28  property was vacant, did not constitute due process notice where owner's name

   and address where readily ascertainable from both deed records and tax rolls).

1   notice is valid if, and only if, it adequately conveys the information to a

2   "reasonable person." *See, e.g.*, *Oberlander v. Perales,* 740 F.2d 116, 120 (2d Cir.

3   1984)(Medicaid reduction held valid because the notice put "any reasonable

4   person on notice that payments for services performed earlier that year would be

5   affected."); *Mullane, supra,* 339 U.S. at 315 (notice must be phrased "reasonably

6   to convey the required information."); *Weaver v. Colorado Dept of Social*

7   *Services*, 791 P.2d 1230, 1233 (Colo. Ct. App. 1990) (validity of notice depends

8   on "its adequacy in providing the necessary information to a reasonable person").

9        Here, there are disputed issues of fact whether HACLA's Notice was

10  reasonable and understandable under due process standards, and therefore

11  provided the putative class members with an opportunity to plan ahead or protect

12  their interests. "[N]otice must be sufficiently effective to protect housing benefits

13  recipients from an abrupt and unexpected reduction of benefits." *Nozzi*, *supra*, at

14  542. Literal compliance in these circumstances is not enough. There are disputed

15  issues of fact whether HACLA's mere parroting of the regulation's language was

16  sufficient notice under the due process clause. *Id*. Courts have long recognized

17  that an agency cannot meet due process notice requirements by simply lifting the

18  wording straight from a technical statute or regulation – a notice that "***merely***

19  ***parrots*** the broad language of the regulations" is inadequate. *Billington v.*

20  *Underwood*, 613 F.2d 91, 94 (5th Cir. 1980) (emphasis added).  Moreover, "when

21  notice is a person's due, process which is a *mere gesture* is not due process."

22  *Mullane*, *supra*, 339 U.S. at 315 (emphasis added). Thus, even under the *Mullane*

23  standard, Plaintiffs' due process claim survives summary judgment.

24

25  /////

26  /////

27  /////

28  /////

1    DATED:  May 6, 2013                      Respectfully submitted,

2

3                                              KAYE, McLANE, BEDNARSKI & LITT,

4                                              LLP
                                               LITT, ESTUAR & KITSON, LLP
5                                              PUBLIC COUNSEL

6

7                                              By: /s/ Barrett S. Litt

8                                                   Barrett S. Litt
                                                    Paul J. Estuar
9                                                   Patrick Dunlevy
                                                    Stephanie Carroll
10                                                  Attorneys for Plaintiffs

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28