**Exhibit A**

1
2
3
4
5
6
7
8
9

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 10  MICHAEL NOZZI, et al., | Case No. CV07-00380-PA (FFMx) |
| 11  Plaintiff, | [Honorable Percy Anderson] |
| 12  v. | SETTLEMENT AGREEMENT |
| 13  HOUSING AUTHORITY OF THE CITY OF LOS ANGELES, et al., | |
| 14  Defendants. | |
| 15 | |

16
17
18
19
20
21
22
23
24
25
26
27
28

    Plaintiff/Class Representative NIDIA PELAEZ (individually and on behalf of the class previously certified by the Court (collectively "Plaintiffs")), Individual Plaintiff Michael Nozzi and Defendants Housing Authority of the City of Los Angeles ("HACLA") and Rudolf Montiel (collectively "Defendants"), by and through their respective counsel, hereby submit the following Settlement Agreement ("Settlement Agreement").

**I.    RECITALS**

    WHEREAS, Plaintiffs filed the above referenced action in United States District Court for the Central District of California ("Court") on January 16, 2007;

    WHEREAS, the class of which Plaintiff Pelaez is the class representative consisted of "a group of tenants who receive rent subsidies through the Section 8 Housing Choice Voucher Program [who]… assert[ed] that the Defendants, the local

administrators of the Voucher Program, reduced the amount of Section 8 beneficiaries' subsidies without providing adequate notice, in violation of federal and state law." *Nozzi v. Hous. Auth. of City of Los Angeles*, 806 F.3d 1178, 1183 (9th Cir. 2015), *as amended on denial of reh'g and reh'g en banc* (Jan. 29, 2016), *cert. denied,* 137 S. Ct. 52, 196 L. Ed. 2d 30 (2016) ("*Nozzi II*");

WHEREAS, Plaintiffs alleged various violations of the Federal and State Constitutions, of 42 U.S.C. § 1983, and of various California statutes;

WHEREAS, the Ninth Circuit in *Nozzi II* directed entry of summary judgment in Plaintiffs' favor on "the merits of the federal and state law" claims before it and remanded "to determine the size and validity of plaintiffs' class and to determine the appropriate remedy." *Nozzi II*, 806 F.3d at 1204;

WHEREAS, the District Court certified the following classes on May 6, 2016:

> Rule 23(b)(2) Class: "All Section 8 beneficiaries whose benefits are administered by the Housing Authority of the City of Los Angeles and who in the past received, or in the future may receive, notices of a Voucher Payment Standard decrease." (AKA "Injunctive Relief Class")

> Rule 23(b)(3) Class: "All Housing Authority of the City of Los Angeles ("HACLA") Section 8 tenants, between June 1, 2005, and September 30, 2006, whose rental contribution for a period not to exceed eleven months was greater than it would have been but for Defendant HACLA's 2004 decrease in the Voucher Payment Standard." (AKA "Damages Class");

WHEREAS, the Parties (collectively Plaintiffs and Defendants entering into this Settlement Agreement) agree, after fully analyzing all the available data, that the earliest start date for class member damages to accrue under this class definition is July 1, 2005 (i.e., the first class member damages began to accrue on that date), the latest start date for class member damages to accrue under this class definition is June 1, 2006, and the latest possible end date of damages is April 30, 2007 (11

2

months after the latest possible start date of damages), and agree that accordingly, the Damages Class Period from inception to final accrual of damages is July 1, 2005 through April 30, 2007;

WHEREAS, the Parties agree that this action has been extensively litigated for the past ten years and that they have engaged in extensive settlement negotiations over two full mediation days, and numerous additional communications, with retired United States District Judge Gary A. Feess, who acted as the mediator in the case;

WHEREAS, Defendants deny that they have done anything wrong whatsoever, deny all liability to the defined class and do not concede any infirmity in the defenses that they have asserted or intend to assert in these proceedings, but are cognizant of the time and expense of further litigation; and

WHEREAS, the Parties believe that settlement is in their best interests and will avoid further lengthy and costly litigation;

THEREFORE, the Parties agree as follows:

## II.    DEFINITIONS

1.    "Administrator" means the Class Administrator, as agreed upon (or to be agreed upon) by the Parties and appointed by the Court to review and determine the validity and amount of claims submitted by Settlement Class Members ("SCM") (as defined below), according to the procedures set forth herein.

2.    The "Bar Date" is the date by which any Damages Class Member (defined below) who wishes to receive payment pursuant to the Settlement Agreement and therefore is a SCM (again, defined below), must file his/her Proof of Claim and Release Form (attached as Exhibit B), file objections to this Settlement Agreement, or request to be excluded from the class (opt-out). The Bar Date shall be calculated as the close of business on the 120th day after the last day of mailing of the Class Notice, which is up to two consecutive business days from beginning to end, as is addressed in ¶ 57, i.e., the Class Administrator must mail all notices within a two day period.

3.     "Class Counsel" means Barrett S. Litt of Kaye, McLane, Bednarski & Litt ("KMBL"), and Anne Richardson and Stephanie Carroll of Public Counsel.

4.     "Class Counsel Attorneys' Fees" refers to the amount awarded by the Court as their attorneys' fees in this case, which amount will not exceed 30% of the Class Fund. Such Class Counsel Attorneys' Fees are exclusive of, and determined before, the determination and award of the Class Counsel Litigation Costs to be awarded Class Counsel.

5.     "Class Counsel Litigation Costs" include, but are not limited to all litigation costs, including the following: messenger and other delivery fees; postage; photocopying; printing; scanning; document binding; parking; regular or special postage expenses; travel expenses (including mileage, airfare, lodging, meals, and ground transportation); consultants' fees (including but not limited to graphics, jury consulting and trial presentation consultants); mediation charges and fees; expert witness fees; regular witness fees; deposition fees; transcript fees; investigation fees; on-line research costs; long-distance telephone charges; facsimile transmissions and other costs or expenses ordinarily charged by attorneys when representing clients, whether or not the costs qualify to be reimbursed in a motion for attorneys' fees and/or costs under either 28 U.S.C § 1988 or 28 U.S.C. § 1920.

6.     "Class Fund" refers to the amount of up to $9.4 Million (but no less than $9 Million) to be paid by HACLA's insurers to resolve all monetary claims in the case, the precise amount of which will be determined based on a contribution by HACLA's primary insurer of the amount remaining after payment of HACLA's litigation costs and attorneys' fees in this case (estimated to be not less than $8 Million) and a contribution of $1 Million by HACLA's excess insurer. The Class Fund, as the term is used herein, is not dependent on the monetary value of claims actually made or paid, but is based on the total amount available for payment to the class plus fees and costs as defined in this Agreement.

7.     A "Class Member" means any member of the Injunctive Relief Class

as defined above (which is broader than the Damages Class).

8.    The "Class Notice" means the notice to the Class regarding settlement, to be sent to Class Members in a form substantially similar to that attached hereto as Exhibit C, or as otherwise approved by the Court, and such other summary notice to be published in accordance with the terms of this Settlement Agreement.

9.    "Damages Class Member" means any member of the Damages Class as defined above, who is on the Damages Class Member List to be ultimately prepared by Plaintiffs' expert, Brian Kriegler.

10.    The "Damages Class Member List" shall consist of those persons for whom a damage amount was able to be calculated based on the information contained in the "Database" (defined below).[1]

11.    The "Damages Class Period" refers to the period July 1, 2005 through April 30, 2007.

12.    The "Database" is the information provided in electronic form to the Administrator no later than five (5) days from the date the Court grants preliminary approval of the terms of this Settlement Agreement (if the data has not already been provided), which information shall be taken from the available HUD and HACLA electronic data produced in this case up to and including April 15 2017. The Database will include, to the extent available, the name, last known address, date of birth, Social Security Number, unique HACLA client number, and any other identifying information. It will also include the damages period beginning and end date for each Damages Class Member and the amount of Principal Damages (defined below) for each Damages Class Member. Only information contained in

---

[1] The Parties acknowledge that there may be individuals who, if their individual files were reviewed, would qualify as Damages Class Members (or would be entitled to greater damages than can be determined from the data). Because only the Damages Class Members identified from the Database as having calculable damages will be sent notice of the opportunity to file a claim for monetary compensation, only they will be considered Damages Class Members under this Settlement Agreement, and only they will be bound by it if they do not opt out.  No Injunctive Relief Class Members, as defined above, may opt out of the injunctive relief portion of this Settlement Agreement.

that Database will be utilized to determine Damages Class membership and the amount of damages. While HUD data will be used where possible, to the extent that there are entries in the HACLA data that do not appear in the HUD data, the HACLA data will be used as a supplement. All such information is subject to the protective order in this action, and a copy of the protective order shall be provided to the Claims Administrator, who shall be required to sign the order.  The Class Administrator shall be responsible to ensure complete confidentiality of the information, and shall certify that the database information is properly disposed of once the project is completed.

13.    The "Effective Date" means thirty days after the date upon which a judgment entered by the Court approving the Settlement Agreement becomes final. The Judgment will be deemed final only upon expiration of the time for a Damages Class member who files an objection to file a notice of appeal (30 days after entry of judgment) or, if a notice of appeal is filed by an objector, upon exhaustion of all appeals and petitions for writs of certiorari. If no Damages Class Member files an objection, then the Judgment shall become final 30 days after entry of the Final Approval Order and Judgment.

14.    "Gross Rent" is the rent due to the landlord plus utilities.

15.    The "HAP" (Housing Assistance Payment to which a Section 8 tenant is entitled) is equal to the lesser of Gross Rent (which is rent plus utilities) or the VPS amount, minus the TTP (Total Tenant Payment) (all of which terms are defined herein).

16.    "HCVP" refers to Housing Choice Voucher Program. The claims in this case only relate to HCVP members (who are colloquially known as "Section 8 tenants").

17.    "HUD" refers to the U.S. Department of Housing and Urban Development.

18.    An "Opt-Out" is any Damages Class Member who files a timely request for exclusion, pursuant to the terms of this Settlement Agreement, to be

excluded from the Settlement Class.  (If used as a verb, "opt out" refers to the process of filing for such exclusion.)

19.    "Principal Damages" means the difference between the amount of Tenant Rent to Owner a Damages Class Member would have paid under the "But For" VPS (i.e., before the reduced VPS for that Damages Class Member) and the amount of Tenant Rent to Owner actually paid by the Damages Class Member under the lowered VPS. (VPS is defined below, see ¶ 26.) Said another way, "Principal Damages" means the damages due to a Damages Class Member without interest, equal to the difference between each tenants' actual rent to his/her landlord and what his/her rent would have been, but for the challenged reduction in that tenant's subsidy (i.e., the reduction in that tenant's Voucher Payment Standard). The aggregate Principal Damages for all Damages Class Members amount to $10,308,774.

20.    The "Proof of Claim Form" means the Proof of Claim and Release Form required to be used in order to make a claim for payment under this settlement. A copy of the proposed Proof of Claim Form is attached as Exhibit B. The pre-prepared Proof of Claim Forms shall be bar coded to link with each Damages Class Member's database information and shall contain the damages to which that Class Member is entitled if s/he were to receive the full damages provided for in this agreement.

21.    "Released Person" means the Defendants and their affiliates, subsidiaries, predecessors, successors, and/or assigns, together with past, present and future officials, employees, representatives, attorneys, and/or agents of the HACLA, including Rudolf Montiel, or any of them. "Released Persons" also includes any and all insurance carriers, and/or their representatives and attorneys, for the Released Persons.

22.    "Residual Class Fund" refers to the amount remaining in the Class Fund after payment of Class Counsel Attorneys' Fees, Class Counsel Litigation Costs, and the costs of the Class Administrator.

23.     A "Settlement Class Member" ("SCM") means any member of the Damages Class as defined above (whether or not s/he files a timely Proof of Claim Form), including representatives, successors and assigns, who does not file a valid and timely Request for Exclusion as provided for in this Settlement Agreement

24.     The "Tenant Rent to Owner" is the portion of a tenant's rent determined by the rent due to the landlord minus the Housing Assistance Payment ("HAP").

25.     "TTP" refers to the Total Tenant Payment towards his or her rent. TTP is a figure derived from the tenant's income that is a factor in determining Tenant Rent to Owner.

26.     "VPS" refers to the Voucher Payment Standard, which is the maximum subsidy payment that HACLA will provide for each type of unit size in its geographical coverage area, and thus is the maximum amount HACLA can contribute towards a HCVP participant's rent. In any given year, the VPS schedule lists the maximum such subsidy available for different size units.

## III.    DISCLAIMER OF LIABILITY

27.     The Parties acknowledge and agree that all undertakings and agreements contained in this Settlement Agreement have been agreed to solely for the purpose of finally compromising all questions, disputes and issues between them relating to the litigation. This Settlement Agreement and any proceedings taken pursuant hereto shall not in any event be construed as, interpreted as, or deemed to be evidence of an admission or concession by any party for any purpose, or deemed to constitute a waiver of any legal position or any defenses or other rights which any of the Parties might otherwise assert in any context. Neither this Settlement Agreement nor any provision contained therein, nor any documents related hereto, nor any negotiations, statements or testimony taken in connection herewith may be offered or received as evidence, or used for any other purpose, or in any suit, action or legal proceeding which any party has, or in the future may have, with any other person, as an admission or concession of liability or

wrongdoing on the part of any party, except in connection with any action or legal proceeding to enforce this Settlement Agreement. The Parties have reached this settlement through arms-length negotiations and to avoid the costs and delays of further disputes, litigation and negotiations between them with the extensive participation of an independent mediator, subject to approval by the Court. This Settlement Agreement has been entered into without any concession of liability or nonliability whatsoever and has no precedential or evidentiary value whatsoever.

## IV. FINANCIAL TERMS OF SETTLEMENT AGREEMENT

28. The "Class Fund" (defined previously) shall be comprised of the maximum remaining on HACLA's insurance policy with "Westchester Surplus Lines Insurance Company and Chubb North American Financial Lines Claims ("Chubb") (estimated to be not less than $8 million), plus $1 million from HACLA's RSUI Indemnity Company excess insurance policy. Thus, the Class Fund is estimated to be not less than $9 Million, but the exact amount will not be determined until the time of the Final Approval Order, when the amount of Defendants' attorneys' fees and costs can be finally determined.[2]

29. Each Damages Class Member who makes a claim will be entitled to his or her Principal Damages unless those damages are adjusted as provided in this Agreement.

30. The total funds available for distribution to Damages Class Members who make claims shall not exceed the total of the "Residual Class Fund" (defined above).

31. In the event that the total claims made do not amount to the funds available for class distribution after payment of the foregoing fees and costs, Defendants shall not pay an amount to any Class Member beyond that person's Principal Damages.

---

[2] The Chubb policy is a $10 Million policy, from which defense fees and costs are taken. As of the time of the March 23 2017 mediation, at which a settlement was reached in principle, approximately $8.5 Million remained available under the Chubb policy.

32.    In the event that the claims made exceed the amount of the Class Fund available after payment of the foregoing fees and costs, each Damages Class Member shall be paid his/her respective proportion of his/her Principal Damages (e.g., if there is only enough of the available fund to pay 75% of the aggregated claims, each Damages Class Member shall be paid 75% of his/her Principal Damages amount).

33.    Any funds not distributed shall revert to the funders, beginning with RSUI being completely refunded first, up to $1 Million. However, to the extent that the claims made by Damages Class Members do not exceed an aggregate amount of $2 million, the difference between the claims made and $2 Million will be paid to one or more organizations, to be agreed upon by the Parties, that assist Section 8 tenants (hereafter referred to as "Cy Pres Organizations"). The remaining funds will revert to the funders, as set forth at the beginning of this paragraph. Where Damages Class Members make claims, but do not cash their checks, the Class Administrator will make efforts to reach them and assist them to do so; the funds from checks that have not been cashed within one year of issuance shall go to the agreed upon Cy Pres Organizations.

34.    The HACLA shall treat any payment to Damages Class Members who are current recipients of Section 8 in accordance with HUD regulation 24 C.F.R. § 5.609(c)(3), i.e., payments will be treated as a settlement for personal injury. For current Section 8 tenants, HACLA will designate a person to be identified in the Class Notice whom Damages Class Members can contact with questions about the impact of receipt of settlement funds on their Section 8 benefits.

35.    The Parties agree that this is a claims-made settlement, requiring an SCM to formally submit a valid and complete Proof of Claim Form in order to qualify and receive payment under this Settlement Agreement. In addition to and separate from any other payments called for in this Agreement, the Released Parties agree to pay an SCM who files a timely Proof of Claim Form his/her Principal

Damages from the Residual Class Fund (defined previously) to the extent such funds are available, or to the extent claims exceed the Residual Class Fund claims will be paid proportionately as provided in ¶32. To receive payment, an SCM must comply with the requirements set forth in this Settlement Agreement and meet the standards for Damages Class membership set forth the below:

a.    The identity of, and the Principal Damages for, Damages Class Members shall be determined utilizing the methodology employed by Plaintiffs' statistical expert Brian Kriegler (hereafter "Kriegler Methodology") in the reports filed with the court in conjunction with Plaintiffs' motion for summary judgment, as updated by his June 1 2017 Memorandum explaining how he has used and integrated the HACLA and HUD data. (Copies of the relevant Kriegler reports will be posted on the Class Administrator's website in order to make them available to interested class members. A copy of the June 1 2017 Kriegler Memorandum is attached hereto as Exhibit D)

b.    Identification of Damages Class Members and determination of the amount of Principal Damages due a Damages Class Member is based exclusively on information contained in the Database.

c.    The Kriegler Methodology will utilize the HUD data to the extent available as of April 15, 2017, to determine certain values (the HAP, VPS, TTP, Gross Rent, Tenant Rent to Owner) used in determining class membership and calculating Principal Damages. To the extent HUD data is not available for those calculations, or for other values utilized by Kriegler, he will use the available HACLA data.

d.    People whose address during the Damages Period is outside the City of Los Angeles have been excluded based on the addresses shown in the HACLA data.

e.    Based on HUD and HACLA criteria, HCVP participants who fit into the following categories were not entitled to the One Year Advance Notice under HUD regulation 24 C.F.R. § 982.505(c)(3) (the defects in which were the basis for Plaintiffs' claims) and thus were excluded from the Damages Class utilizing available HUD/HACLA data: 1) a new tenant who moved into Section 8 housing after the date April 2, 2004; 2) a current HCVP participant who moved into a different Section 8 unit after April 2, 2004 (such tenant is not entitled to the advance notice as of the time s/he moved into a new unit); 3) a current HCVP participant who changed Voucher Bedroom sizes after April 2, 2004 (such tenant is not entitled to the advance notice as of the change in voucher bedroom size); 4) a HCVP participant whenever a new Housing Assistance Payment ("HAP") contract must be executed for that holder's unit, even if the family is not moving from its current unit (i.e., when the owner and the family enter into a new lease agreement); and 5) an HCVP participant who is allotted an exception VPS amount as a reasonable accommodation for a unit (not to exceed 120% of the Fair Market Rent as determined by HACLA). Such individuals are not members of the Damages Class as of the time they fit into one of these Exclusions.

f.    Damages Class Principal Damages for each Damages Class Member are based on first identifying those tenants for whom VPS determined the HAP after the VPS went down (even if the VPS did not determine the HAP before the VPS decrease), because all such Damages Class Members' Tenant Rent to Owner was impacted by the VPS reduction. Those who would have been affected negatively by the VPS decrease are all those for whom the *decreased* VPS was the driver of the HAP,

1      and therefore their rental contribution, after the VPS reduction.

2          g.      Ultimately, Principal Damages exist when and to the extent a Damages

3                  Class Member's Tenant Rent to Owner rose as a result of the VPS

4                  reduction. The details of the damages calculation are further explained

5                  in the reports of Brian Kriegler, copies of which will be posted on the

6                  Administrator's website to be established for this case.

7          36.    Notwithstanding the Principal Damages due a Damages Class Member

8    under the Kriegler Methodology, the amounts to be paid Damages Class Members

9    (not including the incentive award for Nidia Pelaez and payment to Michael Nozzi

10   for individualized damages) will be adjusted on a pro rata basis if the Principal

11   Damages amount due to SCMs who have filed claims exceeds the Residual Class

12   Fund so that the total payment to such class members does not exceed the Residual

13   Class Fund.

14         37.    The Coalition to End Hunger and Homelessness was an injunctive

15   relief Plaintiff and is no longer an operating entity. Its claims will be dismissed with

16   prejudice.

17         38.    Defendants take no position on a fee and costs request by Class

18   Counsel that does not exceed 30% of the total Class Fund.

19         39.    The Damages Class Member list will consist of the latest list prepared

20   by Brian Kriegler utilizing the Kriegler Methodology as summarized in Exhibit D

21   (the Kriegler June 1 2017 Memorandum, and will identify Damages Class Members

22   and the Principal Damages for each such Damages Class Member.

                    **V.      OTHER SETTLEMENT TERMS**

23         40.    The Parties enter into this agreement solely for the purposes of this

24   settlement and implementation of the settlement. If the settlement fails to be

25   approved or otherwise fails consummation, then this Settlement Agreement is

26   hereby withdrawn.

27         41.    An SCM who complies with the requirements set forth in this

28

4847-3997-8058.1                              13

Settlement Agreement and files a timely Proof of Claim Form will be paid specified sums determined by the settlement distribution process set forth herein, which payment shall be in full satisfaction of all claims of that SCM.

42.    The Settlement Agreement, as of the Effective Date, resolves in full all claims against the Released Persons by all of the SCMs, including the named Plaintiffs, involving violations of law or constitutional rights, including, without limitation, their due process rights under federal and California Constitutions and law, their rights under California Civil Code § 815.6 and for negligence, any other rights under any other federal, state or local law, regulation, duty, or obligation, or any other legal theory, action or cause of action, which are based upon or could be based upon or arise from the facts alleged in the lawsuit (hereafter "Covered Claims").

43.    When the Settlement Agreement is final, as of the Effective Date, all SCMs, including the named Plaintiffs, waive all rights to any and all claims relating to damages or reimbursement of any kind for the Covered Claims. This waiver and release shall include a full release and waiver of unknown rights regarding the Covered Claims that may exist as of the Effective Date.

44.    As of the Effective Date, the SCMs, including the named Plaintiffs, hereby waive any and all rights to pursue, initiate, prosecute, or commence any action or proceeding before any court, administrative agency or other tribunal, or to file any complaint regarding acts or omissions by the Released Persons with respect to the Covered Claims during the Class Period that fit within the definition of the Damages Class; and further, as it relates to this waiver or Release, expressly waive the provisions of California Civil Code § 1542, which provides that "a general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

45.    This Settlement Agreement, together with its exhibits, contains all the terms and conditions agreed upon by the Parties regarding the subject matter of the

instant proceeding, and no oral agreement entered into at any time nor any written agreement entered into prior to the execution of this Settlement Agreement shall be deemed to exist, or to bind the Parties, or to vary the terms and conditions contained herein, except as expressly provided herein.

46. Each SCM shall be deemed to have submitted to the jurisdiction of the Court.

47. This Settlement Agreement is subject to and conditioned on final approval by the HACLA Board of Commissioners. This Settlement Agreement is further subject to and conditioned on a Fairness and Final Approval Hearing conducted by the Court, the final approval of this Settlement Agreement and the issuance of the final order and judgment of dismissal by the Court, providing the specified relief as set forth below, which relief shall be pursuant to the terms and conditions of this Settlement Agreement and the Parties' performance of their continuing rights and obligations hereunder. The Order and Judgment shall be deemed final thirty days after entry of the Court's Final Order of Approval and Judgment on the Court's Docket (see definition of "Effective Date," *supra*). Such Final Order and Judgment shall:

    a. Dismiss with prejudice all claims in the action as to the Released Persons including all claims for monetary damages, declaratory relief and injunctive relief, except as to the terms of the injunction to be entered, which terms are set forth *infra*, each side to bear its own costs and fees except as otherwise provided for in this Settlement Agreement;

    b. Order that all SCMs are enjoined from asserting against any Released Person any and all claims that any SCM had, has or may have in the future arising out of the facts alleged in the Complaint;

    c. Release each Released Person from the claims that any SCM has, had or may have in the future against such Released Person arising out of the facts alleged in the Complaint;

    d. Determine that this Settlement Agreement is entered into in good faith, is

reasonable, fair and adequate, and in the best interest of the Class; and

e.  Reserve the Court's continuing and exclusive jurisdiction over the Parties to this Settlement Agreement, including Defendants and SCMs, to administer, supervise, construe and enforce the Settlement Agreement in accordance with its terms for the mutual benefit of all Parties, and to enforce the terms of the injunction described *infra*.

The Parties will take all necessary and appropriate steps to obtain preliminary and final approvals of the Settlement Agreement, and dismissal of the action with prejudice, all parties bearing their own fees and costs unless otherwise set forth in this Settlement Agreement. If the Court gives final approval of this Settlement Agreement, and if there is an appeal from such decision, the Parties will defend the Settlement Agreement.

## VI.    RESOLUTION AND PAYMENT OF CLAIMS

48.    Released Parties shall not prefund any settlement fund or proceeds. Instead, funds will be deposited by the Released Parties to the Class Administrator as necessary to pay the class administration costs, and the SCMs who file timely claims (including the Named Plaintiffs' claims). (Attorneys' fees and costs are addressed separately.)

49.    Defendants' insurers agree to pay Nidia Pelaez $5,000 (to be paid from the Class Fund) as an incentive award for her service as the sole named Class Representative, in addition to the amount due to her as a member of the Damages Class, subject to approval of the Court, and agree to pay $1,000 from the Class Fund to Michael Nozzi as an individual plaintiff in exchange for his release of claims, as full payment (including any due him as a Damages Class Member) for his individualized damages.

50.    Defendants' primary insurer will issue a check payable by overnight mail payable to the Class Administrator for the remainder of the Residual Class Fund to the extent required to comply with this Agreement within thirty (30) business days of the Effective Date of the Settlement. Defendants' excess insurer

will pay its contribution by check sent by overnight mail to the extent such funds are required.

51.    The Class Representatives and Class Counsel shall provide tax identification information to Defendants and their insurers within 30 days from the date of preliminary approval of the Settlement Agreement.

## VII.    PAYMENT OF CLASS COUNSEL FEES

52.    Defendants' primary insurer shall pay a one-time only lump sum payment of the full amount of the Class Counsel attorneys' fees plus litigation costs awarded by the Court, payable by check sent by overnight mail to the KMBL Client Trust Account within 30 business days after the Effective Date of the Settlement. This payment represents a full and final settlement of all past, present and future attorneys' fees and all past, present and future ordinary and extraordinary costs. (This method of payment means that Defendants' primary insurer will pay the attorney's' fees and costs by check sent by overnight mail, and its excess carrier, to the extent its policy must pay, will also pay the full amount due from it directly to the Class Administrator by check sent by overnight mail.) While this payment comes from the Class Fund estimated at not less than $9,000,000, it will be made separately from the payments sent to the Class Administrator for Class Administration costs and for disbursement to class members from the Residual Class Fund.

## VIII.    CLASS ADMINISTRATION COSTS

53.    Requests for bids were sent to several established Class Administrators. The Parties have now accepted the bid of JND Legal Administration to act as Class Administrator, based on Class Counsel's assessment of the most reasonable bid, taking into account the combination of the price and scope of the services provided, and the capabilities and reputation of the prospective Administrator. A copy of the accepted JND bid is attached as Exhibit E. It includes a statement of JND's qualifications to act as Class Administrator as well as the contract to be entered.

54.    The Released Parties shall directly pay all Class Administration costs, as provided in the contract with the Class Administrator attached as Exhibit E, as well as charges for the services of Brian Kriegler after April 15, 2017.

55.    The Administrator shall be responsible for providing Class Notice. This duty shall comprise mailing Class Notice and a Proof of Claim Form by regular mail to all Class Members' last known address. The Administrator shall also use normal and customary means to search for a Class Member's last known address, including the use of a postal database, when mail is returned, or do whenever else is appropriate in order to reasonably notify Class Members. Class Counsel may also take whatever steps they deem appropriate to notify the Class Members of their rights to file claims and to assist them in doing so.

56.    The Class Notice shall describe the particulars of the case, provide the class definition, provide information on how claimants can contact the Administrator for a Proof of Claim Form, notify Damages Class Members of establishment of a case website, and contain other usual and customary information. The proposed Class Notice is attached to this Settlement Agreement as Exhibit C.

57.    The Administrator shall complete the mailing of Class Notice within two consecutive business days. The second day of such mailing is the first day of the period for calculating the "Bar Date" (defined previously). That mailing shall occur as soon as practicable after the settlement has been preliminarily approved.

58.    The Administrator shall be responsible for publishing a summary Class Notice for three consecutive weeks in Los Angeles County regional newspapers to be determined. Prices shall be sought for the LA Weekly, the Lang Newspaper Group, the Los Angeles Sentinel, La Opinion and potentially others. The Administrator will propose, to the extent possible, economically viable forms of notice through the use of social and informational media. In addition, HACLA will post the summary notice of settlement at any offices in which it operates where Section 8 tenants may have occasion to visit, which will include a posted notice that a complete copy of the Class Notice and Proof of Claim Form are available upon

request at any HACLA office.

## IX.    CLASS ADMINISTRATION FOR PROOF OF CLAIM FORMS

59.    The Administrator shall be responsible for providing and receiving Proof of Claim Forms. The Administrator shall determine Damages Class membership and the amount of Principal Damages based on the analysis of Brian Kriegler.

60.    A Proof of Claim Form shall be deemed timely submitted when received by the Administrator, or postmarked, on or before the Bar Date. Facsimile or electronic mail filings are acceptable and timely so long as they clearly indicate the case on which the claim is filed and are received on or before the Bar Date.

61.    If a Damages Class Member submits a timely Proof of Claim Form that is deficient in some respect, the Administrator shall provide written notice by First Class Mail and a 30-day time limit to provide a proper Proof of Claim form, which notice shall inform the Damages Class Member of what s/he must do in order to submit a proper Proof of Claim Form. Failure to cure the deficiency within the 30-day time limit will bar any further rights for consideration of eligibility. So long as the original claim is received on or before the Bar Date, it shall be considered timely if any deficiency is cured within 30 days of the mailing of a notice of deficiency.

62.    Untimely filed Proof of Claim Forms shall be rejected by the Administrator and no payment shall be made. The Administrator will notify claimants of the rejection of untimely claims.

63.    The Administrator shall make payments to SCMs who have filed timely claims in accordance with this Settlement Agreement within a reasonable time not to exceed 120 days after the Effective Date.

64.    If a check to an SCM is not cashed within three months of its mailing, the Administrator shall hold the funds for nine additional months, during which time it shall make reasonable efforts to contact the person to whom the uncashed check was written to make arrangements for its cashing or reissuance. Any such

funds not cashed within one year of its mailing shall be paid to the Cy Pres Organization(s) referred to in ¶ 33.

65.　The Administrator shall not make payment to any SCM until all claims have been submitted to the Administrator pursuant to the terms of this Settlement Agreement.

## X.　　　EXCLUSION FROM SETTLEMENT CLASS—OPT OUTS

66.　Any Damages Class Member who wishes to be excluded from the Settlement Class must submit a request to be excluded from the class, a process defined herein as "Opt-Out." The request for exclusion must be delivered to the Administrator, or postmarked, on or before the Bar Date or as the Court may otherwise direct.

67.　Each member of the Settlement Class who chooses to Opt-Out from or object to this settlement shall be deemed to have submitted to the jurisdiction of the Court with respect to his/her claim and to any dispute resolution process conducted by a Special Master as set forth in this Settlement Agreement.

68.　Any Damages Class Member who does not Opt-Out as set forth in this Settlement Agreement, shall be deemed conclusively to have become an SCM and to be bound by the Settlement Agreement and all subsequent proceedings, orders and judgments herein, regardless of whether s/he files a Proof of Claim Form.

69.　Any Damages Class Member who exercises an Opt-Out shall not share in any monetary benefits provided by this Settlement Agreement.

70.　The Administrator will periodically report to Defendants' counsel and Class Counsel all Opt-Outs received (including providing copies of them), and will determine and report to counsel the total number of Opt-Outs no later than 10 days after the Bar Date. If the total number of Opt-Outs exceeds 5% of the total Damages Class Members as determined by the Damages Class Member List, Defendants and/or their insurers, in their sole discretion, may rescind their acceptance of the Settlement Agreement. Defendants and/or their insurers in exercising this right of rescission, shall provide the Administrator and Class

Counsel with written notice of rescission within 10 days after receipt of the Administrator's report providing the total number of Opt-Outs. In the event Defendants and/or their insurers exercise their right of rescission in accordance with this paragraph, any funds paid or deposited pursuant to this Settlement Agreement shall be returned to Defendants and/or their insurers within 10 days of the exercise of the right to rescind, less any expenses, fees and costs incurred by the Administrator. Such Administrator costs shall be borne exclusively by Defendants and/or their insurers and shall not be chargeable as a collectible cost should Defendants ultimately prevail in this Action.

## XI. INJUNCTION

71. The Final Approval Order shall include an order granting an injunction for a three-year period as follows.

    a.    In any future notices to Section 8 tenants, related to the reduction of the Voucher Payment Standard, Defendant HACLA shall simply and plainly communicate the information provided in non-technical, language that would be reasonably understandable to Section 8 tenants, at a language level commensurate with the average educational level of Section 8 tenants. The notice shall reasonably explain the known, likely or potential impact on the tenant of the action that is the subject of the notice.

    b.    Any notice within the next three years regarding reduction of the Voucher Payment Standard shall be provided to Class counsel before it is sent, and shall be subject to the approval of Class Counsel before it is communicated to Section 8 tenants, which approval shall not be unreasonably withheld.

    c.    When communicating any new notices to tenants (other than a notice of reduction of VPS to which ¶ 72(a) of this Agreement applies), HACLA will use language reasonably understandable to Section 8 tenants. For purposes of this Agreement, the parties agree that

21

existing notices that have been historically sent regularly to tenants without challenge, such as the RE 38 notice, notices sent to tenants when HACLA approves a rent increase requested by the landlord, and notices when there is a bedroom downsizing, meet this standard.

## XII.   APPROVALS

72.    All Clients, for both Plaintiffs and Defendants, have approved this settlement. A version of this settlement signed by counsel for all parties shall be submitted for the preliminary approval order, and the parties (other than Rudolph Montiel, who was at the time but no longer is the HACLA Executive Director) shall sign it prior to the final approval order.

## XIII.  DISPUTE RESOLUTION

73.    The Parties agree to the appointment of the Honorable Gary A. Feess (Ret.) as Special Master pursuant to Federal Rule of Civil Procedure 53 to resolve disputes that arise from implementation of the Settlement Agreement as set forth herein. The cost of any such disputes shall be paid from the Class Fund.

## XIV.  INTEGRATION

74.    This Settlement Agreement supersedes all prior communications regarding the matters contained herein between the Parties or their representatives. This Settlement Agreement is an integrated agreement and contains the entire agreement regarding the matters herein between the Parties, and no representations, warranties or promises have been made or relied on by any Party hereto other than as set forth herein. This Settlement Agreement was drafted by counsel for the Parties hereto, and there shall be no presumption or construction against any Party.

## XV.   FAIRNESS HEARING AND FINAL ORDER OF APPROVAL

75.    Before this Settlement Agreement becomes final and binding on the Parties, the Court shall hold a Fairness Hearing to determine whether to enter the Final Order of Approval. A proposed Final Order of Approval shall be submitted to the Court incorporating the terms of this Settlement Agreement and addressing related information such as Objections and Opt-Outs.

## XVI.  NO THIRD PARTY BENEFICIARIES INTENDED

76.     This Settlement Agreement does not and is not intended to create any rights with respect to any third parties, except as otherwise provided herein.

## XVII. COUNTER PARTS

77.     This Settlement Agreement may be signed in counter parts.

## XVIII.     MEANING OF COUNSEL'S SIGNATURES

78.     Counsel for Plaintiffs, Barrett S. Litt, and counsel for Defendants, Brant Dveirin, have signed this Settlement Agreement. Counsel are not parties, and their signatures are solely for the purpose of indicating their approval of the Settlement Agreement as to form and content.

/////
/////
/////
/////
/////
/////
/////
/////
/////
/////
/////
/////
/////
/////
/////
/////
/////
/////
/////

The undersigned have each reviewed and knowingly entered this agreement. The parties certify that they have fully consulted with their counsel before doing so.

DATED: 6/9/17                         KAYE, MCLANE, BEDNARSKI & LITT
                                      PUBLIC COUNSEL

                                      By: _____
                                              Barrett S. Litt
                                           Attorneys for Plaintiffs

DATED: 6/8/17                         LEWIS, BRISBOIS

                                      By: _____
                                              Brant Dveirin
                                          Attorneys for Defendants

DATED: 6/9/17                         KAYE, MCLANE, BEDNARSKI & LITT
                                      PUBLIC COUNSEL

                                      By: _____
                                              Barrett S. Litt
                                           Attorneys for Plaintiffs

DATED: _____                NIDIA PELAEZ

                                      By: _____
                                              Nidia Pelaez

DATED: _____                MICHAEL NOZZI

                                      By: _____
                                              Michael Nozzi

1    The undersigned have each reviewed and knowingly entered this agreement.

2  The parties certify that they have fully consulted with their counsel before  doing

3  so.

4  DATED: _____          KAYE, MCLANE, BEDNARSKI &
                                     LITT
5                                    PUBLIC COUNSEL

6

7                                    By: _____
                                            Barrett S. Litt
8                                        Attorneys for Plaintiffs

9

10 DATED: _____          LEWIS, BRISBOIS

11

12                                   By: _____
                                            Brant Dveirin
13                                       Attorneys for Defendants

14 DATED: _____          KAYE, MCLANE, BEDNARSKI &
                                     LITT
15                                   PUBLIC COUNSEL

16

17

18                                   By: _____
                                            Barrett S. Litt
19                                       Attorneys for Plaintiffs

20 DATED: 6 - 7 - 17                 NIDIA PELAEZ

21

22                                   By: _____
23                                          Nidia Pelaez

24 DATED: 6 / 9 / 2017               MICHAEL NOZZI

25

26                                   By: _____
27                                          Michael Nozzi

28

CLASS ACTION SETTLEMENT AGREEMENT

1    DATED: _____ 6/8/17        HOUSING AUTHORITY FOR THE CITY
2                                 OF LOS ANGELES
3
                                  By: _Doug Guthrie___
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

4847-3997-8058.1                        25

LIST OF EXHIBITS TO SETTLEMENT AGREEMENT

Exhibit B          Proof of Claim

Exhibit C          Class Notice

Exhibit D          June 1 2017 Kriegler Memorandum

Exhibit E          JND Legal Administration Bid