**Exhibit D**

# MEMORANDUM

FROM: B. Kriegler

RE: <u>Summary of criteria used to calculate damages for settlement purposes</u>

DATE: June 1, 2017

## I. Overview

1. This memo outlines the criteria used to identify tenants who are owed settlement awards and the amounts owed to each tenant. Tenants owed settlement awards were residents of Section 8 housing in the City of Los Angeles. In the mid-2000s, the Housing Authority of the City of Los Angeles (HACLA) reduced tenants' subsidies. Tenants' portion of rent therefore increased because their subsidies decreased. Plaintiffs allege that decreases in subsidies were improper because tenants were not given adequate notice that their subsidy was going to be reduced. Damages are equal to the difference between tenants' portion of rent to their landlords and what their rent would have been, but for the improper reduction in the subsidy.

2. Each tenant's settlement award is determined using two electronic databases. One database is maintained by HACLA, and the other is maintained by HUD.[1] Each of these databases was produced over the course of the *Nozzi v. HACLA* litigation. The criteria applied onto these data are based on numerous documents produced in this litigation, agreements reached between the parties regarding the criteria for damages class membership, and joint discussions that included Plaintiff's counsel and HACLA.

3. Applying a set of criteria (explained below) to the aforementioned data, there are **11,870** tenants owed **$10,308,774** in rent overcharges. Such criteria are designed to identify which Housing Choice Voucher Program (HCVP) tenants were entitled to

---

[1] The database maintained by HUD is based on HACLA data. As explained in Section II, monetary values are considered more reliable in HUD, some data are in both databases, and some data are only captured in HACLA's database.



4. advance notice that their subsidy was going to decrease, under HUD regulations and HACLA policies.

5. The remainder of this memo consists of four sections. Section II describes the aforementioned HACLA and HUD databases. Section III consists of terminology and the derivation of relevant terms (*e.g.*, dates and dollar amounts). Section IV includes the data filters applied to the HACLA and HUD databases. A damages demonstration is provided in Section V. In summary, this memo provides an overview for the parties, the Court and ultimately class members of the standards used to determine which tenants are owed damages and the amounts they are owed.

## II.   Data Sources

5. Two data sources were used to calculate damages. The relevant pieces of information from these data sources are listed in the table below. Terms that are bolded are derived from these databases and are described or defined in greater detail below.

| Table 1: Data Relied Upon to Identify Tenants Owed Damages for Settlement Purposes ||
|---|---|
| **Name Database** | **Relevant Pieces of Information** |
| Emphasys (HACLA database) | Address/City<br>Lease start date ("Lease Date")<br>**Reexamination Month**<br>**Pre-reduced VPS** (if it does not appear in the HUD database but does in Emphasys) |
| HUD database | Prior to July 1, 2005:<br>• **Pre-reduced VPS**<br><br>**Dollar Amounts** during each tenant's **Damages Period**:<br>• VPS<br>• Rent to Owner<br>• Utility Allowance<br>• Gross Rent<br>• Total HAP<br>• TTP<br>• HAP to Owner<br>• Tenant Rent to Owner |



### A. Notes about Emphasys and the HUD database

6. Both Emphasys and the HUD database include the Dollar Amounts listed in Table 1, above. HACLA has indicated that the HUD database is the most reliable data source for these pieces of information. Therefore, the HUD database is used to identify each of the aforementioned monetary amounts for each tenant.

7. For some tenants, there are no data records prior to July 1, 2005 in the HUD data. Therefore, there is no Pre-reduced VPS (a term that is defined below) in the HUD data. In such circumstances, the Pre-reduced VPS is derived using Emphasys (assuming, of course, it appears there).

8. The HUD database does not include the Reexamination Month or Lease Date. Those pieces of information must come from Emphasys.

### III. Terminology and Derivations

9. Below are descriptions of the **Dollar Amounts** listed in Table 1. Each of these amounts appear in Section 12 of the Family Reports:[2]

    - **VPS**: This is an abbreviation for "Voucher Payment Standard." The VPS is the maximum subsidy the Housing Authority provides to a Housing Choice Voucher Payment holder. (Note that the basis of this lawsuit was Plaintiffs' contention that HACLA reduced the VPS, thereby decreasing the subsidy for those who are damages class members, without the required constitutionally adequate notice.)

    - **Rent to Owner**: This is the total amount paid to the landlord. The Housing Authority may pay for some of the rent, and the tenant pays the difference.

    - **Utility Allowance**: Allowance for utility charges.

    - **Gross Rent**: Rent due to the landlord, including utilities.

    - **TTP**: This is an abbreviation for Total Tenant Payment. The TTP is derived from the tenant's income.

---

[2] See, e.g., H01667 (family report for Nidia Pelaez).



- **Total HAP**: Abbreviation for the Total "Housing Authority Payment." The Housing Authority Payment equals Gross Rent minus the Total Tenant Payment.

- **HAP to Owner**: The Housing Authority Payment cannot exceed the Rent to Owner. The HAP to Owner is the lesser of Rent to Owner and the Total HAP.

- **Tenant Rent to Owner**: The portion of a tenant's rent determined by the rent due to the landlord minus the Housing Authority Payment.

10. The **Pre-reduced VPS** is each tenant's VPS prior to July 1, 2005.

11. The **Reexamination Month** refers to the first month and year on or after July 2005. This signifies the month and year that the VPS was first reduced or could have been reduced. The Reexamination Month is derived using the Lease Date in HACLA's Emphasys database. Specifically:

    - If the Lease Date was **on or after** December 2, 1997, then the Reexamination Month was the same month as the lease date month. <u>For example</u>, if the Lease Date was October 14, 2005, then the Reexamination Month was considered to be October of each year.

    - If the Lease Date was **before** December 2, 1997 and on the first of the month, then the Reexamination Month was that same month. <u>For example</u>, if the Lease Date was October 1, 1996, then the estimated Reexamination Month was October of each year.

    - If the Lease Date was **before** December 2, 1997 and after the first of the month, then the Reexamination Month was the following month. <u>For example</u>, if the Lease Date was October 2, 1996, then the estimated Reexamination Month was November of each year.

12. Each tenant's **Damages Period** starts on the first day of that tenant's Reexamination Month on or after July 1, 2005. The latest start date of the Damages Period is June 1,

2006.  Each tenant's Damages Period has a maximum length of 11 months.  Therefore, the last month that any tenant could have damages is April 2007.[3]

13. Each tenant's Damages Period ends early (*i.e.*, in less than 11 months) if any of the following occur during their maximum 11-month period:

   (i) the tenant moves;
   (ii) the tenant's lease ends (including if the tenant passes away or when there is a new HAP contract);
   (iii) the tenant's VPS does not follow the VPS schedule (attached);
   (iv) the tenant is no longer in HCVP; or
   (v) the tenant becomes a "$0 HAP" tenant.

   In the items listed above, (i)-(ii) are determined using HACLA's Emphasys database, and (iii)-(v) are determined using the HUD database.

## IV. Data Filters

14. Tenants must meet the following criteria in Emphasys:

   - The residence must be located within the City of Los Angeles.

   - The tenant must remain at the same residence and under the same lease from April 2, 2004 through the first day of the Reexamination Month (on or after July 1, 2005).

   Tenants who do not meet both of these criteria are not eligible to receive a settlement award.

15. The HUD database is analyzed on a month by month basis for each tenant.  Each tenant's Damages Period is at most 11 months long; thus, up to 11 months are analyzed per tenant.  In a given month during a tenant's Damages Period, the tenant earns a settlement award if the following criteria are met using the HUD database:

---

[3] The maximum 11 months of damages is based on the following: (i) Plaintiffs' contention that notice of reduction was supposed to be 12 months prior to the reduction; and (ii) the actual notice was one month prior to the reduction.  The difference between the expected and actual notice is 11 months.



- VPS amounts before and after the reduction must appear on the VPS schedule (H00735) with the same voucher bedroom size, and the VPS must have decreased.

- The tenant is not a "$0 HAP" tenant. These are tenants for whom the Total HAP is greater than $0 but their HAP to Owner is $0.

## V.  Damages Calculation Demonstration

16. This section provides a demonstration of how a tenant's monthly damages are calculated, given that the tenant meets all of the criteria listed in Section III.

17. Damages calculations are equal to the actual tenant rent to owner and the tenant rent to owner but for the VPS reduction. The pre-reduced VPS is substituted for the actual VPS. Then, the calculations in Section 12 of the family report are performed.

18. The table below shows how these calculations are performed for each month of each tenant's Damages Period. Numbers shaded in gray are identical when calculating the actual tenant rent to owner and the tenant rent to owner but for the VPS reduction.



| EXAMPLE DAMAGES CALCULATIONS | | |
|---|---|---|
| Line Item | Actual Section 12 Calculations | Section 12 Calculations Using the Pre-Reduced VPS |
| 12J: VPS | $1,071 | $1,204 |
| 12K: Rent to Owner | $1,160 | $1,160 |
| 12M: Utility Allowance | $67 | $67 |
| 12P: Gross Rent [12K + 12M] | $1,227 | $1,227 |
| 12Q: Lesser of Gross Rent and VPS | $1,071 | $1,204 |
| 12R: TTP | $63 | $63 |
| 12S: Total HAP [12Q - 12R] | $1,071 - $63 = $1,008 | $1,204 - $63 = $1,141 |
| 12U: HAP to Owner [Lesser of 12K and 12S] | $1,008 | $1,141 |
| 12V: Tenant Rent to Owner [12K - 12U] | $1,160 - $1,008 = $152 | $1,141 - $1,041 = $100 |
| **Damages [Difference between Actual Tenant Rent to Owner and Tenant Rent to Owner, using Pre-Reduced VPS]** | $152 - $100 = $52 | |

19. Using the data filters and approach for calculating damages, there are **11,870** tenants owed **$10,308,774** in rent overcharges. To put these numbers in perspective, in the Expert Report of Brian Kriegler, Ph.D., dated February 27, 2017, there were 12,782 tenants owed a total of $11,052,100 in rent overcharges. Updated damages calculations therefore represent approximately 93 percent of damages calculations listed in the Kriegler Expert Report.