UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-0380 PA (FFMx) | Date | July 29, 2017 |
|---|---|---|---|
| Title | Michael Nozzi, et al. v. Housing Authority for the City of Los Angeles, et al. | | |

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Kamilla Sali-Suleyman | Not Reported | N/A |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:** IN CHAMBERS - COURT ORDER

Before the Court is an Unopposed Motion for Preliminary Approval of Class Action Settlement (Docket No. 296) filed by plaintiffs Michael Nozzi ("Nozzi") and Nidia Pelaez ("Pelaez") (collectively "Plaintiffs"). The parties seek to settle all claims raised by the facts alleged in this action, brought against the Housing Authority of the City of Los Angeles ("HACLA") and Rudolph Montiel in his official capacity[1]/ (collectively "Defendants"). (See Docket No. 297 ("Proposed Order"), Ex. A ("Settlement Agreement") ¶¶ 42–44.) Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds this matter appropriate for decision without oral argument. The hearing calendared for July 3, 2017, is vacated and the matter taken off calendar.

## I.    FACTUAL & PROCEDURAL BACKGROUND

The Section 8 housing program provides rental assistance to low-income, elderly, and disabled families. (See Nozzi v. HACLA, 806 F.3d 1178, 1184 (9th Cir. 2015) ("Nozzi II").) The majority of this assistance is provided through the Housing Choice Voucher Program, which is funded and regulated by the Department of Housing and Urban Development ("HUD") and administered locally by public housing agencies such as HACLA. Id. Under this program, the renter identifies qualifying housing, the public housing agency negotiates the rent with the landlord, the public housing agency pays a rent subsidy to the landlord on behalf of the tenant, and the renter pays the balance of the rent. Id. Within parameters established by HUD, the public housing agency sets a voucher payment standard (VPS) representing the maximum subsidy that it will pay for each type of housing in a particular area. Id. at 1185. Raising the VPS will generally yield larger subsidies, while lowering the VPS will generally yield smaller subsidies. Id. Each renter's eligibility for Section 8 benefits is examined on a yearly basis. Id. "If the public housing agency decides to lower the [VPS], it must provide information about the change to all beneficiaries at their annual reexaminations following the decision, and must further advise these beneficiaries that the change will not go into effect until their following reexamination one year later." Id.

---

[1]/   The City of Los Angeles was originally named as a defendant, but was dismissed on May 23, 2007. (Docket No. 48.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-0380 PA (FFMx) | Date | July 29, 2017 |
|---|---|---|---|
| Title | Michael Nozzi, et al. v. Housing Authority for the City of Los Angeles, et al. | | |

HACLA reduced its VPS in 2004. Under the new standard, an estimated 45% of tenants were required to pay an average of $104 more in rent each month. Id. at 1186. HACLA notified renters of this change in a flyer sent with annual reexamination documents. Id. The flyer provided general information about the new VPS, but did not specify how the changes would affect each renter. Id. An individualized notice was not provided until a second notice sent approximately four weeks before the new subsidy would take effect for each renter. Id.

Plaintiffs, along with the now-defunct Los Angeles Coalition to End Hunger & Homelessness, initiated this action in January 2007. Id. In April 2007, the district court granted in part and denied in part a motion to dismiss. (Docket No. 42.) Plaintiffs filed a First Amended Complaint alleging violations of (1) due process of law under 42 U.S.C. § 1983, (2) rights created by 42 U.S.C. § 1437f, (3) Cal. Gov. Code § 815.6, (4) Art. I, § 7 of the California Constitution, and (5) negligence. (Docket No. 49.) The court dismissed the second and fifth claims (Docket No. 63) and later granted Defendants' motion for summary judgment on the remaining claims (Docket No. 90). The Ninth Circuit reversed the dismissal of the fifth claim and the grant of summary judgment on the first, third, and fourth claims. Nozzi v. HACLA, No. 09–55588, 2011 WL 1167188 (9th Cir. 2011) ("Nozzi I"). On remand, the district court granted HACLA's renewed motion for summary judgment. (Docket Nos. 190, 192.) The Ninth Circuit again reversed, holding that the flyer sent by HACLA did not provide sufficient notice of the VPS change. The court found that this "failure violated both the requirements of the Voucher Program regulations and the requirements of procedural due process," as well as state law. Nozzi II, 806 F.3d at 1204. The matter was remanded "with instructions for the district court to enter summary judgment in favor of the plaintiffs on the merits of the federal and state law claims at issue on this appeal." Id.

Following remand, this Court certified two classes: (1) the Rule 23(b)(2) "Injunctive Relief Class" and (2) the Rule 23(b)(3) "Damages Class." (Docket No. 245.) The Injunctive Relief Class consists of "[a]ll Section 8 beneficiaries whose benefits are administered by [HACLA] and who in the past received, or in the future may receive, notices of a [VPS] decrease." (Id.) The Damages Class consists of "[a]ll [HACLA] Section 8 tenants, between June 1, 2005, and September 30, 2006, whose rental contribution for a period not to exceed eleven months was greater than it would have been but for Defendant HACLA's 2004 decrease in the [VPS]." (Id.) All Damages Class members are also members of the Injunctive Relief Class. (Settlement Agreement ¶ 7.) The Damages Class consists of 11,870 tenants, and their principal damages amount to $10,308,774. (Proposed Order, Ex. D ("Kriegler Report") ¶ 3.[2/])

---

[2/]   The Court notes a discrepancy between the report of Plaintiffs' statistical expert Brian Kriegler ("Kriegler") on the one hand and Plaintiffs' Motion and the Proposed Order, which identify only 11,868 tenants in the Damage Class. (See Mot. 3 (citing Kriegler Report); Proposed Order ¶ 10(h) (citing Kriegler Report).) The Court assumes for the sake of this Motion that 11,870 is the actual number of Damages Class members.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-0380 PA (FFMx) | Date | July 29, 2017 |
|---|---|---|---|
| Title | Michael Nozzi, et al. v. Housing Authority for the City of Los Angeles, et al. | | |

In February 2017, the parties filed cross-motions for partial summary judgment as to remedies. (Docket Nos. 250, 256.) Before the Court ruled on those motions, the parties filed a Stipulation for Settlement. (Docket No. 286.) On June 19, 2017, Plaintiffs filed the instant Motion for preliminary approval of their proposed Settlement Agreement.

**II.  THE SETTLEMENT AGREEMENT**

The Settlement Agreement was reached after ten years of litigation, two appeals, and two days of mediation before a retired federal judge. (See Settlement Agreement pp. 2–3.) The parties agreed that HACLA's insurers will pay a total of between $9 million and $9.4 million toward the "Class Fund" to settle all monetary claims of the Damages Class members. (Id. at ¶ 6.) Under the Settlement Agreement, the following expenses will be deducted from the Class Fund: attorneys' fees of less than 30% of the Class Fund; litigation costs, of approximately $220,000; expenses of between $48,000 and $68,000 incurred by the Class Administrator, and publication expenses of approximately $10,000 to $12,000; Pelaez's incentive award of $5,000; and Nozzi's incentive award of $1,000. (Id. at ¶¶ 4, 22, 49, 52; Proposed Order, Ex. E ("JND Proposal"); Mot. 9.) The residual amount of approximately $6 million (the "Residual Fund") will be available for Damages Class member claims. (See Settlement Agreement ¶ 35; Mot. 10.) The final Damages Class Member List is to be prepared by Kriegler based on information supplied by HACLA and HUD. (Settlement Agreement ¶¶ 9, 12.)

The Settlement Agreement requires the Damages Class members to file claims to qualify for and receive payment under the Settlement Agreement. (Id. at ¶ 35.) If more claims are made than can be fully compensated by the Residual Class Fund, claimants will receive proportional reductions in their reimbursements. (Id. at ¶ 32.) If more than $2 million, but less than the Residual Class Fund, is claimed, the remainder will revert to Defendants' insurers. (Id. at ¶ 33.) If less than $2 million in claims is made, the difference between $2 million and the claims made will be donated to a cy pres organization agreed upon by the parties. (Id.)

The parties have agreed upon provisions establishing a three-year injunction. Under these provisions, HACLA, when issuing notices related to reduction of the VPS, must "simply and plainly communicate the information provided in non-technical, [sic] language that would be reasonably understandable to Section 8 tenants, at a language level commensurate with the average educational level of Section 8 tenants. The notice shall reasonably explain the known, likely or potential impact on the tenant of the action that is the subject of the notice." (Id. at ¶ 71(a).) Furthermore, any such notice involving reduction of the VPS "shall be provided to Class [C]ounsel before it is sent [to Section 8 tenants], and shall be subject to approval of Class Counsel before it is communicated to Section 8 tenants, which approval shall not be unreasonably withheld." (Id. at ¶ 71(b).) Finally, HACLA is required to "use language reasonably understandable to Section 8 tenants" when communicating any new notices to tenants, other than a notice of reduction of the VPS, which are addressed by ¶ 71(a) of the Settlement Agreement. (Id. at ¶ 71(c).)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 07-0380 PA (FFMx) | Date | July 29, 2017 |
| Title | Michael Nozzi, et al. v. Housing Authority for the City of Los Angeles, et al. | | |

In return for the injunction and, as to Damages Class members, compensation, the class members agree to release Defendants from "all claims . . . involving violations of law or constitutional rights, including, without limitation, their due process rights under federal and California Constitutions and law, their rights under California Civil Code § 815.6 and for negligence, any other rights under any other federal, state or local law, regulation, duty, or obligation, or any other legal theory, action or cause of action, which are based upon or could be based upon or arise from the facts alleged in the lawsuit." (Settlement Agreement ¶ 42; see also id. at ¶¶ 43–44.)  Those who suffered damages but were omitted from the Damages Class Member List will not be bound by the Settlement Agreement as to claims for damages, and will be permitted to bring such claims against Defendants.  (Id. at ¶ 10 n.1.)  Finally, Damages Class members may opt out or object if they are not satisfied with the settlement amount or other aspects of the Settlement Agreement.  (Id. at ¶¶ 66–70.)

### III.  ANALYSIS

#### 1. Fairness of the Proposed Class Settlement

Rule 23(e) requires a district court to determine whether a proposed class action settlement is "fundamentally fair, adequate, and reasonable."  Staton v. Boeing Co., 327 F.3d 938, 959 (9th Cir. 2003).  To make this determination, a court must consider a number of factors, including: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.  See id.  Also, the settlement agreement may not be the product of collusion among the negotiating parties.  In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 458 (9th Cir. 2000).

At the preliminary approval stage, some of these factors cannot be fully assessed.  Accordingly, a full fairness analysis is unnecessary.  See Alberto v. GMRI, Inc., 252 F.R.D. 652, 665 (E.D. Cal. 2008); Reade-Alvarez v. Eltman, Eltman & Cooper, P.C., 237 F.R.D. 26, 34 (E.D.N.Y. May 18, 2006).  Rather, a court need only review the parties' proposed settlement to determine whether it is within the permissible "range of possible judicial approval" and, thus, whether notice to the class and the scheduling of the formal fairness hearing is appropriate.  Wright v. Linkus Enters., 259 F.R.D. 468, 472 (E.D. Cal. July 29, 2009).  The Ninth Circuit has declared that a strong judicial policy favors settlement of class actions.  Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992).

      a.    The strength of Plaintiffs' case and the risk, expense, complexity, and likely duration of further litigation

"When evaluating the strength of a case, the Court should evaluate objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these agreements."  De Santos v. Jaco Oil Co., No. 1:14-cv-0738-JLT, 2015 WL 4418188, at *7 (E.D. Cal. July 17, 2015).  Here, the parties settled following extensive litigation.  The Ninth Circuit has

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-0380 PA (FFMx) | Date | July 29, 2017 |
|---|---|---|---|
| Title | Michael Nozzi, et al. v. Housing Authority for the City of Los Angeles, et al. | | |

reversed two district court rulings in this case. While the Ninth Circuit had determined the issue of liability, the Court had yet to rule on cross-motions for summary judgment as to remedy when the Stipulation for Settlement was filed. The parties were "cognizant of the risk to whichever party lost their summary judgment motion." (Mot. 7.) Even if Plaintiffs had prevailed at the summary judgment stage, they faced a likelihood that Defendants would appeal, which would further delay an award to the class members and risk them receiving no compensation. These factors weigh in favor of granting preliminary approval.

   b. <u>The amount offered in the Settlement Agreement</u>

  The Residual Fund is enough to cover more than 50% of the damages suffered by the Damages Class. (Mot. 10.) In addition, the Settlement Agreement provides for three years of injunctive relief, requiring HACLA to submit any notices informing tenants of a reduction in VPS to Class Counsel and to ensure the clarity of all notices. (Settlement Agreement ¶ 71.) Importantly, Damages Class members may opt out or object if they are not satisfied with the settlement amount or other aspects of the Settlement Agreement. (<u>Id.</u> at ¶¶ 66–70.) The total settlement amount and injunction provisions appear to be reasonable. Therefore, this factor favors preliminary approval of the Settlement Agreement.

   c. <u>The extent of discovery completed and the stage of the proceedings</u>

  This factor is concerned with whether "the parties have sufficient information to make an informed decision about settlement." <u>See</u> <u>Linner v. Cellular Alaska P'ship</u>, 151 F.3d 1234, 1239 (9th Cir. 1998). This action's extensive history causes this factor to weigh in favor of granting preliminary approval.

   d. <u>The experience and views of counsel</u>

  The Court finds that Plaintiff's counsel has sufficient experience with class action litigation to appropriately assess the legal and factual issues in this matter and determine whether the proposed Settlement Agreement serves the interests of the class members. Plaintiffs' counsel believes "the settlement represents a fair compromise." (Mot. 11.) This weighs in favor of granting preliminary approval.

   e. <u>The reaction of class members</u>

  The class members have not yet been informed of the Settlement Agreement, so assessment of this factor would be premature. However, the Class Representative has approved its terms.

   f. <u>Collusion between the parties</u>

  To determine whether there has been any collusion between the parties, courts must evaluate whether "fees and relief provisions clearly suggest the possibility that class interests gave way to self

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-0380 PA (FFMx) | Date | July 29, 2017 |
|---|---|---|---|
| Title | Michael Nozzi, et al. v. Housing Authority for the City of Los Angeles, et al. | | |

interests," thereby raising the possibility that the settlement agreement is the result of overt misconduct by the negotiators or improper incentives for certain class members at the expense of others. Staton, 327 F.3d at 961; In re Bluetooth Headset Prod. Liab. Litig., 654 F.3d 935, 947 (9th Cir. 2011)

According to the Settlement Agreement, Class Counsel's fees, which are not to exceed 30% of the total Class Fund, will be awarded from the Class Fund. (Settlement Agreement ¶ 4.) The Ninth Circuit has observed that 20–30% of an settlement award is the "usual range" for attorneys' fees. See Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047 (9th Cir. 2002).

In addition, the parties have agreed upon an incentive award of $5,000 for Pelaez as class representative, and $1,000 for Nozzi, who was named as a plaintiff but is not a class representative. (Settlement Agreement ¶ 49.) Incentive awards for representative plaintiffs may be proper after considering such factors as "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, the amount of time and effort the plaintiff expended in pursuing the litigation, and reasonable fears of workplace retaliation." Staton v. Boeing Co., 327 F.3d 938, 977 (9th Cir. 2003).

Nozzi's requested award would be in lieu of his receipt of damages he is due as a Damages Class member, and is intended to compensate him for his individualized damages. (See Settlement Agreement ¶ 49.) Courts have been in conflict in deciding whether to grant awards to named, but not representative, plaintiffs. See, e.g., Mancini v. Ticketmaster, CV 07-01459, 2013 WL 3995269, at *2 (C.D. Cal. Aug. 2, 2013); In re TFT-LCD, No. M07-1827 SI, 2013 WL 1365900, at *17 (N.D. Cal. Apr. 3, 2013). At this time, it is unclear how Nozzi has benefitted Damages Class members, such that he may receive an incentive award from the Class Fund.

Final approval of the requested attorneys fees', litigation costs, and incentive awards would require a more significant showing. However, at this preliminary stage, they do not render the Settlement Agreement outside of the possible range of approval.

While Residual Class Funds in excess of $2 million will revert to HACLA's insurers, this does not create the kind of concern of collusion that arises where all unclaimed moneys in a class fund revert. See Machesney v. Lar-Bev of Howell, Inc., No. 10-10085, 2017 U.S. Dist. LEXIS 86393, at *27 (E.D. Mich. June 6, 2017). This case has been contentious, and the Settlement Agreement seems to be the product of "arms-length" negotiations between the parties, including two lengthy mediation sessions. Thus, the Settlement Agreement does not appear to be the product of collusion.

Based on the above factors, the Court finds that the Settlement Agreement is within the "range of possible judicial approval," and thus, notice to the class and scheduling of a final fairness hearing is appropriate.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-0380 PA (FFMx) | Date | July 29, 2017 |
|---|---|---|---|
| Title | Michael Nozzi, et al. v. Housing Authority for the City of Los Angeles, et al. | | |

**2.     Notice to the Class**

Under Federal Rule of Civil Procedure 23(e), this Court must "direct notice in a reasonable manner to all class members who would be bound by the proposal." Such notice is satisfactory if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." Rodriguez v. West Publ'g Corp., 563 F.3d 948, 962 (9th Cir. 2009) (internal quotation marks omitted). "In a Rule 23(b)(2) class action, [unlike Rule 23(b)(3) class actions,] there is no requirement for individualized notice beyond that required by due process, and class members are not allowed to opt out." Frank v. United Airlines, Inc., 216 F.3d 845, 851 (9th Cir. 2000); see Lilly v. Jamba Juice Co., Case No. 13-cv-02998-JST2015 U.S. Dist. LEXIS 34498, at *25 (N.D. Cal. Mar. 18, 2015); Liao v. Holder, 691 F. Supp. 2d 344, 354 (E.D.N.Y. 2010).

Plaintiffs propose sending a Class and Settlement Notice (the "Notice") and Claim Form to each Damages Class member's last-known address via regular mail.[3/] (See Settlement Agreement ¶ 55; Proposed Order, Ex. C (Notice); id., Ex. B (Claim Form).) The proposed Notice informs class members of the particulars of the Settlement Agreement, including the details of the proposed attorneys' fees and incentive awards; instructions to opt out, object, and make a claim; and contact information for Class Counsel. (See Settlement Agreement ¶ 56; Notice.) Public notice will also be given. HACLA will post a summary notice of the settlement – which will explain that copies of the Notice and Claim Form are available upon request at any HACLA office – at HACLA offices where Section 8 tenants may visit. (Settlement Agreement ¶ 58.) In addition, the Class Administrator will publish a summary notice for three consecutive weeks in Los Angeles regional newspapers. (Id.) Finally, the Administrator will create a case website and toll free number that will be identified in the Class Notice. (Settlement Agreement ¶ 35(a); Claim Form; Notice 5; JND Proposal 7, 19.)

The parties have agreed that the Notice and Claim Form will be postmarked by August 9, 2017; the summary notice will be posted and Notice and Claim Form will be available at HACLA offices by August 14, 2017; Plaintiffs' Motion for Award of Attorneys' Fees and Costs will be filed by September 18, 2017; Class Members' objections must be filed and opt-outs must be postmarked or received by November 29, 2017; Claims must be postmarked or received by December 6, 2017; and oppositions to objections will be filed and a proposed final approval order will be filed by December 22, 2017. (Proposed Order ¶ 3.) The final fairness hearing is requested to be held on January 29, 2018. (Id.)

The Court finds that these notice methods and dates are reasonably calculated to comport with Due Process and the requirements of Rule 23(e). The parties are ordered to follow the notice plan as set

---

[3/]     Defendants provided Kriegler, on a confidential basis, with a database identifying each class member's name, address, Social Security number, date of birth, driver's license information, and all other identifying information. (Proposed Order ¶ 27.) The parties agree that Kriegler will provide this information to the Class Administrator. (Id.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-0380 PA (FFMx) | Date | July 29, 2017 |
|---|---|---|---|
| Title | Michael Nozzi, et al. v. Housing Authority for the City of Los Angeles, et al. | | |

forth out in the Settlement Agreement and Proposed Order, and to issue the Claim Form and Notice in substantially the same form as Exhibits B and C, respectively, to the Proposed Order.

### 3. Class Administrator

Plaintiffs seek approval of their proposed Class Administrator, JND Legal Administration ("JND"), which estimates administrative costs at between $48,000 and $68,000, depending on how many claims are made. (See Proposed Order ¶ 31; JND Proposal.) Plaintiffs have filed JND's resume as well as estimated invoices that itemizes the fees and costs JND would incur in performing its tasks under the Settlement Agreement. (JND Proposal.) Based on this information, the Court finds these administration costs reasonable, and approves JND as Class Administrator.

### 4. Class Counsel

Pursuant to Rule 23(g)(1), upon class certification, the Court must appoint class counsel. In doing so, the Court must consider (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A); Radcliffe v. Hernandez, 818 F.3d 537, 547 (9th Cir. 2016). "Class counsel must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(4). In ruling on Plaintiff's motion for class certification, the Court found Barrett S. Litt, Anne Richardson, and Stephanie Carroll to be adequate representatives of the class members. (Docket No. 245, 6.) The Court finds that their class action litigation experience and commitment to this case satisfy the requirements of Rule 23(g)(1) and (4), and appoints them Class Counsel.

### Conclusion

Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement is granted. The fairness hearing for final approval of the proposed Settlement Agreement is set for January 29, 2018, at 1:30 p.m. JND is approved as Class Administrator. Barrett S. Litt, Anne Richardson, and Stephanie Carroll are appointed Class Counsel. The Notice and Claim Form are approved. A motion for final approval of the Settlement Agreement shall be filed in accordance with Local Rule 6-1.

IT IS SO ORDERED.