Barrett S. Litt, SBN 45527
blitt@kmbllaw.com
KAYE, McLANE, BEDNARSKI & LITT, LLP
234 East Colorado Boulevard, Suite 230
Pasadena, California 91101
Telephone: (626) 844-7660
Facsimile: (626) 844-7670

Anne Richardson, SBN 151541
arichardson@publiccounsel.org
Stephanie Carroll SBN 263698
scarroll@publiccounsel.org
PUBLIC COUNSEL
610 South Ardmore Avenue
Los Angeles, California 90005
Telephone: (213) 385-2977
Facsimile: (213) 385-9089

Attorneys for Plaintiffs
MICHAEL NOZZI, et al.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| MICHAEL NOZZI, et al., | Case No. 2:07-cv-00380-PA-FFM) |
|---|---|
| Plaintiff, | [Honorable Percy Anderson] |
| v. | **DECLARATION OF CAROL A. SOBEL IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES** |
| HOUSING AUTHORITY OF THE CITY OF LOS ANGELES, et al., | |
| Defendants. | Date:  January 29, 2018<br>Time:  1:30 P.M.<br>Place: Courtroom 9A |

## DECLARATION OF CAROL A. SOBEL

I, CAROL A. SOBEL, declare:

1. I am an attorney admitted to practice before the Supreme Court of the State of California. This declaration is submitted in support of the attorneys fees requested by counsel in this matter. I make this declaration from facts of which I have personal knowledge and, if I were called to testify to those facts, I could and would do so competently.

2. I graduated from law school and was admitted to practice in 1978. Following 20 years with the ACLU Foundation of Southern California, I entered private practice in April of 1997. My practice primarily involves complex civil rights litigation, focusing on the rights of homeless persons, First Amendment rights and police practices. Exhibit "1" is my resumé.

3. I have received many awards for my legal work over the years. In 2008, I was named a California Lawyer of the Year (CLAY) recipient for civil rights by California Lawyer Magazine. That same year, I was also named as one of the Top 75 Women Litigators in California by the Daily Journal Corporation. In 2007, I received an Angel Award from California Lawyer Magazine for pro bono work and was also named by the Daily Journal as one of the Top 100 Most Influential Lawyers in California. In 2013, 2014, and 2017, I was named one of the top 50 women lawyers in Los Angeles. In the past, I have received several awards from the ACLU Foundation of Southern California, including the First Amendment Award. In June 2017, I received a lifetime award from the ACLU Foundation of Southern California. I have been named as a SuperLawyer in the area of First Amendment or civil rights litigation consistently for more than a decade. Additional recognition of my legal work is set forth in my attached resumé.

4. For the six years prior to 1997, I held the position of Senior Staff Counsel in the legal department of the ACLU Foundation of Southern California. During that time period, I was responsible for preparing many of the fee motions in cases where the ACLU represented the prevailing party. Because the ACLU does

not bill clients on an hourly basis for its services, I was required to obtain information to establish reasonable market rates for the ACLU lawyers. It was my practice to obtain current billing rates for lawyers of comparable skill and experience at several firms throughout the City. I did this on an annual basis, contacting partners who were familiar with the ACLU lawyers in question so that they could make an informed judgment about the comparable skill levels of the attorneys at their firms whose rates were used to establish ACLU billing rates. At the time that I consulted these individuals, I was aware that the partners had been personally involved in pro bono litigation with the ACLU and worked directly with the ACLU lawyers for whom I sought to establish market billing rates, so they were able to assess the skill and experience of the ACLU lawyers based on personal knowledge.

6. Since entering private practice, I have continued to survey firms each year to obtain relevant comparisons for billing rates. I generally begin this process the first time in each year I prepare a fee motion, or enter into settlement discussions regarding fees. As part of my survey, I make it a point to obtain information concerning rates for attorneys in both larger law firms engaged in complex litigation, as well as smaller boutique civil rights law firms. Based on the information I obtained regarding rates at each of these firms, I am of the opinion that there is a significant difference between fees sought and awarded to attorneys at smaller civil rights firms and those at larger firms that sometimes do pro bono civil rights work.

7. Based on my review of fee motions, fee awards and other supporting market rate information, I hold the opinion that, in general, the rates sought by civil rights attorneys are at least 10 to 20 percent lower, and in some instances even more so, than the rates of comparable attorneys in commercial firms that do similarly complex litigation. This is so even when the commercial firm serves as co-counsel with public interest lawyers. Based on my experience over 39 years, including working at the ACLU and with the pro bono bar, the skill, experience and reputation

of the lawyers at smaller boutique civil rights law firms is often greater than that of many lawyers in large firms with comparable years of practice, especially for those with 20 years or less experience, because there is a less hierarchal work distribution and the civil rights lawyers handle all aspects of major litigation from the start.

8. To obtain information concerning market rates charged by attorneys in various legal markets in Southern California, I also review attorney fee applications and awards in other cases than my own. Specifically, I regularly review fee applications submitted by, and awards to, private attorneys practicing the range of civil rights law, as well as court awards made to the ACLU, Disability Rights Legal Center ("DRLC"), Disability Rights Advocates, Asian Americans Advancing Justice, the Western Center on Law and Poverty ("WCLP"), MALDEF and other public interest groups in Los Angeles. I also review fee motions filed by private civil rights and public interest firms and attorneys, including Kaye McLane Bednarski & Litt, Sconbrun Seplow Harris & Hoffman, Hadsell Stormer & Renick, Dale Galipo, The Cochran Firm and McNicholas & McNicholas, among other firms. I do this to determine what is being sought and approved as market rates for lawyers from these firms. Because many of the cases brought by public interest groups are co-counseled by attorneys at private commercial firms, I have access to those billing rates as well. In addition to these two methods, when I become aware of a case where statutory fees are sought, I regularly obtain fee applications and any resulting awards from on-line public records for the courts, as well as from legal research databases such as LEXIS and Westlaw. Included in my review of fee applications and awards are those by, and awards to, large firms engaged in complex litigation to assess customary billing rates for these firms. Many of these commercial firms also serve as pro bono counsel. I estimate that I review around 100 or more fee motions, supporting declarations and fee awards annually and have done so for more than 30 years.

9. My declarations in support of fee applications for civil rights and public interest attorneys have been cited repeatedly by courts as evidence of

reasonable market rates in Los Angeles. For example, in *Nadarajah v. Holder,* 569 F.3d 906, 912-914 (9th Cir. 2009), the Ninth Circuit referenced my declaration with approval in support of the application of attorneys from the ACLU for fees under the Equal Access to Justice Act ("EAJA"). In *Torrance Unified School District v. Magee*, 2008 U.S. Dist. LEXIS 95074 (CD CA 2008), granting fees pursuant to the federal IDEA statute, 20 U.S.C. §1415(i)(3)(c), the Court cited to my declaration as persuasive evidence of market rates. In *Atkins v. Miller*, CV 01-01574 DDP (CD CA 2007), this Court awarded fees to a 1975 graduate at $675 an hour, specifically citing to my declaration and that of Barry Litt to support the requested rates. Id. at pp. 8-9 and n.4. Additional cases in which my declarations have been cited favorably include, among others, *Charlebois v. Angels Baseball LP*, SACV 10-0853 DOC (May 30, 2012); *Orantes-Hernandez v. Holder*, 713 F.Supp.2d 29, 963-964(C.D.Cal.2010); *Hiken v. DOD*, 2013 U.S. Dist. LEXIS 118165 (N.D. Cal. Jan. 14, 2013), *Vasquez v. Rackauckas*, 2011 U.S. Dist. LEXIS 83696 (C.D. Cal. 2011); *Rauda v. City of Los Angeles*, 2010 U.S. Dist. LEXIS 138837 (C.D. Cal. 2010); *Jochimsen v. County of Los Angeles, supra*; *Dugan v. County of Los Angeles*, cv-11-08145 CAS (C.D. Cal. March 3, 2014); and *Flores v. City of Westminster*, SA-CV-11-0278 DOC (C.D. Cal. Oct. 23, 2014). In *Jochimsen*, a unanimous court held that I was qualified as an expert on reasonable market rates.

10. In addition, I have litigated statutory fee issues at the appellate level in several of my cases. Most notably, I was lead counsel before the California Supreme Court in *Tipton-Whittingham v. City of Los Angeles*, 34 Cal.4th 604 (2004), the companion case to *Graham v. Daimler-Chrysler*, 34 Cal.4th 533 (2004), establishing the continued vitality of the "catalyst" fee doctrine in California courts. I was also lead counsel in *Jones v. City of Los Angeles*, 555 Fed.Appx. 659 (2014), establishing entitlement to fees as a "prevailing party" based on the Ninth Circuit's necessary approval of a settlement that was conditioned on vacatur of the panel decision.

4

11. My present billing rate is $975 an hour for complex litigation. It is rare for me to use a lower rate based on the type of case. As my resumé indicates, my areas of practice range across homelessness litigation, First Amendment issues, Fourth Amendment claims and other statutory and constitutional matters. I do some individual cases, multiple plaintiff cases and class actions. I also have considerable experience in employment litigation, although I no longer do those types of cases. The Tipton-Whittingham case, identified in paragraph 10, was a class-action employment discrimination case against the Los Angeles Police Department. While some of my cases may be more simple than others, I use the same rate in all cases on the premise that my skill generally allows me to handle a simpler case in fewer hours than it would a less experienced attorney.

12. I have not filed a fee motion at my current rate. Earlier this year, I settled the fees in *Schuler v. County of Orange*, 8:17-cv-00259 DOC KES (C.D. Cal. 2017), applying the rate of $975 an hour to calculate the lodestar. I did not receive a court award of fees in 2016. In 2014 and 2015, several courts approved my rate of $875 an hour I filed for fees. In *Desertrain v. City of Los Angeles*, 754 F.3d 1147 (9th Cir. 2014), the Circuit granted the motion for fees, approved entitlement, and referred the matter to the Appellate Commissioner to determine the final award. The parties then settled the trial court and appellate fees together with only an approximately 5 percent reduction of the appellate lodestar. In a second case in 2015, the Circuit panel approved the full award at $875 an hour. See *CPR for Skid Row v. City of Los Angeles*, 779 F.3d 1098 (9th Cir. 2015).

13. In 2012, I was paid at $795 an hour by an insurance carrier in a non-contingency case before this Court. *Federal Deposit Insurance Company v. Larry B Faigin,* 2:12-cv-03448-DDP-CW (C.D. Cal. 2012). In 2010, I was awarded fees at $725 an hour in *Long Beach Area Peace Network v. City of Long Beach*, 574 F.3d 1011 (9th Cir. 2009), a First Amendment case. In 2009,

5

I was awarded fees by this Court at $710 an hour in *Fitzgerald v. City of Los Angeles*, 2009 U.S. Dist. LEXIS 34803 (CD Cal. 2009), and in *Multi-Immigrant Worker Organizing Network ("MIWON") v. City of Los Angeles*, cv 07-7032 AHM, both police misconduct cases. In 2008, I was awarded fees in the district court at $695 an hour in *Jones v. City of Los Angeles*, cv-03-1142 R. *See* 444 F.3d 1118 (2006), vacated per settlement 505 F.3d 1006 (9th Cir. 2007). The fee award was affirmed on appeal. 2014 U.S. App. LEXIS 1952 (9th Cir. Jan. 31, 2014.

14. My opinion on the reasonableness of the rates sought by Plaintiffs' counsel is based on comparisons to rates approved for attorneys of comparable skill, experience and reputation in the Los Angeles legal market. In all of the fee declarations that I prepare, I apply my understanding of the U.S. Supreme Court decision in *Blum v. Stenson*, 465 U.S. 886 (1984), that "rates charged in private representations may afford relevant comparisons." *Id.* at 895 fn. 11. I understand this to mean that fees for civil rights lawyers should approximate the rates charged by attorneys of comparable skill, experience and reputation in the relevant legal market, who are engaged in similarly complex litigation, regardless of whether the attorneys work for a non-profit, represent individuals on contingency, serve as in-house counsel, or charge a minimal rate for paying clients with the possibility of receiving a market rate award if successful. *See, Nadarajah v Holder,* 569 F3d at 910.

15. I apply several additional principles to establish reasonable market rates. First, when available, I look to rates awarded to the attorney in previous cases because I understand that such awards are strong evidence of reasonable market rates. *See Chaudhry v. City of Los Angeles*, 751 F3d 1096, 1111 (9th Cir. 2014); *U.S. v. $28,000 in U.S. Currency*, 802 F.3d 1100, 1106 (9th Cir. 2015); *Camacho v. Bridgeport Fin., Inc.,* 523 F.3d 973, 976 (9th Cir. 2008). Next, I look to evidence of billing rates by attorneys engaged in similarly complex business litigation as an approved method of establishing reasonable

6

market rates for civil rights attorneys who do not regularly bill clients on an hourly basis. This approach, approved by both the California and federal courts, recognizes that most civil rights attorneys are not paid hourly for their services at market rates. *See e.g.,* Pearl, *California Attorney Fee Awards*, CEB 2012, §9.109 (2012). Third, I apply the rule that the relative "simplicity" or "complexity" of a case is reflected in the efficiency of hours, not the lodestar rate of the attorney. *See Van Skike v Director, Office of Workers' Compensation Programs,* 557 F3d 1041, 1046 (9th Cir. 2009).

16.  As stated in paragraph 8, *supra*, I estimate that I review more than 100 fee motions, fee awards, and supporting declarations in the course of a year. I obtain this information from court orders in the past year awarding statutory fees or awarding fees as a discovery sanction. I subscribe to several websites that report legal news. If I learn of a case where there is likely to have been a fee motion, I review the docket and obtain a copy of any fee motion, supporting declarations and fee award from public sources, including on-line documents for the Los Angeles Superior Court and PACER.

17.  Based on my review of fee motions and awards, I am of the opinion that the billing rates in Southern California have increased annually at more than the cost-of-living rate. For example, in *Charlebois v. Angels Baseball, LP*, 2012 U.S. Dist. LEXIS 91069, cv 10-0853 DOC (C.D. Cal. May 30, 2012), Judge Carter rejected the defense's argument that the rate then sought by Mr. DeSimone should be limited to what he had received in prior years. "[C]ourts routinely recognize that fee rates increase over time based on a variety of factors." 2012 U.S. Dist. LEXIS 91069, *24. In *Parker v. Vulcan Materials Co. Long Term Disability Plan*, No. EDCV 07-1512 ABC (OPx), 2012 WL 843623, *7 (C.D. Cal. Feb. 16, 2012), an increase of approximately 10 percent in one year was approved because "[i]t is common practice for attorneys to periodically increase their rates for various reasons, such as to account for expertise gained over time, or to keep up with the increasing cost of

maintaining a practice." *See also Pickett v. Sheridan Health Care Center*, 664 F.3d 632, 649 (7th Cir. 2011) ("market value increased by more than the amount of inflation as [attorney] acquired additional experience and successful outcomes over the past decade").

18. This same principle was also applied by Judge Wilken in *Armstrong v. Brown*, 94-cv-002307 CW (N.D. Cal. Aug. 8, 2011) Dkt. #1919. Responding to the State's argument that the proposed increases in rates from 2008 to 2010 for plaintiffs' attorneys were too great, the Court noted that the 5 percent increase in rates each year "reflects only the across-the-board rise in firms' overall rates, not the increase in individual attorney's hourly rates for the additional experience accrued over the two-year period." *Id.* at *5. Among the evidence Judge Wilken cited to for this point was the declaration of Bingham McCutcheon attorney Geoffrey Holtz, pro bono counsel in *Armstrong*, and state regulations providing for "merit" increases for judicial employees beyond the annual salary schedule increase. *Id.* The net result in *Armstrong* was an increase of more than one-third for associates in two years.

19. As a further example of courts approving significant annual increases in rates, I have provided a true and correct copy of the order in *Avila v. Los Angeles Police Department*, cv-11-01326 SJO (C.D. Cal. Aug. 2, 2012). A true and correct copy of the Order awarding fees in *Avila* is attached at Exhibit 11. There, Judge Otero concluded that a reasonable 2012 rate for Matthew McNicholas, a 1997 graduate, was $700 an hour. Judge Otero rejected the argument that Mr. McNicholas should only receive $650 an hour, noting that rates rise as attorneys gain skills. *Id.* at pp.3-4.

20. I am familiar with the *Nozzi* case. Over the course of the time that this matter has been litigated, I have had several discussions with Mr. Litt about the case. In addition, I have read all of the appellate decisions in the case, as well as the various briefs.

21. In the table attached at Exhibit A, I list the rate, firm, years of

8

experience for the attorneys and paralegal seeking fees in this motion. I am personally familiar with all but one of the attorneys for whom fees are sought by this motion. I do not know Adelaide Anderson. Other than Ms. Anderson, I know each of the other attorneys for whom fees are sought by this motion and, with a few exceptions, have had the opportunity co-counsel cases with them over the years. In my opinion, each is highly skilled and experienced and enjoys a reputation as such in the civil rights community.

22. While I have not worked directly with Paul Hughes, I do know him personally. We are both involved in the National Police Accountability Project ("NPAP"). Mr. Hughes is a very active participant in the organization, as am I. He is widely recognized as a highly-skilled appellate attorney and work with the Yale Supreme Court Clinic on appellate cases involving civil rights issues. Last month, Mr. Hughes and I were presented at a CLE sponsored by NPAP. I have reviewed his professional biography on the firm's website and read recent articles about his work with the Supreme Court Clinic in the Yale Law School publication. Recently, he served as co-counsel with several of my colleagues in two cases that were the subject of certiorari petitions to the Supreme Court. Based on my discussions with my colleagues, my review of Mr. Hughes' briefs, and the materials I have read about his accomplishments, I am of the opinion that he is an exceptionally skilled and experienced attorney in complex federal litigation.

23. Similarly, while I have not worked directly with Ms. Carroll, I have known her for approximately 10 years and am very familiar with her work. I have consulted with her, as well as with Patrick Dunlevy and Hernan Vera, on various matters over that time.

24. I am most familiar with Barrett S. Litt, Anne Richardson and Lisa Jaskol. I worked on civil rights cases directly with them over the past several decades. I often sought her advice on and review of appellate briefs I was preparing in various cases because of her expertise as an appellate lawyer.

9

25. To support my opinion on the reasonableness of the proposed rates, I attach fee awards and supporting declarations in several recent cases for counsel of comparable skill and experience in the same legal market. Each document is a true and correct copy of the document on the Court's on-line files, bearing the Superior Court's stamp or the federal ECF header. Several are now two or more years old. I use them to illustrate the reasonableness of the rates sought here but do not assert that these are current market rates. In *Hiken v. DOD*, the Ninth Circuit reiterated that "market rates in effect more than two years *before* the work was performed" are not current market rates under the lodestar analysis. 802 F.3d at 1107 (emphasis in original). Some of the comparators I reference in my declaration are as much as five years old. I have used these exhibits because, even though they do not reflect current rates, the courts approved rates close to, or higher than, the rates sought by this motion.

26. For Barrett S. Litt and Paul Hughes, I reviewed fee declarations by, and fee awards to, attorneys at commercial firms who were awarded fees in cases where they were pro bono counsel with a public interest firm. In Mr. Litt's case, there simply are not many attorneys with as many years of experience in a field of complex litigation as Mr. Litt has. In Mr. Hughes case, his customary billing rate at his firm would be the same rate he would apply to a pro bono civil rights case. Using these two comparators, I am of the opinion that Mr. Litt's requested rate is low for an attorney of his exceptional skill, experience and reputation when compared to attorneys at commercial firms with far less experience. In Mr. Hughes' case, his customary billing rate in Washington, D.C. is below comparable rates at large commercial firms engaged in similarly complex federal litigation in the Los Angeles legal market. I discuss each of these opinions in greater detail below.

27. The information from my attached exhibits is summarized in the chart below, with the exhibit number, the name of the attorney, the years

practicing at the time the award was made and the rate.

| Ex. | Attorney | Year | Experience | Rate |
|---|---|---|---|---|
| 2 | Rob Hennig | 2016 | 22 | $790 |
| 3 | Theresa Traber | 2013 | 29 | $795 |
| 3 | Bert Voorhees | 2013 | 26 | $735 |
| 3 | Emily Rich | 2013 | 18 | $695 |
| 3 | Lauren Teukolsky | 2013 | 13 | $600 |
| 3 | Laboni Hoq | 2013 | 12 | $585 |
| 4 | Peter Bibring | 2014 | 12 | $640 |
| 4 | Peter Eliasberg | 2014 | 20 | $730 |
| 5 | Brian Dunn | 2016 | 23 | $750 |
| 5 | John Fattahi | 2016 | 10 | $550 |
| 6 | Talia Inlender | 2017 | 7 | $585 |
| 9 | Michael Steinberg | 2015 | 29 | $1035 |
| 9 | Damion D. Robinson | 2015 | 8 | $865 |
| 9 | Asel Alysiova | 2015 | 7 | $850 |
| 10 | Hannah Cannom | 2014 | 8 | $800 |
| 10 | Daniel Perry | 2014 | 15 | $1135 |
| 10 | Revi-ruth Enriquez | 2014 | 6 | $760 |
| 11 | Matthew McNicholas | 2012 | 15 | $700 |
| 12 | Paul Kiesel | 2015 | 30 | $1100 |

28. Attached at Exhibit 2 is a true and correct copy of a 2016 decision of the Los Angeles Superior Court, awarding attorney fees to Rob Hennig at $790 an hour in an individual employment law case. I have known Mr. Hennig for approximately 25 years, well before he went to law school. He was on the board of the ACLU, where I worked at the time. In the last several years I provided supporting fee declarations for him on several occasions. Based on my personal knowledge, I believe that he is a 1994 law graduate. In 2016, he had 22 years of experience, just one year less than Hernan Vera has now. Mr.

11

Hennig's approved 2016 rate is $40 above the rate requested for Mr. Vera,

29. Attached at Exhibit 3 is a true and correct copy of the decision of the Superior Court in *Hernandez v. Goliath, Inc.*, LASC BC462953, a wage-and-hour class-action case. In approving the settlement, the Court was required to do a lodestar crosscheck on the attorney fees. The request for fees was based on at 2013 rates. The attorneys in the case are from the former law firm of Traber & Voorhees, a well-respected boutique civil rights law firm, and the labor law firm Weinberg, Roger. I am personally familiar with almost all of the attorneys to whom fees were awarded in this case. I have known most of them since they were law students or met them shortly after their graduation. If I did not already know their years of graduation based on personal knowledge, I obtained the information from the State Bar website and by reviewing the firms' websites.

30. Among the attorneys awarded fees in *Hernandez* was Theresa Traber. I have known Ms. Traber personally for approximately 30 years and am aware that she is a 1984 law graduate. The 2013 rate of $795 an hour approved by the Court when she had 29 years of experience is now four years old. Ex. 3, p.5. In the fee motion currently before the Court, Anne Richardson has 28 years of experience and seeks a rate of $850 an hour. With a five-year differential, the difference in Ms. Traber's approve rate and Ms. Richardson's requested rate is only an $11 an hour, which is an exceedingly low increase of approximately 1.5 percent a year.

31. In the same case, the Court also approved the 2013 rate of $735 an hour for Bert Voorhees. *Id.* I know Mr. Voorhees for approximately 25 years and know him to be a 1987 law graduate. In my view, Mr. Voorhees' 2013 rate was low for an attorney of his skill and experience four years ago. Nonetheless, with 26 years experience at the time, Mr. Voorhees' 2013 rate was less than five percent below the rates of $750 an hour requested for Patrick Dunlevy and $765 an hour requested for Paul Estuar. In 2013, Mr. Voorhees

12

had one more year of experience than Mr. Dunlevy has now and two more years than Mr. Estuar has now. As noted above, rates rise annually. Even applying a modest three percent annual increase, and without adjusting the base rate, Mr. Voorhees' current market rate would be at least $830 an hour.

32. In addition to Teresa Traber and Bert Voorhees, the Court approved fees for attorneys Emily Rich, Lauren Teukolsky and Laboni Hoq in 2013 in *Hernandez*. At the time, Ms. Rich had 18 years of experience, five years less than Hernan Vera, and was approved at a rate of $695 an hour. Ex. 3. Mr. Vera's requested rate is approximately 10 percent higher, for an annual increase of only 2 percent. The rate approved for Lauren Teukolsky, who had 13 years of experience in 2013, was $600 an hour, just $40 below the rate now sought for Stephanie Carroll. The rate approved for Laboni Hoq, who had 12 years of experience in 2013, was $585 an hour, just $15 above the hourly rate now sought for Stacey Brown with one year less experience.

33. Attached at Exhibit 4 is a true and correct copy of the order awarding fees to attorneys at the ACLU Foundation of Southern California in *Vasquez v. Rauckaukas*, 09-cv-01090 VBF (C.D. Cal. 2014) for post appeal work. I have included at Exhibit 4 both the Court's Order and the supporting fee declaration of Peter Bibring because the Court's Order approved but does not restate the requested rates. I know Peter Bibring well and have co-counseled cases with him. I have also prepared fee motions in cases where he was also counsel and on that basis I have personal knowledge of his legal experience and skills. I know that he is a 2002 law graduate. Peter Bibring was awarded fees at the 2014 rate of $640 an hour with 12 years of experience. Stacey Brown has one more less of experience than did Peter Bibring in 2014 and, with a total of a four-year experience differential, requests a rate of $600 an hour. In Exhibit 4, the Court also approved the rate of $730 an hour for Peter Eliasberg, who I know to be a 1994 law graduate based on my personal experience with him. With 20 years of experience at the time, Mr. Eliasberg's

13

rate of $730 an hour was only slightly below the rates of $750 to $765 an hour now sought for the attorneys with 24 to 25 years of experience in this action.

34. Attached at Exhibit 5 is a 2016 decision by Judge Phillips, awarding fees to attorneys Brian Dunn and John Fattahi in a police misconduct case. I know both attorneys personally and provided a supporting fee declaration in the case. Based on my personal knowledge, I believe that Mr. Dunn is a 1993 law graduate and Mr. Fattahi is a 2006 law graduate. With 22 and 10 years of experience, respectively, in 2016 Mr. Dunn was awarded a rate of $750 an hour and Mr. Fattahi was awarded $550 an hour. Mr. Dunn's 2016 rate is higher than the rates now sought by Mssrs. Vera and Dunlevy and only $15 below the rate sought by Mr. Estaur, each of whom has more experience than Mr. Dunn had in 2016.

35. Attached at Exhibit 6 is a recent order by Judge Staton approving a fee award to Talia Inlender at Public Counsel at $585 an hour. I provided a supporting fee declaration in the case and am aware that Ms. Inlender is a 2007 law graduate. With 10 years of experience, Ms. Inlender's rate is 2.5 percent below the rate requested for Ms. Brown, who has one year of additional experience, and approximately eight percent below the rate sought for Ms. Carroll, who has 13 years of experience. In my declaration in support of Ms. Inlender's fee motion, I expressed the view that her rate was somewhat low for comparably skilled civil rights lawyers. For example, in the *Schuler* case, Catherine Sweetser is one of the counsel. I have worked with Ms. Sweetser for several years and am very familiar with her experience. I know that she is a 2008 law graduate. The 2017 rate used to calculate her lodestar was $600 an hour, the same rate Stacey Brown, a 2006 graduate seeks by this motion.

36. Attached at Exhibit 7 is a true and correct copy of the Order approving fees in for the ACLU of Southern California and other attorneys in *Franco-Gonzalez v. Holder*, 10-cv-02211 DMG (C.D. Cal. 2015). I provided a declaration in support of the ACLU's fee motion in the case. The rates for

14

each attorney are set out in my declaration, a true and correct copy of which is attached at Exhibit 8. As set forth in the Court's Order, the fees were settled with a discount of slightly more than 10 percent of the hours on a total demand of approximately $11 million.

37. Among the attorneys whose fees were approved in *Franco-Gonzalez* were pro-bono counsel at the firm of Sullivan & Cromwell. Michael Steinberg, the partner at the firm, submitted a separate declaration detailing the qualifications and rates for the attorneys at the firm who worked on the case. Mr. Steinberg attested that he is a 1986 law graduate and, in 2015, had a customary billing rate of $1035 an hour. A copy of Mr. Steinberg's declaration is attached at Exhibit 9. Mr. Steinberg has well more than a decade less experience in complex litigation than does Mr. Litt.

38. Mr. Steinberg also attested to the rates for several of the associates at Sullivan, including Damion D. D. Robinson, identified by Mr. Steinberg as a 2007 law graduate, whose 2015 rate was $865 an hour. Ex. 9, ¶ 15. Mr. Steinberg also attested that Asel Alysiova was a 2008 law graduate with a 2015 rate of $850 an hour. *Id.* at ¶ 17. Both are considerably higher than the 2017 rate now sought for Mr. Hughes, who hase more experience than either Sullivan associate had at the time of the *Franco-Gonzalez* fee motion.

39. Attached at Exhibit 10 is the 2014 Declaration of Hannah Cannom in support of a fee application to the Ninth Circuit by Milbank Tweed as pro bono counsel with the Disability Rights Legal Center in *LAUSD v. Garcia*, Case No. 10-55879 (9th Cir. 2014) [Doc. 78-3]. Ms. Cannom attested that she is a 2006 law graduate and that her 2014 billing rate was $800 an hour. Ex. 10, ¶¶ 2, 6. Ms. Cannom also attested that the 2014 rate for Milbank partner Daniel Perry, a 1999 law graduate, was $1,135 an hour. *Id.* ¶ 7. The firm also requested fees for several associates with less experience than Mr. Hughes, but whose rates were considerably higher. For example, Revi-ruth Enriquez was identified as a 2008 law graduate, whose 2014 rate was $760 an hour. *Id.* ¶ 10.

15

40. Attached at Exhibit 12 is a declaration filed in support of a fee application for attorneys at Paul Kiesel's firm. I am very familiar with Mr. Kiesel. In the early 1990s, we co-counseled a sexual discrimination lawsuit against the Los Angeles Police Department. I am aware that Mr. Kiesel is a 1985 law graduate. In Exhibit 12, with 30 years of experience he sought and was approved for a rate of $1100 an hour. That case, as *Nozzi*, involved a class action. Mr. Litt's requested rate is only $50 above the rate for Mr. Kiesel in 2015, with approximately 17 years less experience.

41. I am informed that compensation is also being sought for paralegals and law clerks at rates ranging from $200 an hour for law clerks and $150 to $335 for paralegals, depending upon experince . Based on my own practice and the hundred or so fee awards and fee motions I review each year, I am of the opinion that it is the practice in the Central District to bill for law clerks and paralegals. The rate of $150 an hour is at the very low end of market rates for paralegals with limited experience. The rate of $335 an hour for a senior paralegal with Ms. White's experience is well within the range of reasonable paralegal rates sought and approved in the Central District. For example, in *Hernandez*, the Court approved paralegal compensation at rates of $ Milbank Tweed's rate for a paralegal with eight years of experience was $230 an hour in 2014. Ex. 10, ¶ 12. In *Franco,* Sullivan & Cromwell was awarded fees for litigation support staff at rates ranging from $255 to $290 an hour. Ex. 9, ¶ 28. *See also* Sobel Decl., Ex. 8, ¶¶ 46-47.

42. Based on the foregoing, I am of the opinion that the rates sought by this motion are reasonable rates in the Southern California legal market for attorneys of comparable skill, experience and reputation.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 24th day of April, 2017 at Santa Monica, California.

      /s/ Carol Sobel
      CAROL A. SOBEL

16