UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-380 PA (FFMx) | Date | February 15, 2018 |
|---|---|---|---|
| Title | Michael Nozzi, et al. v. Housing Authority for the City of Los Angeles, et al. | | |

Present: The Honorable  PERCY ANDERSON, UNITED STATES DISTRICT JUDGE

| Kamilla Sali-Suleyman | Not Reported | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

Attorneys Present for Plaintiffs:            Attorneys Present for Defendants:

None                                                                  None

**Proceedings:**    MOTIONS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND ATTORNEYS' FEES

Before the Court are a Motion for Final Approval of Class Action Settlement (Docket No. 322) and a Motion for Attorneys' Fees and Costs (Docket No. 307) filed by plaintiffs Michael Nozzi ("Nozzi") and Nidia Pelaez ("Pelaez") (collectively "Plaintiffs" or "Named Plaintiffs"). Defendants Housing Authority of the City of Los Angeles ("HACLA") and Rudolph Montiel in his official capacity[1/] (collectively "Defendants") do not oppose either motion. A Fairness Hearing was held on January 29, 2018.

**I.    FACTUAL & PROCEDURAL BACKGROUND**

The Section 8 housing program provides rental assistance to low-income, elderly, and disabled families. See Nozzi v. HACLA, 806 F.3d 1178, 1184 (9th Cir. 2015) ("Nozzi II"). The majority of this assistance is provided through the Housing Choice Voucher Program, which is funded and regulated by the Department of Housing and Urban Development ("HUD") and administered locally by public housing agencies such as HACLA. Id. Under this program, the renter identifies qualifying housing, the public housing agency negotiates the rent with the landlord, the public housing agency pays a rent subsidy to the landlord on behalf of the tenant, and the renter pays the balance of the rent. Id. Within parameters established by HUD, the public housing agency sets a voucher payment standard (VPS) representing the maximum subsidy that it will pay for each type of housing in a particular area. Id. at 1185. Raising the VPS will generally yield larger subsidies, while lowering the VPS will generally yield smaller subsidies. Id. Each renter's eligibility for Section 8 benefits is examined on a yearly basis. Id. "If the public housing agency decides to lower the [VPS], it must provide information about the change to all beneficiaries at their annual reexaminations following the decision, and must further advise these beneficiaries that the change will not go into effect until their following reexamination one year later." Id.

---

[1/]    The City of Los Angeles was originally named as a defendant, but was dismissed on May 23, 2007. (Docket No. 48.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-380 PA (FFMx) | Date | February 15, 2018 |
|---|---|---|---|
| Title | Michael Nozzi, et al. v. Housing Authority for the City of Los Angeles, et al. | | |

HACLA reduced its VPS in 2004. Under the new standard, an estimated 45% of tenants were required to pay an average of $104 more in rent each month. Id. at 1186. HACLA notified renters of this change in a flyer sent with annual reexamination documents. Id. The flyer provided general information about the new VPS, but did not specify how the changes would affect each renter. Id. An individualized notice was not provided until a second notice sent approximately four weeks before the new subsidy would take effect for each renter. Id.

Plaintiffs, along with the now-defunct Los Angeles Coalition to End Hunger & Homelessness, initiated this action in January 2007. Id. In April 2007, the district court granted in part and denied in part a motion to dismiss. (Docket No. 42.) Plaintiffs filed a First Amended Complaint alleging violations of (1) due process of law under 42 U.S.C. § 1983, (2) rights created by 42 U.S.C. § 1437f, (3) Cal. Gov. Code § 815.6, (4) Art. I, § 7 of the California Constitution, and (5) negligence. (Docket No. 49.) The Court dismissed the second and fifth claims (Docket No. 63) and later granted Defendants' motion for summary judgment on the remaining claims (Docket No. 90). The Ninth Circuit reversed the dismissal of the fifth claim and the grant of summary judgment on the first, third, and fourth claims. Nozzi v. HACLA, No. 09–55588, 2011 WL 1167188 (9th Cir. 2011) ("Nozzi I"). On remand, the district court granted HACLA's renewed motion for summary judgment. (Docket Nos. 190, 192.) The Ninth Circuit again reversed, holding that the flyer sent by HACLA did not provide sufficient notice of the VPS change. The court found that this "failure violated both the requirements of the Voucher Program regulations and the requirements of procedural due process," as well as state law. Nozzi II, 806 F.3d at 1204. The matter was remanded "with instructions for the district court to enter summary judgment in favor of the plaintiffs on the merits of the federal and state law claims at issue on this appeal." Id.

Following remand, this Court certified two classes: (1) the Rule 23(b)(2) "Injunctive Relief Class" and (2) the Rule 23(b)(3) "Damages Class." (Docket No. 245.) The Injunctive Relief Class consists of all Section 8 beneficiaries whose benefits are administered by HACLA and who in the past received, or in the future may receive, notices of a VPS decrease. (Id.) The Damages Class consists of all HACLA Section 8 tenants, between June 1, 2005, and September 30, 2006, whose rental contribution for a period not to exceed eleven months was greater than it would have been but for HACLA's 2004 decrease in the VPS. (Id.) All Damages Class Members are also members of the Injunctive Relief Class. (Docket No. 297, Ex. A ("Settlement Agreement") ¶ 7.) The Damages Class consists of 11,870 tenants on the Damages Class Member List, and their principal damages amount to $10,308,774. (See id. ¶¶ 9, 10; Docket No. 297, Ex. D ¶ 3.)

In February 2017, the parties filed cross-motions for partial summary judgment as to remedies. (Docket Nos. 250, 256.) Before the Court ruled on those motions, the parties filed a Stipulation for Settlement. (Docket No. 286.) On June 19, 2017, Plaintiffs filed an unopposed Motion for Preliminary Approval of Class Action Settlement. (Docket No. 296.) On July 29, 2017, the Court preliminarily approved the Settlement Agreement, as well as the appointment of JND Legal Administration ("JND") as Class Administrator, and Barrett S. Litt, Anne Richardson, and Stephanie Carroll as Class Counsel. (Docket No. 305 ("Prelim. Approval Order").)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-380 PA (FFMx) | Date | February 15, 2018 |
|---|---|---|---|
| Title | Michael Nozzi, et al. v. Housing Authority for the City of Los Angeles, et al. | | |

Plaintiffs now move for final approval of the Settlement Agreement. In addition, Plaintiffs seek approval of attorneys' fees, litigation costs, settlement administration costs, and incentive awards.

**II.    THE SETTLEMENT AGREEMENT**

The Settlement Agreement was reached after ten years of litigation, two appeals, and two days of mediation before a retired federal judge. (See Settlement Agreement pp. 2–3.) The parties ultimately agreed that HACLA's insurers would pay a total of between $9 million and $9.4 million toward the "Class Fund" to settle all monetary claims of the Damages Class Members. (Id. at ¶ 6.) Under the Settlement Agreement, and as further explained in the motion for preliminary approval, the following expenses would be deducted from the Class Fund: attorneys' fees of less than 30% of the Class Fund; litigation costs of approximately $220,000; expenses of approximately between $48,000 and $68,000 incurred by the Class Administrator, and publication expenses of approximately $10,000 to $12,000; Pelaez's incentive award of $5,000; and Nozzi's incentive award of $1,000. (Id. at ¶¶ 4, 22, 49, 52; Mot. for Prelim. Approval at 9; Docket No. 297, Ex. E ("JND Proposal").) The residual amount of approximately $6 million (the "Residual Class Fund") would be available for Damages Class Member claims. (See Settlement Agreement ¶ 35.) The final Damages Class Member List was to be prepared by Plaintiffs' expert Kriegler based on information supplied by HACLA and HUD. (Id. at ¶¶ 9, 12.)

The Settlement Agreement required the Damages Class Members to file claims to qualify for and receive damages. (Id. at ¶ 35.) Pursuant to the Settlement Agreement, a Damages Class Member would be compensated up to the amount of additional rent that he or she paid as a result of the reduced HACLA subsidy, depending on the number of claimants. (Id. at ¶ 19.) If more claims were made than could be fully compensated by the Residual Class Fund, claimants would receive proportional reductions in their reimbursements. (Id. at ¶ 32.) If more than $2 million, but less than the Residual Class Fund, was claimed, the remainder would revert to Defendants' insurers. (Id. at ¶ 33.) If less than $2 million in claims were made, the difference between $2 million and the claims made would be donated to a cy pres organization. (Id.) In addition, if Damages Class Members made claims, but do not cash their checks, the parties agreed that the Class Administrator would make efforts to reach them and assist them to do so; the funds from checks not cashed within one year of issuance would go to agreed upon cy pres organizations. (Id.)

The Settlement Agreement further provided that HACLA would treat any payment to Damages Class Members who are current recipients of Section 8 in accordance with HUD regulation 24 C.F.R. § 5.609(c)(3), i.e., as a settlement for personal injury. (Id. at ¶ 34.) Furthermore, HACLA would designate a person whom Damages Class Members could contact with questions about the impact of receipt of settlement funds on their Section 8 benefits. (Id.)

The parties also agreed upon a three-year injunction. Pursuant to the injunction provisions, HACLA, when issuing notices related to reduction of the VPS, must "simply and plainly communicate the information provided in non-technical, [sic] language that would be reasonably understandable to Section 8 tenants, at a language level commensurate with the average educational level of Section 8

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-380 PA (FFMx) | Date | February 15, 2018 |
|---|---|---|---|
| Title | Michael Nozzi, et al. v. Housing Authority for the City of Los Angeles, et al. | | |

tenants. The notice shall reasonably explain the known, likely or potential impact on the tenant of the action that is the subject of the notice." (Id. at ¶ 71(a).) Furthermore, any such notice involving reduction of the VPS "shall be provided to Class [C]ounsel before it is sent [to Section 8 tenants], and shall be subject to approval of Class Counsel before it is communicated to Section 8 tenants, which approval shall not be unreasonably withheld." (Id. at ¶ 71(b).) Finally, HACLA is required to "use language reasonably understandable to Section 8 tenants" when communicating any new notices to tenants, other than a notice of reduction of the VPS, which are addressed by ¶ 71(a) of the Settlement Agreement. (Id. at ¶ 71(c).)

In return for the injunction and damages, Class Members agree to release Defendants from "all claims . . . involving violations of law or constitutional rights, including, without limitation, their due process rights under federal and California Constitutions and law, their rights under California Civil Code § 815.6 and for negligence, any other rights under any other federal, state or local law, regulation, duty, or obligation, or any other legal theory, action or cause of action, which are based upon or could be based upon or arise from the facts alleged in the lawsuit (hereafter 'Covered Claims')." (Id. at ¶ 42.) Class Members, including the Named Plaintiffs, "waive all rights to any and all claims relating to damages or reimbursement of any kind for the Covered Claims." (Id. at ¶ 43.) They further "waive any and all rights to pursue, initiate, prosecute, or commence any action or proceeding before any court, administrative agency or other tribunal, or to file any complaint regarding acts or omissions by the Released Persons with respect to the Covered Claims during the Class Period that fit within the definition of the Damages Class; and further, as it relates to this waiver or Release, expressly waive the provisions of California Civil Code § 1542." (Id. at ¶ 44). Those who suffered damages but were omitted from the Damages Class Member List would not be bound by the Settlement Agreement as to claims for damages, and would be permitted to bring such claims against Defendants. (Id. at ¶ 10 n.1.) Finally, Damages Class Members could opt out or object if they were not satisfied with the settlement amount or other aspects of the Settlement Agreement. (Id. at ¶¶ 66–70.)

### III.     FINAL APPROVAL OF CLASS ACTION SETTLEMENT

####        A.     Fairness of the Class Settlement

Rule 23(e) requires a district court to determine whether a proposed class action settlement is "fundamentally fair, adequate, and reasonable." Staton v. Boeing Co., 327 F.3d 938, 959 (9th Cir. 2003). To make this determination, courts consider a number of factors, including: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. See id. Also, the settlement may not be the product of collusion among the negotiating parties. In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 458 (9th Cir. 2000). The Ninth Circuit has declared that a strong judicial policy favors settlement of class actions. Class Plaintiffs v.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-380 PA (FFMx) | Date | February 15, 2018 |
|---|---|---|---|
| Title | Michael Nozzi, et al. v. Housing Authority for the City of Los Angeles, et al. | | |

City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992). For the following reasons, the Court finds that the Settlement Agreement is fundamentally fair, adequate, and reasonable.

        1.        <u>The Strength of Plaintiffs' Case and the Risk, Expense, Complexity, and Likely Duration of Further Litigation</u>

"When evaluating the strength of a case, the Court should evaluate objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these agreements." De Santos v. Jaco Oil Co., No. 1:14-cv-0738-JLT, 2015 U.S. Dist. LEXIS 93410, at *16 (E.D. Cal. July 17, 2015). Here, prior to settlement, the parties had already litigated for more than 10 years, and endured two appeals, which ultimately resolved the issue of liability. However, whether, and to what extent, damages were available remained unresolved and cross-motions for summary judgment on that issue remained pending at the time of settlement. There remained a likelihood that the Court's ruling on those motions would have been appealed. (See Final Approval Mot. 7, 9.) In addition, failure to settle at this point would have further delayed relief for Class Members who, by definition, are (or at least were during the class period) low-income. These factors favor granting final approval of the Settlement Agreement.

        2.        <u>The Amount Offered in the Settlement Agreement</u>

The Class Fund amount is $9,339,256.47.[2/] The Motions for Final Approval and Attorneys' Fees seek (1) an attorneys' fee award of $2,801,776.94; (2) reimbursement of litigation expenses of $169,699.88; (3) incentive payments to Pelaez and Nozzi of $5,000 and $1,000, respectively; and (4) costs for settlement administration, totaling $60,000. Thus, the Residual Class Fund of approximately $6.3 million was available for claims by Damages Class Members. The Residual Class Fund was sufficient for up to approximately 58% of claims of Damages Class Members to be compensated in full. In fact, approximately 19.38% of Damages Class Members filed claims that have been approved, and thus each of those claimants will be paid in full for the decrease in rent subsidy, without interest. Claimed damages total approximately $2,160,078.45.[3/] (Keough Decl. ¶ 22.)

---

[2/]    The Settlement Agreement provided for a Class Fund that was between $9 million and $9.4 million, dependent upon defense fees. (Settlement Agreement ¶ 6.) The parties have concluded, after subtracting total defense fees, that $9,339,256.47 is the total available Class Fund. (Final Approval Mot. 2; Litt Decl. ISO Final Approval Mot. ¶ 5.)

[3/]    While the Motion for Final Approval states that the value of all valid claims was $2,218,075.26 as of December 6, 2017, the initial declaration of the Class Administrator attests that the damages for all valid claims amounted to $2,160,078.45 as of December 20, 2017. (<u>Compare</u> Final Approval Mot. 3, <u>with</u> Litt Decl. ISO Final Approval Mot., Ex. 7 ("Keough Decl.") ¶ 22.) However, the Class Administrator has updated the number of valid claims from 2,269 in her initial declaration to 2,300 in a

(continued...)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-380 PA (FFMx) | Date | February 15, 2018 |
|---|---|---|---|
| Title | Michael Nozzi, et al. v. Housing Authority for the City of Los Angeles, et al. | | |

Given the increased expense and risk that would accompany continued litigation and the presence of the opt-out provision, the Court finds that the total settlement amount is reasonable and favors approval of the Settlement Agreement.

        3.        <u>The Extent of Discovery Completed and the Stage of the Proceedings</u>

Litigation in this action has been extensive and discovery was complete at the time of settlement. Furthermore, Plaintiffs hired an expert who performed extensive analysis of records held by HACLA and HUD to determine damages. The parties also engaged in two days of formal mediation before a third-party neutral. This extensive case history weighs in favor of approval of the Settlement Agreement.

        4.        <u>The Experience and Views of Counsel</u>

The Court finds that Class Counsel has sufficient experience with class action litigation to appropriately assess the legal and factual issues in this matter and determine whether the Settlement Agreement serves the interests of the Class Members. Thus, Class Counsel's belief that the Settlement Agreement is both fair and adequate weighs in favor of approval.

        5.        <u>Collusion Between the Parties</u>

To determine whether there has been any collusion between the parties, a court must evaluate whether "fees and relief provisions clearly suggest the possibility that class interests gave way to self interests," thereby raising the possibility that the settlement is the result of misconduct by the negotiators or improper incentives for certain class members. <u>Staton</u>, 327 F.3d at 961. Here, it appears that the Settlement Agreement was the product of informed, arm's-length negotiations between the parties. The reasonableness of the amount offered in settlement, the extensive litigation history, and the involvement of a third-party neutral further suggest an absence of collusion. Furthermore, the fees and incentive awards sought do not suggest collusion, particularly as any such award was conditioned upon approval of the Court. (<u>See</u> Settlement Agreement ¶¶ 49, 52); <u>see also</u> <u>Rodriguez v. W. Publ'g Corp.</u>, 563 F.3d 948, 968 (9th Cir. 2009) (finding conflicts of interest where incentive agreements existed between named plaintiffs and counsel). The Court finds that the Settlement Agreement is the product of non-collusive negotiations.

---

[3]/(...continued)
supplemental declaration, but has not updated the dollar value of approved claims. (<u>Compare</u> Keough Decl. ¶ 22, <u>with</u> Docket No. 330-1 ("Keough Suppl. Decl.") ¶ 12.a.) While this change in number of valid claims renders it likely that the $2,160,078.45 figure is low, for purposes of this Order, the Court assumes it is a reasonable approximation of the value of the valid and approved claims.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-380 PA (FFMx) | Date | February 15, 2018 |
|---|---|---|---|
| Title | Michael Nozzi, et al. v. Housing Authority for the City of Los Angeles, et al. | | |

      6.      Presence of Governmental Participant

      Pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715, Defendants notified the Attorney General of the United States and the CAFA Coordinators of the California Office of the Attorney General of the Settlement Agreement. (See Docket No. 303.) "Although CAFA does not create an affirmative duty for either state or federal officials to take any action in response to a class action settlement, CAFA presumes that, once put on notice, state or federal officials will raise any concerns that they may have during the normal course of the class action settlement procedures." Garner v. State Farm Mut. Auto. Ins. Co., Case No. CV 08-1365 CW (EMC), 2010 U.S. Dist. LEXIS 49477, at *14 (N.D. Cal. Apr. 22, 2010). No government official has objected to the terms of the Settlement Agreement. Accordingly, this factor weighs in favor of final approval. See Noll v. eBay, Inc., 309 F.R.D. 593, 608 (N.D. Cal. 2015); Holman v. Experian Info. Sols., Inc., Case No. 11-cv-0180 CW (DMR), 2014 U.S. Dist. LEXIS 173698, at *8 (N.D. Cal. Dec. 12, 2014).

      7.      Reaction of Class Members to Settlement

      Where a settlement agreement enjoys overwhelming support from the class, this lends weight to a finding that the settlement agreement is fair, adequate, and reasonable. Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."); see also Boyd v. Bechtel Corp., 485 F. Supp. 610, 624 (N.D. Cal. 1979) (finding that objections from only 16 percent of the class was persuasive that the settlement was adequate). Class Members were provided notice of the Settlement Agreement pursuant to this Court's order granting the motion for preliminary approval. (See infra Part III.B.)

      According to the Class Administrator, there were 2,300 valid and approved claims out of 11,870 Damages Class Members, amounting to 19.38% participation of the Damages Class. (See Keough Suppl. Decl. ¶ 12.a.) Thirty-one additional Class Members filed claims that lacked signatures or were otherwise deficient, and were not timely cured.[4/] (Id. at ¶ 12.c.) Twenty-seven claim forms were submitted by eligible Class Members but postmarked after the filing deadline of December 6, 2017.[5/]

---

[4/]    Additionally, 556 claim forms were submitted by individuals who did not appear on the Damages Class List and 65 claim forms were duplicates of earlier-submitted claims forms. (Id. at ¶¶ 12.d, 12.e.) These claims were denied. (Id. at ¶¶ 12.d, 12.e.)

[5/]    At the final fairness hearing, counsel indicated that the parties were still deciding whether to accept these claims despite their untimeliness. Unless otherwise agreed upon by the Parties, claim forms not received or postmarked by December 6, 2017, shall not be paid, although those claimants shall nonetheless be bound by this Order and the Judgment.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-380 PA (FFMx) | Date | February 15, 2018 |
|---|---|---|---|
| Title | Michael Nozzi, et al. v. Housing Authority for the City of Los Angeles, et al. | | |

(Id. at ¶ 12.b.) No Class Member objected to the Settlement Agreement[6/] and 8 Class Members opted out. (Keough Decl. ¶¶ 15, 18.) The Administrator attempted to mail notices to all Class Members, and after skip-tracing, ultimately 11,056 such notices were mailed and not returned as undeliverable. (Id. at ¶ 7.)

The settlement website created by JND tracked 13,285 unique users who registered 24,595 page views and 1,103 case document views. (Id. at ¶ 8.) The toll-free number established by JND received more than 1,775 calls (id. at ¶ 11), and JND associates spoke with 737 such callers (Keough Suppl. Decl. ¶ 8). The overall positive reaction of Class Members and lack of objections is strong evidence that the Settlement Agreement is fundamentally fair and reasonable.

### B. Adequacy of Notice to the Settlement Class

Under Federal Rule of Civil Procedure 23(e), this Court must "direct notice in a reasonable manner to all class members who would be bound by the proposal." Such notice must be "'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" Klee v. Nissan N. Am., Inc., No. CV 12-08238 AWT (PJWx), 2015 WL 4538426, at *5 (C.D. Cal. July 7, 2015). The notice given in this case was reasonably calculated to reach the Damages Class. The notices described the essential terms of the Settlement Agreement, defined the classes, set forth the procedure for Damages Class Members to make claims, opt out, or file objections to the Settlement Agreement, and provided information on the date, time, and location of the Final Fairness Hearing. (Docket No. 297, Ex. C; Keough Decl. ¶ 5.) They further provided a toll-free number for Class Members to call and a website containing essential case documents. (Keough Decl. ¶¶ 8, 10.) In addition, notices were posted at HACLA offices where Section 8 tenants may have occasion to visit. (See Docket No. 325, Mendoza Decl. ¶¶ 2–3.) Finally, a notice was published in the L.A. Times for three consecutive weeks on August 18, 2017, August 25, 2017, and September 1, 2017, and a 30-day internet advertising campaign was launched on Facebook, Instagram, and Twitter to inform Class Members about the settlement. (Keough Decl. ¶ 12.) The Court therefore concludes that the notice procedures satisfied the requirements of Due Process and Federal Rule of Civil Procedure 23(e).

### IV. ATTORNEYS' FEES, LITIGATION EXPENSES, INCENTIVE AWARDS, AND ADMINISTRATION EXPENSES

#### A. Attorneys' Fees

The Court is obligated to conduct a careful review of the reasonableness of requested attorneys' fees and costs. See In re Wash. Pub. Power Supply Sys. Sec. Litig., 19 F.3d 1291, 1302 (9th Cir. 1994)

---

[6/] One objection was received, but that Class Member later withdrew his objection, which involved matters distinct from the instant action or the Settlement Agreement. (See Docket Nos. 318, 319, 320; see also Litt Decl. ISO Final Approval Mot., Ex. 2.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-380 PA (FFMx) | Date | February 15, 2018 |
|---|---|---|---|
| Title | Michael Nozzi, et al. v. Housing Authority for the City of Los Angeles, et al. | | |

("Because in common fund cases the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage, courts have stressed that when awarding attorneys' fees from a common fund, the district court must assume the role of fiduciary for the class plaintiffs."). Plaintiffs seek $2,801,776.94 in attorneys' fees. (Final Approval Mot. 19.) This constitutes 30% of the Class Fund created by the Settlement Agreement. In common fund cases, "where the settlement or award creates a large fund for distribution to the class, the district court has discretion to use either a percentage or lodestar method." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1029 (9th Cir. 1998). "The percentage method means that the court simply awards the attorneys a percentage of the fund sufficient to provide class counsel with a reasonable fee." Id. The Ninth Circuit has established 25% of the common fund "as a benchmark award for attorney fees." Id.

Class Counsel cites numerous cases in district courts and other circuits that have found up to 33% to be a reasonable fee in class action settlement. (See Attorneys' Fees Mot. 13–14 & n.2.) Furthermore, the Ninth Circuit has concluded that "[t]he 25% benchmark rate, although a starting point for analysis, may be inappropriate in some cases. Selection of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case." Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1048 (9th Cir. 2002) (holding that district court did not abuse its discretion in awarding 28% of common fund as attorneys' fees). Class Counsel argues that in light of the risk involved; complexity of issues; Class Counsel's experience, skill, and effort expended; and results obtained, 30% of the Class Fund is a reasonable fee in this case. (Attorneys' Fees Mot. 3–9.)

"The lodestar method can 'confirm that a percentage of recovery amount does not award counsel an exorbitant hourly rate . . . .'" In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 945 (9th Cir. 2011) (quoting In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 820 (3d Cir. 1995)). Here, according to Class Counsel's professed rates and hours worked, the lodestar calculation would be approximately $3.3 million. (See Final Approval Mot. 17.) The Class was represented by two firms: Kaye, McLane, Bednarski, and Litt and Public Counsel. Between the two firms, ten attorneys have spent 3,735.7 hours working on this case since its inception more than a decade ago. (Litt Decl. ISO Final Approval Mot. ¶ 10; Richardson Decl. ISO Final Approval Mot. ¶ 8.)[7/] Each of these attorneys has a rate of between $540 and $1150 per hour. (Litt Decl. ISO Final Approval Mot. ¶ 10; Richardson Decl. ISO Final Approval Mot. ¶ 8.) A litigation coordinator and three paralegals have rates of between $150 and $335 and have committed a total of 685.9 hours to this case, while three law clerks, billing at $200 per hour, spent 96.8 hours on this case. (Litt Decl. ISO Final Approval Mot. ¶ 10; Richardson Decl. ISO Final Approval Mot. ¶ 8.)

---

[7/] The Court notes disparity between the hours and rates for Public Counsel provided by Mr. Litt in his Declaration in support of the Motion for Final Approval, and those provided by Ms. Richardson in her Declaration. (Compare Litt Decl. ISO Final Approval Mot. ¶ 10, with Richardson Decl. ISO Final Approval Mot. ¶ 8.) At the Final Fairness Hearing, Class Counsel acknowledged that Ms. Richardson's Declaration should be relied upon for such hours and rates where contradictions between the declarations exist.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-380 PA (FFMx) | Date | February 15, 2018 |
|---|---|---|---|
| Title | Michael Nozzi, et al. v. Housing Authority for the City of Los Angeles, et al. | | |

Considering the results achieved, the time expended, the risks faced in this litigation, the skill required, the quality of work, the contingent nature of the fee, the financial burden carried by Class Counsel, and awards made in similar cases, as well as the lack of Class Member objection to this fee award, the Court finds that the requested attorneys' fee award is reasonable. The Court therefore grants Plaintiffs' request for $2,801,776.94 in attorneys' fees to be awarded from the Class Fund.

    **B.**    **Litigation Costs**

Plaintiffs request $169,699.88 in litigation costs. "Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit by the settlement." In re Media Vision Tech. Sec. Litig., 913 F. Supp. 1362, 1366 (N.D. Cal. 1996). However, expenses that should be considered part of an attorney's overhead, and therefore included within an award of attorneys' fees, should not be characterized as a litigation expense and recovered as a cost item. Id. ("An award of out-of-pocket expenses should be limited to those expenses customarily billed to a fee-paying client.") These costs are itemized in detail in the supporting declarations. (See Litt Decl. ISO Final Approval Mot. Ex. 6; Litt Decl. ISO Attorneys' Fees Mot., Ex. D.) The most expensive items include expert fees of $118,430.50, mediation costs of $18,000, and online research costs of $17,094.02. The Settlement Agreement further identifies the types of costs for which Defendants agreed to reimburse Class Counsel, and the Preliminary Approval Order noted that litigation costs of up to $220,000 could be awarded. (See Settlement Agreement ¶¶ 5, 52; Prelim. Approval Order at 3.) No Class Member objected. The Court concludes that with the exception of the online research costs of $17,094.02 which the Court determines is part of an attorney's overhead, the requested litigation costs are reasonable. Accordingly, the Court awards $152,605.86 in litigation costs.

    **C.**    **Named Plaintiffs' Incentive Awards**

Plaintiffs also seek incentive awards of $5,000 for Pelaez in addition to her damages award, and of $1,000 for Nozzi inclusive of his damages. (Final Approval Mot. 13.) Courts may consider the following criteria to determine whether to make an incentive award: (1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; and (5) the personal benefit enjoyed by the class representative as a result of the litigation. Van Vraken v. Atl. Richfield Co., 901 F. Supp. 294, 299 (N.D. Cal. 1995); see also Rodriguez, 563 F.3d at 959 (agreeing with district court that incentive award should be tied to work performed, risks undertaken, and time spent on litigation). Courts also consider "the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment." Staton, 327 F.3d at 975; see, e.g., In re Online DVD-Rental Antitrust Litig., 779 F.3d 934, 943 (9th Cir. 2015) (holding that incentive award to class representative was permissible where "[t]he amount sought and awarded was relatively small, well within the usual norms of 'modest compensation' paid to class representatives for services performed in the class action"); Friedman v. Guthy-Renker, LLC, No. 2:14-cv-06009-ODW(AGRx), 2016 WL 6407362, at *8 (C.D. Cal. Oct. 28, 2016) (balancing the above considerations and concluding that "while

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-380 PA (FFMx) | Date | February 15, 2018 |
|---|---|---|---|
| Title | Michael Nozzi, et al. v. Housing Authority for the City of Los Angeles, et al. | | |

[two of the named plaintiffs'] awards come close to the threshold of disapproval, the Court finds that their participation in this lawsuit—including responding to substantial discovery and sitting for a deposition—justifies the award." (citation omitted)); Cox v. Clarus Mktg. Grp., LLC, 291 F.R.D. 473, 483 (S.D. Cal. 2013).

In its order preliminarily approving of the Settlement Agreement, the Court explicitly warned that final approval of an incentive award would require a more significant showing. (See Prelim. Approval Order at 6.) Despite this warning, Plaintiffs have provided little additional factual basis to support the requested incentive awards. Plaintiffs assert that Nozzi initiated this action and without him there may have been no case. (Final Approval Mot. 13.) Meanwhile, Pelaez served as Class Representative and was available for a deposition if necessary, participated in interviews with Class Counsel, and provided declarations. (Id.; Litt Decl. ISO Final Approval Mot. ¶ 2.)

Such assertions do not support the awards sought by Plaintiffs. However, the Court finds an award of $2,500 to Pelaez, in addition to her damages award, and $500 to Nozzi, inclusive of his damages, to be reasonable in light of their participation, and thus, grants awards to Named Plaintiffs in those amounts.

   **D.   Settlement Administration Award**

Finally, Plaintiffs seek approval of settlement administration costs. The Class Administrator has billed $24,000 and anticipates billing another $24,000 for administration fees. (Keough Suppl. Decl. ¶ 13.) Furthermore, the Class Administrator seeks $12,000 in costs for publication – $6,000 for costs associated with publication in the L.A. Times, and $6,000 for the internet campaign. (Id. at ¶ 11.) Plaintiffs previously filed JND's bid, in which JND estimated a total cost of $48,000 in the event of a 25% claims rate, and noted it could reach $68,000 if more claims were filed. (See Settlement Agreement, Ex. E.) Here, including claims that have been rejected, the Class Administrator has processed 2,979 claims, representing a 25.1% claims rate. (Keough Suppl. Decl. ¶ 12.) In its bid, JND identified the services it expected to provide depending on the number of claimants. Since then, the CEO of JND has provided declarations in which she attests to the services JND has provided, and will provide in this case. (Keough Decl.; Keough Suppl. Decl.) In addition, the parties previously sought, and the Court considered, publication costs of between $10,000 and $12,000, in preliminarily approving the Settlement Agreement. (See Mot. for Prelim. Approval at 9; Prelim. Approval Order at 3.) No class member has objected to such awards of administration or publication costs. Based on the evidence provided and the lack of objections, the Court finds that up to $60,000 total to be reasonable administration and publication costs in this case, and authorizes payment of such costs to JND from the Class Fund.

Furthermore, as requested in the Proposed Order, the Class Administrator will prepare a list of all rejected claims, with the reasons for rejection, and maintain the list in its case file. The Class Administrator shall preserve all written communications from Class Members in response to the Class for at least three years. All written communications received by the Class Administrator from Class

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-380 PA (FFMx) | Date | February 15, 2018 |
|---|---|---|---|
| Title | Michael Nozzi, et al. v. Housing Authority for the City of Los Angeles, et al. | | |

Members relating to the Settlement Agreement shall be available at all reasonable times for inspection and copying by Counsel for the Parties. At the conclusion of the Class Distribution, the Class Administrator shall submit a report to the Court summarizing the payments made to the Class.

### Conclusion

For the foregoing reasons, the Court finds that the Settlement Agreement is fundamentally fair, adequate, and reasonable. The Court therefore grants Plaintiffs' Motion for Final Approval of Settlement. Injunctive Relief Class Members and Damages Class Members release those claims against Defendants as set forth in the Settlement Agreement, except as to monetary damages for those Damages Class Members who timely opted out. The Court reaffirms its approval of Barrett S. Litt, Anne Richardson, and Stephanie Carroll as Class Counsel and JND as Class Administrator.

The Court also grants in part Plaintiffs' Motion for Award of Attorneys' Fees and awards $2,801,776.94 in fees and $152,605.86 in costs to Class Counsel to be paid by Defendants. Additionally, the Court grants $2,500 to Pelaez as an incentive award and $500 to Nozzi as an incentive award. Furthermore, JND's costs of up to $60,000 are approved. Each of these awards and costs are to be paid from the Class Fund.

The Court orders Defendants to provide the Class Fund to the Class Administrator for disbursement in accordance with the terms of the Settlement Agreement. The Court further orders the Class Administrator to pay all members of the Damages Class who have filed valid claims in accordance with the terms of the Settlement Agreement. The Court will enter a Judgment consistent with this Order and the Settlement Agreement. The effective date of settlement is 30 days after the date the Judgment is entered on the Docket. (Settlement Agreement ¶ 13.)

IT IS SO ORDERED.